## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

JACKSON WOMEN'S HEALTH
ORGANIZATION, on behalf of itself and its
patients,

and

SACHEEN CARR-ELLIS, M.D., M.P.H., on behalf
of herself and her patients,

          Plaintiffs,

vs.

MARY CURRIER, M.D., M.P.H., in her
official capacity as State Health Officer of
the Mississippi Department of Health,

and

MISSISSIPPI STATE BOARD OF MEDICAL
LICENSURE,

and

KENNETH CLEVELAND, M.D., in his
official capacity as Executive Director of the
Mississippi State Board of Medical Licensure,

          Defendants.

Case No. 3: 18-cv-171 CWR FKB

## COMPLAINT

      Plaintiffs, by and through their undersigned attorneys, bring this Complaint against the

above-named Defendants, their employees, agents, and successors in office, and in support

thereof allege the following:

### I. PRELIMINARY STATEMENT

      1.     Plaintiffs bring this civil rights action under the United States Constitution and

42 U.S.C. § 1983 to challenge the constitutionality of House Bill 1510, which was just enacted

by the Mississippi legislature and signed into law. House Bill 1510 ("HB 1510" or "the Act") has an immediate effective date. A copy of the Act is attached hereto as Exhibit A.

2.      The Act includes a provision banning abortion after 15 weeks ("the ban"), which is months before viability. Accordingly, the Act prohibits Plaintiffs from providing pre-viability abortions to their patients.

3.      Under decades of United States Supreme Court precedent, the State of Mississippi cannot ban abortion prior to viability, regardless of what exceptions are provided to the ban. Accordingly, the ban is unconstitutional as applied to all women seeking pre-viability abortions after 15 weeks.

4.      Plaintiffs seek a declaration that the ban is unconstitutional and preliminary and permanent injunctive relief prohibiting its enforcement as applied to pre-viability abortions.

## II. JURISDICTION AND VENUE

5.      This court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

6.      Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

7.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district and all Defendants are located in this district.

## III. PARTIES

### A. Plaintiffs

8.      Plaintiff Jackson Women's Health Organization ("the Clinic"), which is located in Jackson, Mississippi, has been in operation since 1996. The Clinic provides a range of

reproductive health care to women, including medication and aspiration (surgical) abortions. The Clinic brings claims on behalf of itself, its staff, and its patients.

9.      Plaintiff Sacheen Carr-Ellis, M.D., M.P.H., is a physician licensed to practice medicine in Mississippi.  Dr. Carr-Ellis is the Clinic's Medical Director, and she provides abortions to the Clinic's patients.  But for the ban, Dr. Carr-Ellis would provide pre-viability abortions to her patients after 15 weeks.  Dr. Carr-Ellis brings claims on behalf of herself and her patients.

10.     Absent injunctive relief from this Court, Plaintiffs will be forced to turn away patients seeking pre-viability abortions, as described herein, or face the risk of substantial professional sanctions and civil penalties.

**B. Defendants**

11.     Defendant Mary Currier, M.D., M.P.H., is the State Health Officer of the Mississippi Department of Health.  Among other things, she is responsible for supervising and directing all activities of the Department of Health, pursuant to Miss. Code Ann. §§ 41-3-5.1, 41-3-15(1)(c).  She is sued in her official capacity.

12.     Defendant Mississippi State Board of Medical Licensure has the authority to suspend or revoke a physician's license to practice medicine in the State of Mississippi if the physician violates the ban, pursuant to H.B. 1510 § 1.6.

13.     Defendant Kenneth Cleveland, M.D., is the Executive Director of the Mississippi State Board of Medical Licensure.  He is responsible for the day to day operations of the Board, pursuant to Code Miss. R. 30-17-2645:1.2(F).  He is sued in his official capacity.

