# Exhibit A

MISSISSIPPI LEGISLATURE                REGULAR SESSION 2018

By: Representatives Currie, Eubanks, Gipson,    To: Judiciary B
Ford, Carpenter, Bain, Scoggin, Arnold,
Brown, Weathersby, Rogers (61st), Foster,
Wilkes, Hopkins, Crawford, Henley

HOUSE BILL NO. 1510
(As Sent to Governor)

1  AN ACT TO BE KNOWN AS THE GESTATIONAL AGE ACT; TO ENACT
2  DEFINITIONS; TO PROHIBIT ABORTIONS AFTER 15 WEEKS' GESTATION; TO
3  PROVIDE CIVIL PENALTIES; AND FOR RELATED PURPOSES.

4      BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MISSISSIPPI:

5      **SECTION 1.**  (1)  This section shall be known and cited as the
6  "Gestational Age Act."

7      (2)  **Legislative findings and purpose.**  The Legislature makes
8  the following findings of fact and incorporates them herein by
9  reference:

10         (a)  The United States is one (1) of only seven (7)
11  nations in the world that permits nontherapeutic or elective
12  abortion-on-demand after the twentieth week of gestation.  In
13  fact, fully seventy-five percent (75%) of all nations do not
14  permit abortion after twelve (12) weeks' gestation, except (in
15  most instances) to save the life and to preserve the physical
16  health of the mother.

17         (b)  (i)  Medical and other authorities now know more
18  about human prenatal development than ever before including that:

19         1.  Between five (5) and six (6) weeks'
20  gestation, an unborn human being's heart begins beating.
21         2.  An unborn human being begins to move about
22  in the womb at approximately eight (8) weeks' gestation.
23         3.  At nine (9) weeks' gestation, all basic
24  physiological functions are present.  Teeth and eyes are present,
25  as well as external genitalia.
26         4.  An unborn human being's vital organs begin
27  to function at ten (10) weeks' gestation.  Hair, fingernails, and
28  toenails also begin to form.
29         5.  At eleven (11) weeks' gestation, an unborn
30  human being's diaphragm is developing, and he or she may even
31  hiccup.  He or she is beginning to move about freely in the womb.
32         6.  At twelve (12) weeks' gestation, an unborn
33  human being can open and close his or her fingers, starts to make
34  sucking motions, and senses stimulation from the world outside the
35  womb.  Importantly, he or she has taken on "the human form" in all
36  relevant aspects.  *Gonzales v. Carhart*, 550 U.S. 124, 160 (2007).
37         7.  The Supreme Court has long recognized that
38  the State of Mississippi has an "important and legitimate interest
39  in protecting the potentiality of human life," *Roe v. Wade*, 410
40  U.S. 113, 162 (1973), and specifically that "the state has an
41  interest in protecting the life of the unborn." *Planned*
42  *Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833,
43  873 (1992).

44           8.  The majority of abortion procedures
45  performed after fifteen (15) weeks' gestation are dilation and
46  evacuation procedures which involve the use of surgical
47  instruments to crush and tear the unborn child apart before
48  removing the pieces of the dead child from the womb.  The
49  Legislature finds that the intentional commitment of such acts for
50  nontherapeutic or elective reasons is a barbaric practice,
51  dangerous for the maternal patient, and demeaning to the medical
52  profession.
53           9.  Most obstetricians and gynecologists
54  practicing in the State of Mississippi do not offer or perform
55  nontherapeutic or elective abortions.  Even fewer offer or perform
56  the dilation and evacuation abortion procedure even though it is
57  within their scope of practice.
58           (ii) Abortion carries significant physical and
59  psychological risks to the maternal patient, and these physical
60  and psychological risks increase with gestational age.
61  Specifically, in abortions performed after eight (8) weeks'
62  gestation, the relative physical and psychological risks escalate
63  exponentially as gestational age increases.  L. Bartlett et al.,
64  *Risk factors for legal induced abortion mortality in the United*
65  *States,* OBSTETRICS AND GYNECOLOGY 103(4):729 (2004).
66           (iii) Importantly, as the second trimester
67  progresses, in the vast majority of uncomplicated pregnancies, the

```
68  maternal health risks of undergoing an abortion are greater than
69  the risks of carrying a pregnancy to term.
70                  (iv)  Medical complications from dilation and
71  evacuation abortions include, but are not limited to:  pelvic
72  infection; incomplete abortions (retained tissue); blood clots;
73  heavy bleeding or hemorrhage; laceration, tear, or other injury to
74  the cervix; puncture, laceration, tear, or other injury to the
75  uterus; injury to the bowel or bladder; depression; anxiety;
76  substance abuse; and other emotional or psychological problems.
77  Further, in abortions performed after fifteen (15) weeks'
78  gestation, there is a higher risk of requiring a hysterectomy,
79  other reparative surgery, or blood transfusion.
80                  (v)  The State of Mississippi also has "legitimate
81  interests from the outset of pregnancy in protecting the health of
82  women."  *Planned Parenthood of Southeastern Pennsylvania v. Casey*,
83  505 U.S. 833, 847 (1992), as the "medical, emotional, and
84  psychological consequences of abortion are serious and can be
85  lasting …" *H.L. v. Matheson*, 450 U.S. 398, 411 (1981).
86           (c)  Based on the findings in paragraph (a) of this
87  subsection, it is the intent of the Legislature, through this act
88  and any regulations and policies promulgated hereunder, to
89  restrict the practice of nontherapeutic or elective abortion to
90  the period up to the fifteenth week of gestation.
91       (3)  **Definitions.**  As used in this section:
```

