IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| JACKSON WOMEN'S HEALTH ORGANIZATION, on behalf of itself and its patients,<br><br>and<br><br>SACHEEN CARR-ELLIS, M.D., M.P.H., on behalf of herself and her patients,<br><br>      Plaintiffs,<br><br>v.<br><br>MARY CURRIER, M.D., M.P.H., in her official capacity as State Health Officer of the Mississippi Department of Health, et al.,<br><br>      Defendants. | Case No. 3:18cv171-CWR-FKB |

**MOTION TO ADOPT PLAINTIFFS' PROPOSED SCHEDULE AND LIMIT DISCOVERY TO EXCLUDE LEGALLY IMMATERIAL ISSUES**

Plaintiffs respectfully move the Court to adopt their proposed schedule, as set out at the end of this Motion, and limit discovery to what binding Supreme Court precedent dictates is the only legally material issue in this case: when viability occurs. Plaintiffs file this Motion because, while the parties generally agree that this case should proceed expeditiously, they disagree as to the scope of discovery.

Plaintiffs challenge H.B. 1510, which bans abortion after 15 weeks from a woman's last menstrual period ("lmp"). The Supreme Court has held repeatedly that states may not ban abortion prior to viability, which occurs months after 15 weeks lmp, and prohibit any woman from making the ultimate decision of whether to end a pre-viability pregnancy. Further, the

1

Supreme Court has been clear that *no* state interest is strong enough to justify a ban on pre-viability abortion. Accordingly, if H.B. 1510 prohibits pre-viability abortion, the Court will be bound to rule it unconstitutional, regardless of what interests the State asserts to justify the law, and regardless of what evidence the State could develop in discovery to support those interests.

Nevertheless, the State proposes more expansive discovery in the "hope" of overturning an unbroken line of 45 years of Supreme Court precedent, which was just reaffirmed less than two years ago, in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2299 (2016). As a federal district court in North Dakota recently ruled when faced with precisely the same argument about a similar law, the "hope" of overturning a half-century of Supreme Court precedent is simply not enough to require Plaintiffs and the courts to expend resources on legally immaterial issues. Indeed, the federal courts have now considered, and rejected, three other pre-viability bans on abortion since 2012, *see infra* at 5-6, and the Supreme Court has denied certiorari in each of these cases. Women should not be forced to re-litigate their basic constitutional rights on a yearly basis. The Court should exercise its broad discretion to limit discovery to exclude issues that the Supreme Court has made clear are simply irrelevant.

**I.     The Court's Temporary Restraining Order Recognizes that Viability is the Central Issue in This Case.**

Contrary to binding Supreme Court precedent, the State of Mississippi has enacted a ban on abortion after 15 weeks lmp, months before a fetus becomes viable. On March 19, Plaintiffs Jackson Women's Health Organization and Dr. Sacheen Carr-Ellis immediately filed suit, Compl., Mar. 19, 2018, ECF No. 1, as well as a motion for a temporary restraining order, Pls.' Mot. for TRO, Mar. 19, 2018, ECF No. 5. The following morning, on March 20, a hearing was held on the motion. The Court granted Plaintiffs' motion later that morning, finding Plaintiffs "substantially likely to succeed on their claim that H.B. 1510 is unconstitutional," because it

bans abortion prior to viability. TRO, Mar. 20, 2018, at 1-2, ECF No. 9. The Court held a scheduling conference on March 21, during which the parties sought to set a schedule for the proceedings in this case.

Even at this early stage, this Court has recognized that viability is the central issue in this case. As the Court correctly stated in its decision granting Plaintiffs' motion for a temporary restraining order:

> The Supreme Court says every woman has a constitutional right to "personal privacy" regarding her body. [citing *Roe v. Wade*, 410 U.S. 113, 152-53 (1973)] That right protects her choice "to have an abortion before viability." [citing *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 846 (1992)] States cannot "prohibit any woman from making the ultimate decision" to do so. [citing *Gonzales v. Carhart*, 550 U.S. 124, 146 (2007) (quotation marks and citation omitted).]

