UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JACKSON WOMEN'S HEALTH
ORGANIZATION, et al.                                                                           PLAINTIFFS

vs.                                                          Civil Action No.  3:18-CV-171–CWR-FKB

MARY CURRIER, M.D., M.P.H., et al.                                                    DEFENDANTS

### MEMORANDUM IN SUPPORT OF RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO LIMIT DISCOVERY

COME NOW Defendants, Mary Currier, M.D., M.P.H., in her official capacity as State Health Officer of the Mississippi Department of Health, and Kenneth Cleveland, M.D., in his official capacity as Executive Director of the Mississippi State Board of Medical Licensure, and submit this memorandum in support of their Response in Opposition to Motion to Adopt Plaintiffs' Proposed Schedule and Limit Discovery to Exclude Legally Immaterial Issues [Doc. 16] (hereafter "motion to limit discovery") as follows, to-wit:

### INTRODUCTION

Mississippi Governor Phil Bryant signed H.B. 1510 into law on March 19, 2018.  The law prohibits doctors from performing abortions once the fetus has reached a gestational age of 15 weeks after a woman's last menstrual period ("LMP").  [*See* Exhibit 1, H.B. 1510].  Contrary to Plaintiffs' characterizations of the law, it is not a total ban as it includes certain health-related exceptions, specifically:  "medical emergency or in the case of a severe fetal abnormality."[1]

---

[1] H.B. 1510 includes the following definitions:

(h) "Severe fetal abnormality" means a life-threatening physical condition that, in reasonable medical judgment, regardless of the provision of life-saving medical treatment, is incompatible with life outside the womb.

[Exhibit 1].

Plaintiffs filed their original complaint as soon as Governor Bryant signed the law. [Doc. 1]. One day later, the Court entered a TRO on March 20, 2018. During a telephonic status conference with the Court on March 21, the parties agreed to see if they could reach an agreement as to a scheduling order for discovery and setting a date for a preliminary injunction hearing on H.B. 1510. Plaintiffs insisted that discovery must be limited to the issue of viability only. Defendants could not and did not agree; therefore both sides submitted competing proposed scheduling orders to the Court.

On March 26, the Plaintiffs filed their motion to limit discovery, asserting that the only material issue in the case is whether a 15 week old fetus could be viable, because, in Plaintiffs' view, controlling Supreme Court precedent requires a finding that any pre-viability restriction is unconstitutional on its face. [Doc. 16].

During another telephonic status conference on March 27, the day after the motion to limit discovery was filed, Plaintiffs' counsel again represented to the Court that viability was the only possible issue for discovery. However, the day after that, on March 28, Plaintiffs' counsel informed defense counsel for the first time that Plaintiffs intended to amend their complaint to challenge numerous Mississippi abortion laws and regulations in this same lawsuit, including

---

(i) "Major bodily function" includes, but is not limited to, functions of the immune system, normal cell growth, and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

(j) "Medical emergency" means a condition in which, on the basis of the physician's good faith clinical judgment, an abortion is necessary to preserve the life of a pregnant woman whose life is endangered by a physical disorder, physical illness, or physical injury, including a life-endangering physical condition arising from the pregnancy itself, or when the continuation of the pregnancy will create a serious risk of substantial and irreversible impairment of a major bodily function.

2

laws that have been, in some cases, in effect for over twenty years.  Also on March 28, the TRO was extended by prior agreement of the State Defendants until April 13, 2018.

Plaintiffs filed their Amended Complaint on April 9.  [Doc. 23].  Despite the fact that the Amended Complaint totally transforms the scope and nature of the case, Plaintiffs have not withdrawn their motion to limit discovery, or amended same to correspond to the actual procedural posture of the case or to take into account the significant impact the Amended Complaint has had on the scope of necessary discovery.  Plaintiffs cannot reasonably be heard to argue that discovery should be limited to "viability" when they are now essentially challenging "Mississippi's anti-abortion regime" (in their words) and full-fledged discovery on every aspect of the Clinic, its operations, and abortion in general must be conducted at some point.