## IV.  THE CHALLENGED BAN

14.     Under the Act, "a person shall not intentionally or knowingly perform, induce, or attempt to perform or induce an abortion," if "the probable gestational age of the unborn human," which the physician is required to determine and document prior to performing the abortion, is "greater than fifteen (15) weeks."  HB 1510 § 1.4(b).  The only exceptions to the ban are if the woman is experiencing a medical emergency or in the case of a severe fetal abnormality.  *Id.*  The Act defines "medical emergency" as a physical condition or illness that makes it necessary to perform an abortion to save a woman's life or to prevent "a serious risk of substantial and irreversible impairment of a major bodily function."  *Id.* at § 1.3(j).  It defines a "severe fetal abnormality" as "a life-threatening physical condition that, in reasonable medical judgment, regardless of the provision of life-saving medical treatment, is incompatible with life outside the womb."  *Id.* at § 1.3(h).

15.     The Act defines "gestational age" or "probable gestational age" as "the age of an unborn human being as calculated form the first day of the last menstrual period," ("lmp") of the pregnant woman.  *Id.* at § 1.3(f).

16.     Accordingly, the Act bans abortions in Mississippi, with very limited exceptions, after 15 weeks lmp, as described in greater detail below.

17.     The Act includes severe professional sanctions and civil penalties.  *Id.* at § 1.6.

18.     The Act provides that a physician "who intentionally or knowingly" violates the ban "commits an act of unprofessional conduct and his or her license to practice medicine in the State of Mississippi shall be suspended or revoked pursuant to action by the Mississippi State Board of Medical Licensure."  *Id.* at § 1.6(a).

4

19.    Further, the Act gives enforcement authority to the Attorney General, stating that the "Attorney General shall have authority to bring an action in law or equity to enforce the provisions of this section on behalf of the Director of the Mississippi State Department of Health or the Mississippi State Board of Medical Licensure." *Id.* at § 1.7.

## V.  FACTUAL BACKGROUND

20.    Upon information and belief, the Clinic is the sole abortion provider in the state of Mississippi.  It provides abortions up to 16 weeks 0 days lmp.  The Clinic typically provides abortions 2-3 day per week.

21.    Current Mississippi law imposes a mandatory delay of at least 24 hours, and requires two separate trips to an abortion provider, before a patient may obtain an abortion. Miss. Code Ann. § 41-41-33.  On the first visit to the abortion provider, the patient must receive the State's mandatory biased counseling.  Then the patient must wait at least 24 hours before returning for the second visit, when she can receive the abortion.  *Id.*  Accordingly, each of the Clinic's patients must make two separate visits to the Clinic, at least one full day apart.

22.    Because of patients' work and family commitments combined with the fact that the Clinic does not provide abortions every day of the week, Mississippi's mandatory-delay and 2-trip requirement delays many patients by several days or more in obtaining an abortion.  Thus, even patients who contact the Clinic and are able to schedule their first visit before 15 weeks lmp may be after 15 weeks lmp by the time of their procedure, because of the mandatory delay and 2-trip law.

23.    In 2017, 78 of the Clinic's patients obtained abortions after 14 weeks 6 days lmp.

24.    The Clinic's patients seek abortions at this stage of pregnancy for a number of reasons, including difficulties or concerns related to relationship, financial or other issues in

their lives, family circumstances, and the health of the woman or the fetus. As is true nationwide, most of the Clinic's patients already have at least one child.

25.    Abortion is one of the safest medical procedures in the United States. Complication rates for abortion, including after 15 weeks lmp, are similar to or lower than for other outpatient procedures.

26.    Further, the risk of death associated with childbirth is approximately 14 times higher than that associated with abortion, and every pregnancy-related complication is more common among women having live births than among those having abortions. In particular, Mississippi has one of the highest pregnancy-related maternal death rates in the U.S., more than twice the national rate: in 2010-2012, it was 39.7 deaths per 100,000 live births overall and 54.7 deaths per 100,000 live births among Black women. Pregnancy-Related Maternal Mortality, Mississippi, 2011-2012; available at http://msdh.ms.gov/msdhsite/_static/resources/5631.pdf.