92          (a)  "Abortion" means the use or prescription of an
93   instrument, medicine, drug, or other substance or device with the
94   intent to terminate a clinically diagnosable pregnancy for reasons
95   other than to increase the probability of a live birth, to
96   preserve the life or health of the unborn human being, to
97   terminate an ectopic pregnancy, or to remove a dead unborn human
98   being.
99          (b)  "Attempt to perform or induce an abortion" means to
100  do or omit anything that, under the circumstances as the person
101  believes them to be, is an act or omission that constitutes a
102  substantial step in a course of conduct planned to culminate in
103  the performance or induction of an abortion in violation of this
104  section.
105         (c)  "Conception" means the fusion of human spermatozoon
106  with a human ovum.
107         (d)  "Department" means the Mississippi State Department
108  of Health.
109         (e)  "Gestation" means the time that has elapsed since
110  the first day of the woman's last menstrual period.
111         (f)  "Gestational age" or "probable gestation age" means
112  the age of an unborn human being as calculated from the first day
113  of the last menstrual period of the pregnant woman.
114         (g)  "Human being" means an individual member of the
115  species Homo sapiens, from and after the point of conception.
116         (h)  "Severe fetal abnormality" means a life-threatening

117   physical condition that, in reasonable medical judgment,
118   regardless of the provision of life-saving medical treatment, is
119   incompatible with life outside the womb.
120          (i)  "Major bodily function" includes, but is not
121   limited to, functions of the immune system, normal cell growth,
122   and digestive, bowel, bladder, neurological, brain, respiratory,
123   circulatory, endocrine, and reproductive functions.
124          (j)  "Medical emergency" means a condition in which, on
125   the basis of the physician's good faith clinical judgment, an
126   abortion is necessary to preserve the life of a pregnant woman
127   whose life is endangered by a physical disorder, physical illness,
128   or physical injury, including a life-endangering physical
129   condition arising from the pregnancy itself, or when the
130   continuation of the pregnancy will create a serious risk of
131   substantial and irreversible impairment of a major bodily
132   function.
133          (k)  "Physician" or "referring physician" means a person
134   licensed to practice medicine in the State of Mississippi.
135      (4)  **Abortion limited to fifteen (15) weeks' gestation except**
136   **in medical emergency and in cases of severe fetal abnormality.**
137   (a)  Except in a medical emergency or in the case of a severe
138   fetal abnormality, a person shall not perform, induce, or attempt
139   to perform or induce an abortion unless the physician or the
140   referring physician has first made a determination of the probable
141   gestational age of the unborn human being and documented that

```
142    gestational age in the maternal patient's chart and, if required,
143    in a report to be filed with the department as set forth in
144    paragraph (c) of this subsection.  The determination of probable
145    gestational age shall be made according to standard medical
146    practices and techniques used in the community.
147           (b)   Except in a medical emergency or in the case of a
148    severe fetal abnormality, a person shall not intentionally or
149    knowingly perform, induce, or attempt to perform or induce an
150    abortion of an unborn human being if the probable gestational age
151    of the unborn human being has been determined to be greater than
152    fifteen (15) weeks.
153           (c)   In every case in which a physician performs or
154    induces an abortion on an unborn human being whose gestational age
155    is greater than fifteen (15) weeks, the physician shall within
156    fifteen (15) days of the abortion cause to be filed with the
157    department, on a form supplied by the department, a report
158    containing the following information:
159                  (i)   Date the abortion was performed;
160                  (ii)  Specific method of abortion used;
161                  (iii) The probable gestational age of the unborn
162    human being and the method used to calculate gestational age;
163                  (iv)  A statement declaring that the abortion was
164    necessary to preserve the life or physical health of the maternal
165    patient;
```