*Id.* at 1. Further, during the hearing on Plaintiffs' motion, the Court pressed the State on the issue of viability, inquiring as to whether a fetus is viable at 15 weeks lmp, and pointing to the State's own informed consent materials which state that viability is not possible at that stage of pregnancy. In fact, nowhere in H.B. 1510's legislative findings does the State indicate that viability exists at 15 weeks lmp. H.B. 1510, 2018 Leg., Reg. Sess. § 1.2 (Miss. 2018). That is because viability does not occur until several months after 15 weeks lmp, as is widely acknowledged by the medical community. *See* TRO, Mar. 20, 2018, at 1, ECF No. 9 (noting that medical consensus determines viability to be several months after 15 weeks lmp). If, consistent with this medical consensus, the State is unable to demonstrate that viability occurs at 15 weeks lmp, the Court is bound to declare the law unconstitutional.

During the hearing on Plaintiffs' motion and the subsequent scheduling conference, the State referenced a variety of issues beyond viability on which it would seek to develop evidence in this case. But none of those issues are material. Indeed, in *MKB Management Corp. v.*

*Burdick*, No. 1:13-CV-071, 2013 WL 6147204 (D.N.D. Nov. 15, 2013), *aff'd*, 2014 WL 11516246 (D.N.D. Jan. 28, 2014), the district court considered the same arguments in the context of a challenge to a ban on abortions at approximately 6 weeks of pregnancy. There, the court held that the State of North Dakota was not entitled to the expansive discovery it sought regarding its interests in restricting pre-viability abortions, concluding that discovery was to be limited to questions of when viability occurs. *Id.* at *3-5 (concluding the State of North Dakota's "mere hope" of overturning precedent did not entitle it to expansive discovery). This Court should follow the same path here.

## II. Supreme Court Precedent Dictates that Viability is the Only Legally Material Issue in this Case.

The Supreme Court has unequivocally held that a woman has the right "to choose to have an abortion before viability and to obtain it without undue interference from the State." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846 (1992). "The woman's right to terminate her pregnancy before viability is the most central principle of *Roe v. Wade*. It is a rule of law and a component of liberty we cannot renounce." *Id.* at 871; *see also id* at 879 ("[A] state may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability."); *accord Gonzales v. Carhart*, 550 U.S. 124, 146 (2007) ("Before viability, a State 'may not prohibit any woman from making the ultimate decision to terminate her pregnancy.'" (quoting *Casey*, 505 U.S. at 879)). Viability is thus the only legally material issue in this case.

In establishing this constitutional standard, the Supreme Court has made clear that *no* state interest can justify a ban on abortion prior to viability, including the interest in potential fetal life. *Casey*, 505 U.S. at 846 ("Before viability, the State's interests are not strong enough to support a prohibition of abortion[.]"); *id*. at 870 ("We conclude the line should be drawn at viability, so that before that time the woman has a right to choose to terminate her pregnancy.");

4

*Colautti v. Franklin*, 439 U.S. 379, 386 (1979) ("[T]he State's interest in the potential life of the fetus reaches the compelling point at the stage of viability. Hence, prior to viability, the State may not seek to further this interest by directly restricting a woman's decision whether or not to terminate her pregnancy."); *accord Isaacson v. Horne*, 716 F.3d 1213, 1217, 1229 (9th Cir. 2013) ("[B]ecause Arizona's twenty-week law acts as a prohibition of . . . pre-viability abortions, under long-established Supreme Court law, no state interest is strong enough to support it."), *cert. denied*, 134 S. Ct. 905 (2014).