On April 11, the Court held another telephonic status conference to discuss the Amended Complaint.  That same day, with the agreement of Defendants, the Court set a preliminary injunction hearing for September 24, 2018, and extended the TRO until 30 days after the conclusion of that hearing.  [Doc. 25].  In that same order, the Court, *sua sponte*, ordered this case to be separated into two parts, Part I as to the challenge to HB 1510 (the fifteen week law) and Part II as to the entirety of the rest of the case, including the claims asserted by Plaintiffs in their Amended Complaint.  *Id.*  The Order further provides that the two Parts of the case will have separate discovery schedules and orders.  *Id.*  As the Court relied on authority under Fed. R. Civ. P. 42, and not on Rule 21, the Order appears to be an order for separate trials, not an order of severance.  *See id.*  The State Defendants have filed a motion for reconsideration of the *sua sponte* portion of that order.  [Doc. 26].

## I. THE AMENDED COMPLAINT CHANGED THE NATURE OF THIS ACTION, RENDERING PLAINTIFFS' MOTION MOOT

The Court should not reach the merits of Plaintiffs' motion, which should be denied as moot, since it was filed before Plaintiffs amended their complaint and utterly transformed the nature and scope of this action. Plaintiffs' motion was filed in connection with a lawsuit that challenged only H.B. 1510, which precludes most, but not all, abortions after a gestational age of 15 weeks LMP. The current action includes challenges to at least seven different statutes (the challenge to the so-called "Trap Licensing Scheme" involves not only multiple statutes but an entire set of administrative regulations). [Doc. 23].

At a minimum, Plaintiffs should be required to refile a new motion explaining the differences between the first incarnation of this lawsuit and the actual lawsuit that now confronts Defendants and the Court, including the impact the amendment has had on the potential scope of discovery. As it now stands, Defendants are being required to take the initiative to address the substantial overlap in necessary discovery in responding to the motion, when Defendants should be entitled to hear from Plaintiffs on that issue first, and then respond. Plaintiffs should be required to explain and support their motion in the context of the Amended Complaint, not in the context of the original complaint only. Fundamental fairness requires that the party seeking relief should file first and brief all relevant issues, and that the opposing party have the opportunity to respond.

Further, Plaintiffs have also included a claim in their Amended Complaint that all of the challenged statutes must be struck down because they allege the cumulative effect of those provisions constitutes an "undue burden." [Doc. 23, at 52]. Plaintiffs are forced to include this dubious and speculative cumulative impact claim, because they are well aware that under

existing Supreme Court precedent, licensing requirements for abortion facilities, waiting period laws (inaccurately described by Plaintiffs as "mandatory delay and two trip requirement"), informed consent laws (inaccurately described by Plaintiffs as the "biased counseling law"), and physicians-only requirements, have each been independently upheld as constitutional. For example, in *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 883 (1992) the Court upheld the validity of Pennsylvania's informed consent law, stating:

> [We] permit a State to further its legitimate goal of protecting the life of the unborn by enacting legislation aimed at ensuring a decision that is mature and informed, even when in so doing the State expresses a preference for childbirth over abortion. In short, requiring that the woman be informed of the availability of information relating to fetal development and the assistance available should she decide to carry the pregnancy to full term is a reasonable measure to ensure an informed choice, one which might cause the woman to choose childbirth over abortion.

*Id.*; *see also Barnes v. Moore*, 970 F.2d 12, 13-15 (5th Cir. 1992) (Mississippi's informed consent and 24-hour waiting period laws facially valid under the U.S. Constitution); *Pro-Choice Mississippi v. Fordice*, 716 So. 2d 645, 666 (Mississippi's informed consent and 24-hour waiting period laws valid under state law and serve legitimate purpose in promoting "thoughtful consideration in deciding whether to obtain an abortion").[2] In *Casey* the Supreme Court also held that waiting periods are constitutional. *Casey*, 505 U.S. at 885 (24-hour waiting period "is a reasonable measure to implement the State's interest in protecting the life of the unborn, a measure that does not amount to an undue burden.").