27.    In a normally progressing pregnancy, viability typically does not occur until at least 23 weeks lmp.

28.    Viability is a determination that must be made by a physician, and it will vary from pregnancy to pregnancy, depending on the health of the woman and the fetus.

29.    The ban prohibits abortion months before viability; no fetus is viable after 15 weeks of pregnancy.

30.    All Mississippi women seeking a pre-viability abortion after 15 weeks lmp, except under the narrow exceptions provided in the Act, will be prohibited from obtaining abortions because of the ban.

31.    Access to safe and legal abortion benefits the health and wellbeing of women and their families.

6

32.     Additionally, over, the past forty-five years, safe and legal abortion has been important to facilitating women's equal participation in society, including in the economic and social life of the nation.  The availability of abortion enables women to decide whether to forego educational and economic opportunities due to unplanned pregnancy, whether to raise children with an absent or unwilling partner, and whether to accept the risk of carrying medically-compromised pregnancies to term.

33.     Pregnant women are capable of deciding whether to end a pregnancy, taking into account all relevant factors.  Forcing women to carry to term promotes the stereotyped notions that motherhood is the preferred, natural, and proper state for women, and that women are not capable of making decisions about the timing, number, and spacing of children, but rather must be protected from the consequences of making decisions that others see as wrong.

## VI. THE IMPACT OF THE BAN ON PLAINTIFFS AND THEIR PATIENTS

34.     By prohibiting all abortions after 15 weeks lmp, except under the narrow exceptions listed, the ban harms Plaintiffs' patients by denying access to pre-viability abortions and violating their constitutional rights.

35.     The exceptions to the ban do not cure the constitutional violation.

36.     The ban presents Plaintiffs with an untenable choice: to face professional sanctions and civil penalties for continuing to provide abortions after 15 weeks lmp or to stop providing the care their patients seek.

37.     These harms constitute irreparable harm to Plaintiffs and their patients.

## FIRST CLAIM FOR RELIEF

### (Substantive Due Process)

38.     Plaintiffs reallege and hereby incorporate by reference Paragraphs 1 through 37 above.

39.     The Act bans abortion prior to viability, in violation of the liberty rights of Plaintiffs' patients, guaranteed by the Fourteenth Amendment of the United States Constitution.

## SECOND CLAIM FOR RELIEF

### (Equal Protection)

40.     Plaintiffs reallege and hereby incorporate by reference Paragraphs 1 through 39 above.

41.      By enacting a ban on abortion in Mississippi after 15 weeks lmp, well before viability, and by denying women the autonomy to determine the number, timing and spacing of children, thereby reinforcing outmoded stereotypes of women's role in society, the Act discriminates against women on the basis of sex in violation of their right to equal protection guaranteed by the Fourteenth Amendment.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court:

1.      Issue a declaratory judgment that the Act is unconstitutional as applied to pre-viability abortions under the liberty and equal protection clauses of the Fourteenth Amendment to the United States Constitution and in violation of 42 U.S.C. § 1983;

2.      Issue preliminary and permanent injunctive relief restraining Defendants, their employees, agents, and successors from enforcing the Act as to pre-viability abortions;

3.     Issue an order prohibiting Defendants, their employees, agents, and successors from bringing enforcement actions for pre-viability abortions performed while a Preliminary Injunction is in effect against the Act;

4.     Award Plaintiffs their reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and,

5.     Grant such other or further relief as the Court deems just, proper and equitable.

RESPECTFULLY SUBMITTED this 19th day of March, 2018.

Julie Rikelman,* NY Bar #3011426
Christine Parker,* CA Bar #315529
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3670 (Phone)
(917) 637-3666 (Fax)
jrikelman@reprorights.org
cparker@reprorights.org
*Pro Hac Vice Application to be filed

Robert B. McDuff, MS Bar #2532
Law Office of Robert McDuff
767 North Congress Street
Jackson, MS 39202
(601) 969-0802 (Phone)
(601) 969-0804 (Fax)
rbm@mcdufflaw.com