166                    (v)    Specific medical indications supporting the
167   abortion; and
168                    (vi)   Probable health consequences of the abortion
169   and specific abortion method used.
170        The physician shall sign the form as his or her attestation
171   under oath that the information stated thereon is true and correct
172   to the best of his or her knowledge.
173             (d)   Reports required and submitted under subsection (4)
174   of this section shall not contain the name of the maternal patient
175   upon whom the abortion was performed or any other information or
176   identifiers that would make it possible to identify, in any manner
177   or under any circumstances, a woman who obtained or sought to
178   obtain an abortion.
179        (5)  **Reporting forms.**  The department shall create the forms
180   required by this section within thirty (30) days after the
181   effective date of this act.  No provision of this section
182   requiring the reporting of information on forms published by the
183   department shall be applicable until ten (10) days after the
184   requisite forms have been made available or the effective date of
185   this act, whichever is later.
186        (6)  **Professional sanctions and civil penalties.**  (a)  A
187   physician who intentionally or knowingly violates the prohibition
188   in subsection (4) of this section commits an act of unprofessional
189   conduct and his or her license to practice medicine in the State

```
190     of Mississippi shall be suspended or revoked pursuant to action by
191     the Mississippi State Board of Medical Licensure.
192             (b)  A physician who knowingly or intentionally delivers
193     to the department any report required by subsection (4)(c) of this
194     section and known by him or her to be false shall be subject to a
195     civil penalty or fine up to Five Hundred Dollars ($500.00) per
196     violation imposed by the department.
197         (7)  **Additional enforcement.**  The Attorney General shall have
198     authority to bring an action in law or equity to enforce the
199     provisions of this section on behalf of the Director of the
200     Mississippi State Department of Health or the Mississippi State
201     Board of Medical Licensure.  The Mississippi State Board of
202     Medical Licensure shall also have authority to bring such action
203     on its own behalf.
204         (8)  **Construction.**  Nothing in this section shall be
205     construed as creating or recognizing a right to abortion or as
206     altering generally accepted medical standards.  It is not the
207     intention of this section to make lawful an abortion that is
208     otherwise unlawful.  An abortion that complies with this section,
209     but violates any other state law, is unlawful.  An abortion that
210     complies with another state law, but violates this section is
211     unlawful.
212         (9)  **Severability.**  (a)  It is the intent of the Legislature
213     that every provision of this section shall operate with equal
214     force and shall be severable one from the other and that, in the
```

215  event that any provision of this section shall be held invalid or
216  unenforceable by a court of competent jurisdiction, said provision
217  shall be deemed severable and the remaining provisions of this act
218  deemed fully enforceable.
219       (b)  In the event that any provision of this section
220  shall be held invalid or unenforceable by a court of competent
221  jurisdiction, Sections 41-41-131 through 41-41-145 shall remain in
222  effect.  If some or all of the provisions of this section are ever
223  temporarily or permanently restrained or enjoined by judicial
224  order, all other provisions of Mississippi law regulating or
225  restricting abortion shall be enforced as though the restrained or
226  enjoined provisions had not been adopted; however, whenever the
227  temporary or permanent restraining order or injunction is stayed
228  or dissolved, or otherwise ceases to have effect, the provisions
229  of this section shall have full force and effect.
230       (c)  Mindful of *Leavitt v. Jane L.*, 518 U.S. 137 (1996),
231  regarding the context of determining the severability of a state
232  section of law regulating abortion, the United States Supreme
233  Court held that an explicit statement of legislative intent is
234  controlling.  Accordingly, it is the intent of the Legislature
235  that every provision, section, subsection, paragraph, sentence,
236  clause, phrase or word in this section and every application of
237  the provisions in this section is severable from each other.  If
238  any application of any provision in this section to any person,
239  group of persons, or circumstances is found by a competent court

```
240   to be invalid, the remaining applications of that provision to all
241   other persons and circumstances shall be severed and may not be
242   affected.  All constitutionally valid applications of this section
243   shall be severed from any applications that a court finds to be
244   invalid, leaving the valid applications in force, because it is
245   the Legislature's intent and priority that the valid applications
246   be allowed to stand alone.  Even if a reviewing court finds a
247   provision of this statute to impose an undue burden in a large or
248   substantial fraction of relevant cases, the applications that do
249   not represent an undue burden shall be severed from the remaining
250   provisions and shall remain in force, and shall be treated as if
251   the Legislature had enacted a section limited to the persons,
252   group of persons, or circumstances for which the section's
253   application does not present an undue burden.  The Legislature
254   further declares that it would have passed this section and each
255   provision, section, subsection, paragraph, sentence, clause,
256   phrase or word, and all constitutional applications of this
257   section, without regard to the fact that any provision, section,
258   subsection, paragraph, sentence, clause, phrase or word, or
259   applications of this section, were to be declared unconstitutional
260   or to represent an undue burden.
261        (d)  If this section is found by any competent court to
262   be invalid or to impose an undue burden as applied to any person,
263   group of persons, or circumstances, the prohibition shall apply to
```

264    that person or group of persons or circumstances on the earliest
265    date on which this section can be constitutionally applied.

266            (e)  If any provisions of this section are found by a
267    competent court to be unconstitutionally vague, then the
268    applications of the provision that do not present constitutional
269    vagueness problems shall be severed and remain in force.

270        (10) **Right of intervention.**  The Legislature, through one or
271    more sponsors of this act duly appointed by resolution of their
272    respective chamber, may intervene as a matter of right in any case
273    in which the constitutionality of this section is challenged.  The
274    Governor may also intervene as a matter of right in any case in
275    which the constitutionality of this section is challenged.

276        **SECTION 2.**  This act shall take effect and be in force from
277    and after its passage.