For a fetus to be considered viable, "there must be a potentiality of 'meaningful life,' not merely momentary survival." *Colautti*, 439 U.S. at 387 (quoting *Roe*, 410 U.S. at 163); *see also id*. at 388 ("Viability is reached when . . . there is a reasonable likelihood of the fetus' sustained survival outside the womb, with or without artificial support."). Additionally, binding precedent establishes that because the point of viability "may differ with each pregnancy, neither the legislature nor the courts may proclaim one of the elements entering into the ascertainment of viability—be it weeks of gestation or fetal weight or any other single factor—as the determinant of when the State has a compelling interest in the life or health of the fetus." *Id.* at 388-89; *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 65 (1976) ("[I]t is not the proper function of the legislature or the courts to place viability which essentially is a medical concept, at a specific point in the gestation period."); *accord Isaacson*, 716 F.3d at 1223 (recognizing that since *Roe*, the Supreme Court and lower federal courts have repeatedly held that "viability—not gestational age—remains the 'critical point'" (quoting *Webster v. Reprod. Health Servs.*, 492 U.S. 490, 529 (1989) (O'Connor, J., concurring)).

Accordingly, every federal appellate court faced with a pre-viability ban has ruled that such a ban violates the Fourteenth Amendment, and the Supreme Court has denied certiorari in

each one of these cases it has been asked to review. *See, e.g.*, *MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 773 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 981 (2016); *Edwards v. Beck*, 786 F.3d 1113, 1117 (8th Cir. 2015), *cert. denied*, 136 S. Ct. 895 (2016); *Isaacson*, 716 F.3d 1213, 1217 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 905 (2014); *see also* Pls.' Mem. of Law in Supp. of TRO, Mar. 20, 2018, at 6-8, ECF No. 7 (collecting cases).

This binding Supreme Court precedent leaves no doubt that viability is the only legally material issue in this case. Accordingly, regardless of the reasons the State may offer to justify H.B. 1510, the Court will be bound to find it unconstitutional if it concludes that it bans abortions prior to viability. Only the Supreme "Court [has] the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989); *see also United States v. Austin*, 134 Fed. App'x 722, 723 (5th Cir. 2005) (concluding that "[e]ven if" a party made "valid attacks on [a Supreme Court case, the appellate court] must follow Supreme Court precedent").

### III. Limiting Discovery to the Only Legally Material Issue is Within the Court's Discretion.

Because "the attainment of viability [continues] to serve as the critical fact," *Casey,* 505 U.S. at 860, binding Supreme Court precedent dictates that the only legally material issue before this Court is whether H.B. 1510 bans pre-viability abortions.

Under Federal Rule of Civil Procedure 26(b)(1), discovery is confined to matters that are "relevant to any party's claim or defense and proportional to the needs of the case." In limiting discovery, the Court may consider, among other things, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See id*. Because viability is the *only* legally material issue, discovery beyond that issue is irrelevant and disproportionately burdensome, time-consuming, and expensive to the

6

parties when compared to its non-existent benefit to this Court's resolution of this case. It is also a waste of the Court's resources.

The Court has broad discretion to manage discovery. *See Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982) ("The district court . . . has broad discretion in all discovery matters."); *see also Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp.*, 992 F.2d 1398, 1401 (5th Cir. 1993) ("If it reasonably appears that further discovery would not produce evidence creating a genuine issue of material fact, the district court's preclusion of further discovery prior to entering summary judgment is not an abuse of discretion."). Limiting discovery to viability, based on binding Supreme Court precedent, is well within that broad discretion.