Licensing requirements for abortion facilities are likewise constitutional. *Simopoulos v.*

---

[2] In *Gonzales v. Carhart*, Justice Kennedy further acknowledged that "[t]he State's interest in respect for life is advanced by the dialogue that better informs the political and legal systems, the medical profession, expectant mothers, and society as a whole of the consequences that follow from a decision to elect a late-term abortion." 550 U.S. 124, 129 (2007).

*Virginia*, 462 U.S. 506, 519 (1983) ("[R]equirement that second-trimester abortions be performed in licensed clinics is not an unreasonable means of furthering the State's compelling interest in protecting the woman's own health and safety.") (quotations omitted). In that regard, *Roe* itself held that:

> The State has a legitimate interest in seeing to it that abortion, like any other medical procedure, is performed under circumstances that insure maximum safety for the patient. This interest obviously extends at least to the performing physician and his staff, to the facilities involved, to the availability of after-care, and to adequate provision for any complication or emergency that might arise. The prevalence of high mortality rates at illegal 'abortion mills' strengthens, rather than weakens, the State's interest in regulating the conditions under which abortions are performed. Moreover, the risk to the woman increases as her pregnancy continues. Thus, the State retains a definite interest in protecting the woman's own health and safety when an abortion is proposed at a late stage of pregnancy . . . .

*Roe v. Wade*, 410 U.S. 113, 150 (1973) *holding modified by Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833 (1992).

Even though binding Supreme Court precedent and Fifth Circuit precedent places the constitutionality of the 24-hour waiting period and informed consent statutes beyond reasonable dispute, Defendants anticipate that Plaintiffs will nonetheless expect to be permitted extensive discovery regarding the justifications, medical benefits, and purported burdens of those laws, both individually and collectively. [*See* Doc. 23, at 52-54]. Despite the fact that the State's interest in protecting unborn life underlies, at a minimum, the 24-hour waiting period, informed consent, and fifteen-week laws, Plaintiffs are asking the Court to cabin discovery on the 15-week law to the issue of "viability" even though there will be substantial overlap with the discovery that must be conducted as to the other laws. Such duplicative discovery does not promote judicial economy or the convenience of anyone.

For these reasons, the instant motion should be denied as moot, and Plaintiffs should be required to refile a motion that accurately addresses the procedural posture and discovery issues which currently face the Court.

## II. PLAINTIFFS' HAVE ALREADY SUBMITTED EVIDENCE GOING BEYOND THE ISSUE OF VIABILITY IN THEIR OWN FILINGS

Plaintiffs are asking the Court to limit discovery to "viability" even though their original complaint raises much broader issues for discovery than mere "viability," such as the Clinic's operations [Doc. 1 at 2-3, 5-6], purported burdens on the Clinic's patients [Doc. 1, at 5-7], and the comparative safety of abortion vs. risks of childbirth [Doc. 1, at 6].

In a related sense, Plaintiffs submitted the Declaration of Dr. Sacheen Carr-Ellis as evidence in support of their motion for TRO. [Doc. 5-1]. In her declaration, Dr. Carr-Ellis did not limit her statements and opinions to the point when viability occurs. [*See* Doc. 5-1 at ¶¶ 6-7, 10-14]. Thus, Plaintiffs have already offered *in evidence* a doctor's opinions regarding not merely viability, but also the safety of abortion procedures, the protection of maternal health, the operations of the clinic, and the purported undue burden on women seeking an abortion. Those opinions are relevant to most or all of the challenged provisions, not merely the 15-week law. This is further evidence that ordering separate trials and discovery tracks will require duplication of discovery efforts, and will *not* promote judicial economy and convenience.

Defendants are entitled to test the veracity and accuracy of each and every allegation asserted by Plaintiffs in their filings and Dr. Carr-Ellis in her declaration through discovery, which means that discovery even as to the 15-week law must be broader than "viability." Defendants would be prejudiced and deprived of that opportunity should the Court grant Plaintiffs' motion.