Recently, another federal district court limited discovery in precisely this way in considering a challenge to a North Dakota law banning abortion after approximately 6 weeks of pregnancy. *MKB Mgmt. Corp. v. Burdick*, No. 1:13-CV-071, 2013 WL 6147204 (D.N.D. Nov. 15, 2013), *aff'd*, 2014 WL 11516246 (D.N.D. Jan. 28, 2014). In *MKB Management*, the District Court for the District of North Dakota confronted a similar pre-viability ban, which prohibited abortion when a fetal heartbeat could be detected, or around 6 weeks lmp, and the State of North Dakota sought expansive discovery. *See id.* at *3. There, the State of North Dakota took the position, as the State of Mississippi appears to here, that discovery would "help create a record that will demonstrate its substantial interests in restricting the performance of abortions prior to viability, if not in hope that it will persuade [the District Court] . . . when [it] rules on dispositive motions, then for the purpose of creating a record for appeal," and ultimately, a record on which the Supreme Court could overturn *Roe* and *Casey*. *Id.* at *3-4. The Magistrate Judge rejected this argument, and properly limited discovery to material issues: "the questions of when viability occurs, when a fetal heartbeat can be detected, and the relationship between the two." *Id.* at *5

(also permitting discovery on issues relating to standing and witnesses' knowledge and credibility). The District Court affirmed the Magistrate's Order, *MKB Mgmt. Corp.*, 2014 WL 11516246, at *1, and the Eighth Circuit also affirmed, holding "[b]ecause viability presents the central issue in this case, the district court did not err" in its ruling. *MKB Mgmt. Corp.*, 795 F.3d at 773 n.4. There is no reason for this Court to come to a different conclusion.

As the North Dakota Magistrate Judge recognized, parties are entitled to make good faith arguments to change the law. However, the "mere hope" of overturning Supreme Court precedent can justify neither the "substantial costs and other burdens" of discovery on plaintiffs, nor the burden on the court. *MKB Mgmt. Corp.*, 2013 WL 6147204, at *4. Instead, just like the State of North Dakota, the State here has "other sources it can turn to for the information it claims it needs to support" a challenge to binding Supreme Court law. *Id.* For instance, the State "can rely upon any determinations made by the [state] Legislature as reflected in the statute or its legislative history." *Id.* The State can also "retain its own experts and present their affidavit testimony, including attaching any studies or treaties that they may rely upon." *Id.*

Indeed, of the four recent cases in which federal courts have considered bans on abortion prior to viability, there was no discovery on issues beyond viability except in one. *MKB Mgmt. Corp.*, 795 F.3d at 773 n.4 (affirming limit on discovery to issue of viability as within court's discretion because it was the "central issue" in the case); *Edwards*, 786 F.3d at 1119 (stating the State of Arkansas did not contest plaintiffs' evidence and thus did not "present a real opportunity for the court to examine *viability*," but not suggesting any other issue could be relevant to its determination of constitutionality of pre-viability ban (emphasis added)); *Isaacson*, 716 F.3d at 1220, 1229 (recognizing *per se* constitutional rule that where there is a ban on abortion prior to viability, the case is "fully controlled by binding precedent" and refusing to hear the state's

factual assertions regarding fetal pain and safety of abortion); *but see Bryant v. Woodall*, No. 1:16-cv-01368-UA-LPA, 2017 WL 1292378 (M.D.N.C. Apr. 7, 2017) (permitting limited discovery beyond viability in challenge to 20 week ban based on state's claim that it could produce evidence of viability at 20 weeks, but nonetheless acknowledging viability was the central issue), *aff'd* Order, No. 1:16-cv-01368-WO-LPA, ECF No. 36 (M.D.N.C. June 1, 2017).[1]

Finally, Plaintiffs note that the arguments the State seeks to make in this case are not new. To the contrary, other states have made similar arguments in an effort to defend bans on pre-viability abortion in federal court, including in the past 5 years. The federal courts have uniformly struck down those laws as unconstitutional, and the Supreme Court has denied certiorari in each case it was asked to review, despite states' request that it reconsider its precedent for a variety of reasons. *See supra* at 5-6. The most recent denials of certiorari on pre-viability bans occurred just two years ago, in 2016. *See id.* Plaintiffs respectfully submit that women should not be required to re-litigate their basic constitutional rights in court on an annual basis. Unless the State can provide evidence that viability regularly occurs at 15 weeks lmp, which it cannot, H.B. 1510 is patently unconstitutional and there is no basis for wide-ranging discovery.