7

### III. DEFENDANTS WILL BE PREJUDICED IF THE SCOPE OF DISCOVERY IS UNREASONABLY LIMITED AT THE OUTSET

Defendants reasonably need discovery to develop their defenses, including discovery to support the legislative justifications for all the challenged laws, including the State's interest in protecting unborn life. The State Defendants are entitled to appropriate discovery and the opportunity to develop an adequate record demonstrating its interests so as to permit meaningful review by the appellate courts. Otherwise, the State Defendants will be unfairly prejudiced and denied a meaningful opportunity to be heard on their defenses.

H.B. 1510 describes three explicit justifications for the law: the State's "interest in protecting the life of the unborn," its interest in safeguarding and regulating the medical profession, including prevention of "barbaric practice[s], [that are] dangerous for the maternal patient, and demeaning to the medical profession," and "protecting the health of women." *See* [Exhibit 1].

Defendants are justified in taking whatever discovery is necessary concerning the 15-week law to make an adequate record for consideration by this Court and for any potential appellate review that demonstrates the breadth and strength of the State's interests, including protecting the life of the unborn. There will be substantial overlap in the discovery that must be conducted regarding the 15-week law with discovery regarding several of the other challenged provisions. [Doc. 27]. Further, should a reviewing court determine that the State Defendants were prevented from conducting sufficient discovery and making a adequate record to demonstrate the breadth and strength of the State's interests, thereby precluding meaningful review, remand would likely be necessary.

In *Casey*, the Supreme Court specifically and notably acknowledged that "the State has

legitimate interests *from the outset of the pregnancy* in protecting the health of the woman *and the life of the fetus that may become a child*." *Casey*, 505 U.S. at 846 (emphasis added). The *Casey* Court quoted *Roe* regarding "the State's 'important and legitimate interest in potential life,'" and instructed that "[t]hat portion of the decision in *Roe* has been given too little acknowledgment and implementation by the Court in its subsequent cases." *Id.* at 871. Although the Court in *Casey* described the point of viability as the "critical fact" in the inquiry, *id.* at 860, (not the only *relevant* fact) the Court rejected the rigid trimester framework of *Roe* because it gave too little weight to the State's interest in protecting the unborn. "[I]n its later interpretation [the trimester framework] sometimes contradicted the State's permissible exercise of its powers." *Id.* at 872. The Court reasoned that the conclusion that the states could constitutionally impose some pre-viability limits on abortion was "indeed the inevitable consequence of our holding that the State has an interest in protecting the life of the unborn" and "in practice [the trimester framework] undervalues the State's interest in potential life." *Id.* at 872-73. Although Defendants think that this case may be decided in their favor based on existing law, they also assert that the undue burden standard similarly undervalues the State's interests in potential life and regulating the medical profession, and that if *any* of the laws challenged by Plaintiffs are deemed invalid under binding Supreme Court precedent, the undue burden test should be modified to give due consideration to those interests.

## IV. THE SCOPE OF DISCOVERY UNDER RULE 26 IS BROAD

Plaintiffs' motion asks the Court to reverse the normal course of litigation in the federal courts. The vast majority of cases in this District follow the standard path contemplated in the Rules: (1) plaintiff files a complaint; (2) the Court issues a Rule 16(a) Initial Order setting a case

management conference; (3) the parties meet and confer as required by 26(f); (4) the Magistrate Judge holds a case management conference; (5) the Magistrate Judge issues a case management order governing scheduling and deadlines in the case;[3] (6) the parties conduct discovery; (7) the parties engage in dispositive motion practice; (8) the Court conducts a final pretrial conference and issues a final pretrial order; (9) trial is conducted; and (10) any appeals are taken.

The general practice is that the scope of discovery is not limited from the outset by topic. If a party seeks discovery that the other side thinks is unwarranted or beyond the scope of Rule 26, there is mechanism for addressing such issues. A party which believes it is being subjected to improper discovery or discovery which is beyond the scope of Rule 26(b)(1) can object, and if necessary seek and obtain a protective order. Conversely, if a party from whom discovery is sought objects and rejects the discovery efforts, the other party has the right to file a motion to compel under Rule 37. That is the way discovery disputes are supposed to be handled under the Federal Rules, and there is no reason why the procedure should be changed for this case solely because it is about abortion.