In short, if this case reaches the Supreme Court, the State may argue that it should overturn over four decades of its precedent, but the State is not entitled to discovery on issues the Supreme Court has held are irrelevant. *Cf. Shelby Cty., Ala. v. Holder*, 133 S. Ct. 2612 (2013) (addressing constitutional issue and declaring part of Voting Rights Act unconstitutional despite lower court's restrictions on discovery in *Shelby Cty., Ala. v. Holder*, 270 F.R.D. 16 (D.D.C.

---

[1] Plaintiffs believe that Order was wrongly decided: it circularly permitted the State of North Carolina to pursue discovery on issues the court essentially agreed were immaterial.

2010)); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (addressing constitutional issue and declaring part of campaign finance statute unconstitutional despite lower court's rejection of defendants' argument that expansive discovery was needed).

## CONCLUSION

Bans on abortion prior to viability are unconstitutional under binding Supreme Court precedent. Accordingly, the only legally material fact in this case is whether H.B. 1510 bans pre-viability abortions, and it is well within the Court's discretion to limit discovery to that issue. For the foregoing reasons, Plaintiffs request this Court adopt their proposed schedule, including the proposed limit on discovery, as follows:

1. Plaintiffs shall designate their testifying experts and shall serve on all other parties the materials required by Federal Rule of Civil Procedure 26(a)(2) within 14 days from today.

2. Defendants shall designate their testifying experts and serve on all parties the materials required by Federal Rule of Civil Procedure 26(a)(2) within 45 days from today.

3. Plaintiffs shall then have 14 days to designate any rebuttal experts and serve on all other parties the materials required by Federal Rule of Civil Procedure 26(a)(2).

4. Depositions shall be completed within 80 days from today, and no more than three (3) depositions per side shall be allowed during this time frame.

5. Any written discovery requests (interrogatories, requests for admission, etc.), must be served in time for responses to be served within the above time frame.

6. Plaintiffs intend to file a motion for summary judgment, which shall be filed within 45 days after the time for completing depositions has elapsed. Defendants must respond to the motion for summary judgment, within 30 days from the date it is filed. Plaintiffs shall have 15

days from the date Defendants file their response to file any reply. The deadlines for filing *Daubert* motions, and any responses and replies, shall be the same. After the Defendants file their response to Plaintiffs' motion for summary judgment, the parties should contact the Court to set a date for oral argument.

Respectfully submitted this 26th day of March 2018.

*/s/ Robert B. McDuff*_____
Robert B. McDuff, MS Bar #2532
Law Office of Robert McDuff
767 North Congress Street
Jackson, MS 39202
(601) 969-0802 (Phone)
(601) 969-0804 (Fax)
rbm@mcdufflaw.com

Julie Rikelman,* NY Bar #3011426
Hillary Schneller,* NY Bar #5151154
Christine Parker,* CA Bar #315529
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3670 (Phone)
(917) 637-3666 (Fax)
jrikelman@reprorights.org
hschneller@reprorights.org
cparker@reprorights.org
**Pro Hac Vice* Application Pending*

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and accurate copy of the foregoing has been served by delivery to the following counsel through the Court's ECF system:

Paul Barnes
Wilson Minor
Mississippi Attorney General's Office
Walters Sillers Building
550 High Street, Suite 1200
Jackson, MS 39201
pbarn@ago.state.ms.us
wmino@ago.state.ms.us

This the 26th day of March, 2018.


                                            */s/ Robert B. McDuff*
                                            Robert B. McDuff, MS Bar #2532
                                            Law Office of Robert McDuff
                                            767 North Congress Street
                                            Jackson, MS 39202
                                            (601) 969-0802 (Phone)
                                            (601) 969-0804 (Fax)
                                            rbm@mcdufflaw.com