In their motion, Plaintiffs selectively quoted Rule 26(b)(1). In full, Rule 26(b)(1) states:

> **(1) Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, *considering the importance of the issues at stake in the action,* the amount in controversy, the parties' relative access to relevant information, the

---

[3]The official form for a Case Management Order contained in the Local Rules includes the following primary sections: Estimated Days of Trial, including number of witnesses, and number of expert witnesses; Alternative Dispute Resolution; Consent to Trial By United State Magistrate Judge; Disclosure (governing pre-discovery disclosure requirements); Motions, Issue Bifurcation (included stage resolution or bifurcation for trial); Discovery Provisions and Limitations; and Scheduling Deadlines. There is not reason why all the issues, such as discovery and bifurcation could not be handled in a standard form case management order.

parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. 26(b)(1) (emphasis added).

Certainly a district court has wide, but not unlimited, discretion as to discovery issues. *Munoz v. Orr*, 200 F.3d 291, 304-05 (5th Cir. 2000). Rule 26 specifically states that "[u]nless otherwise limited by court order, the scope of discovery is as follows . . . ." Fed. R. Civ. P. 26(b)(1). However, discovery cannot be limited to simply the claims of the Plaintiffs. The scope of discovery includes "any nonprivileged matter that is relevant to any party's claim *or defense* and proportional to the needs of the case." *Id.* (emphasis added). Defendants have specifically asserted as defenses:

> Some or all of the laws and/or regulations challenged by Plaintiffs are constitutional and justified based on one or more of the following: the State's legitimate and compelling interests in protecting the life of the unborn, promoting respect for human life at all stages of pregnancy, protecting maternal health and safety, and safeguarding the ethics and integrity of the medical profession.
>
> ***
>
> If the courts determine that some or all of the laws and/or regulations challenged by Plaintiffs are unconstitutional under *existing* United States Supreme Court precedent, then the existing Supreme Court precedent gives insufficient weight to the State's interests in protecting the life of the unborn, protecting maternal health and safety, and protecting the ethics and integrity of medical profession, and therefore must be modified to give due consideration of same.

Amended Answer [Doc. 32, at 25].

Thus, if the Court grants Plaintiffs' motion, Defendants will be denied the opportunity to conduct discovery relevant to their defenses.

Further, the first consideration by a court as to the scope of discovery listed in Rule 26 is "*considering the importance of the issues at stake in the action.*" Fed. R. Civ. P. 26(b)(1).

11

Rarely, if ever, has an issue so sharply divided the American people as the issue of abortion. That was true at the time of *Roe v. Wade* in 1973, and it is true today. For example, in 2010, a Gallup poll reflected that abortion was the third most contentious morality issue facing the country, with 50% of the respondents reporting that they viewed abortion to be morally wrong, and 38% reporting that abortion was morally acceptable. http://news.gallup.com/poll/137357/four-moral-issues-sharply-divide-americans.aspx. This is consistent with what Justice Kennedy said in his dissent in *Stenberg*:

> The decision nullifies a law expressing the will of the people of Nebraska that medical procedures must be governed by moral principles having their foundation in the intrinsic value of human life, including the life of the unborn. Through their law the people of Nebraska were forthright in confronting an issue of immense moral consequence. The State chose to forbid a procedure many decent and civilized people find so abhorrent as to be among the most serious of crimes against human life, while the State still protected the woman's autonomous right of choice as reaffirmed in *Casey*."

*Stenberg v. Carhart*, 530 U.S. 914, 979 (2000) (Kennedy, J., dissenting). Only seven years later, Justice Kennedy's viewpoint carried the day, when in the majority opinion in *Gonzales* he upheld the constitutionality of a federal law barring partial-birth abortion, and emphasized that Congress had based that law on "respect for the dignity of human life" by banning what Congress had determined was "a brutal and inhumane procedure . . . [that] will further coarsen society to the humanity of not only newborns, but all vulnerable and innocent human life, making it increasingly difficult to protect such life." *Gonzales*, 550 U.S. at 156-57.

As a result, it is indisputable that this litigation involves issues of great public interest in which all citizens and residents of Mississippi are invested, regardless of where they may fall on the morality or legality of abortion. In an action involving controversial issues of such magnitude, it is important to public confidence in the courts that all relevant viewpoints are

presented, so the public believes that their views have been given due consideration by the Court. Granting Plaintiffs' motion would do the opposite.

Rule 26(b)(1) also states that "information within the scope of discovery need not be admissible in evidence to be discoverable." The Plaintiffs are trying to limit discovery to the evidence that they believe the Court would deem relevant and admissible at a preliminary injunction hearing or trial. This is contrary to the terms of Rule 26, which expressly contemplate discovery on matters the Court may ultimately deem irrelevant to the ultimate issues in the case. In effect, Plaintiffs are attempting to use this motion as a motion in limine before discovery has even begun, and should not be permitted to do so.

The Center for Reproductive Rights, whose attorneys represent Plaintiffs in this action, tried a similar tactic in *Bryant v. Woodall*, No. 1:16CV1368, 2017 WL 1292378 (M.D. N.C. Apr. 7, 2017), a district court case involving a constitutional challenge to that North Carolina's 20-week abortion law, N.C. Gen Stat. § 14-15.1(b). After plaintiffs in that case moved for summary judgment on their claim that the law was unconstitutional as applied to pre-viability abortions, defendants filed a motion under Fed. R. Civ. P. 56(d) asking the Court to extend the deadline for responding to the summary judgment motion for 30 days after a 60-day period of discovery. *Bryant*, 2017 WL 1292378 at *2. Defendants asserted that they intended to "conduct discovery on (1) fetal viability beginning at 20 weeks, (2) fetal susceptibility to pain, [and] (3) increased health risks for women who have abortions after 20 weeks[.]" *Id.* Plaintiffs opposed the motion, arguing that North Carolina's 20-week law "must be struck down under controlling Supreme Court precedent" and that Defendants would not be able to develop evidence that all fetuses are viable after twenty weeks of pregnancy. *Id.* at 4 (quotations omitted).

The Magistrate Judge rejected plaintiffs' arguments as to the issue of viability because "[g]ranting Defendants' Rule 56(d) Motion . . . does not overrule a Supreme Court decision . . .[, but] simply recognizes 'the importance of the parties . . . developing the record . . . so as to present a real opportunity for the court to examine viability, case by case, as viability steadily moves back towards conception.'" *Id.* at 7 (quoting *Edwards v. Beck*, 786 F.3d 1113, 1119 (8th Cir. 2015). Further, the Magistrate granted the Rule 56(d) as to the issues of whether a fetus can feel pain by the twentieth week of gestation and whether the risk to maternal health increases exponentially beyond the first trimester, concluding that although discovery regarding these two issues "appears to hold a lesser likelihood of ultimately affecting the disposition of Plaintiffs' summary judgment motion than discovery into viability-related matters, . . . the Court will allow discovery in those two areas as well." *Id.* at 7.

The Magistrate reasoned that to rule otherwise would prevent parties from arguing for a change in law. *See id.* ("As the Supreme Court has observed, 'the law may change or clarify in the midst of litigation.' Due to this potential mutability, unfavorable precedent does not necessarily mean that Defendants have no reasonable grounds for litigating an issue. A contrary rule would chill parties from advocating for changes in the law.") (brackets omitted) (quoting *Baker v. Windsor Republic Doors*, 2009 WL 2461383, at *6 (W.D. Tenn. Aug. 10, 2009) (quoting *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 422 (1978)). Further, the Magistrate agreed with the Defendants' argument that, "if Plaintiffs succeeded in persuading this Court to prevent Defendants from putting the latest scientific and medical information on these matters into the record in this case, then they would succeed in preventing any subsequent appellate court, including the Supreme Court, from even being able to

exercise its prerogative of modifying its own decisions." *Id.* at 7, n. 8 (quotations and alterations omitted).

The prudent decision of the magistrate has thus insulated the North Carolina court's substantive rulings from reversal on appeal by permitting the North Carolina defendants to develop an adequate record on which to base an argument for a change in law on appeal. If this Court limits discovery to the narrow issue of "viability," and a reviewing court determines Defendants were denied a reasonable opportunity to develop a record that supports modification of existing Supreme Court precedent, reversal and remand would be likely.

Based on the foregoing, Plaintiffs' motion to limit discovery should be denied. As Defendants argue in their motion for reconsideration of the Court's ruling creating separate discovery tracks [Doc. 25], there is no valid justification for such a limitation, especially in light of the breadth and extent of the issues raised in Plaintiffs' Amended Complaint, as to which discovery will substantially overlap with the discovery necessary and warranted with respect to H.B. 1510. Therefore, Defendants respectfully request that the Court deny Plaintiffs' motion to limit discovery to "viability."

Respectfully submitted this the 27th day of April, 2018.

**MARY CURRIER, M.D., M.P.H., in her official capacity as STATE HEALTH OFFICER OF THE MISSISSIPPI DEPARTMENT OF HEALTH, and KENNETH CLEVELAND, M.D., in his official capacity as EXECUTIVE DIRECTOR OF THE MISSISSIPPI STATE BOARD OF MEDICAL LICENSURE**

By: *s/Paul Barnes*
PAUL E. BARNES, MSB No. 99107
WILSON MINOR, MSB No. 102663
Special Assistant Attorneys General

15

S<small>TATE OF</small> M<small>ISSISSIPPI</small>
O<small>FFICE OF THE</small> A<small>TTORNEY</small> G<small>ENERAL</small>
Post Office Box 220
Jackson, MS   39205
Telephone No. (601)359-4072
Facsimile: (601)359-2003
pbarn@ago.state.ms.us
wmino@ago.state.ms.us

## CERTIFICATE OF SERVICE

This is to certify that on this day I, Paul E. Barnes, Special Assistant Attorney General for the State of Mississippi, electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent notice of such filing to the following:

Robert B. McDuff
MCDUFF & BYRD
767 North Congress Street
Jackson, MS 39202
rbm@McDuffLaw.com

Hillary Schneller - PHV
CENTER FOR REPRODUCTIVE RIGHTS
199 Water Street, 22nd Floor
New York, NY 10038
hschneller@reprorights.org

Julie Rikelman - PHV
CENTER FOR REPRODUCTIVE RIGHTS
199 Water Street, 22nd Floor
New York, NY 10038
jrikelman@reprorights.org

Leah Wiederhorn - PHV
CENTER FOR REPRODUCTIVE RIGHTS
199 Water Street, 22nd Floor
New York, NY 10038
lwiederhorn@reprorights.org

Christine Parker - PHV
CENTER FOR REPRODUCTIVE RIGHTS
199 Water Street, 22nd Floor
New York, NY 10038
cparker@reprorights.org

Aaron S. Delaney - PHV
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP - New York
1285 Avenue of the Americas
New York, NY 10019-6064
adelaney@paulweiss.com

Alexia D. Korberg - PHV
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP - New York
1285 Avenue of the Americas
New York, NY 10019-6064
akorgerg@paulweiss.com

Claudia L. Hammerman-PHV
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP - New York
1285 Avenue of the Americas
New York, NY 10019-6064
chammerman@paulweiss.com

Crystal Johnson - PHV
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP - New York
1285 Avenue of the Americas
New York, NY 10019-6064
cjohnson@paulweiss.com

Roberto J. Gonzalez - PHV
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP - Washington
2001 K Street, NW
Washington, DC 20006
rgonzalez@paulweiss.com

Beth L. Orlansky
MISSISSIPPI CENTER FOR JUSTICE - Jackson
P. O. Box 1023
5 Old River Place, Ste. 203 (39202)
Jackson, MS 39215-1023
borlansky@mscenterforjustice.org


THIS, the 27th day of April, 2018.

        *s/Paul Barnes*
        PAUL E. BARNES