IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JACKSON WOMEN'S HEALTH
ORGANIZATION, on behalf of itself
and its patients, et al.                                                                                    PLAINTIFFS

vs.                                                                                          NO. 3:18-CV-171-CWR-RKB

MARY CURRIER, M.D., M.P.H.,
in her official capacity as State Health
Officer of the Mississippi Department
of Health, et al.,                                                                                          DEFENDANTS

**REBUTTAL IN FURTHER SUPPORT OF MOTION TO RECONSIDER**

COME NOW Defendants, Mary Currier, M.D., M.P.H., in her official capacity as State Health Officer of the Mississippi Department of Health, and Kenneth Cleveland, M.D., in his official capacity as Executive Director of the Mississippi State Board of Medical Licensure, and submit this rebuttal in further support of their Motion to Reconsider, respectfully requesting that the Court reconsider and vacate a portion of the order entitled "Order Separating Claims & Extending Discovery" [Doc. 25], entered April 11, 2018, as follows, to-wit:

**THE RECORD MUST FORMALLY REFLECT THE BASIS
OF ANY RULING BY THE COURT**

Plaintiffs suggest that because the Court engaged in a colloquy with counsel during a telephonic status conference that the order does not need to explain the ruling. Pl. Memo. at 3-4. However, Defendants have a duty to preserve any objections by ensuring that an adequate record exists for meaningful appellate review, should such become necessary. *In re GHS Energy Corp.*, 791 F.2d 1200, 1201-02 (5th Cir. 1986). A court of appeals cannot consider matters which are not in the record. *Galvin v. OSHA*, 860 F.2d 181, 185 (5th Cir. 1988). The non-transcribed

conference with the Court earlier in the day does not suffice to preserve for potential appeal the basis for either the *sua sponte* portion of the Court's April 11 order or Defendants' objections thereto.

## THE SAME FOUR-FACTOR TEST APPLIES TO A PRELIMINARY INJUNCTION AS APPLIES TO A TRO

Plaintiffs argue that the extensive non-viability content of Dr. Carr-Ellis' declaration is not a relevant subject for discovery because that evidence was offered only to support their request for "preliminary relief" in the form of a TRO: "[t]he statements in Dr. Carr-Ellis' declaration had nothing to do with the scope of discovery, but instead were directed at meeting the evidentiary burden of showing the risk of irreparable harm in the absence of injunctive relief." Pl. Memo. at 7. However, "[t]o obtain a TRO, an applicant must demonstrate entitlement to a preliminary injunction. A TRO is simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009).

The 15-week law is set for a preliminary injunction hearing on September 24, 2018. [Doc. 25]. To obtain a preliminary injunction, Plaintiffs must satisfy the same evidentiary burden and four-factor test required to obtain a TRO. *Compare Turner v. Epps*, 460 F. App'x 322, 325 n.3 (5th Cir. 2012) ("A temporary restraining order requires: '(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.'") *with Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) ("The four elements a plaintiff must establish to secure a preliminary injunction are: (1) a substantial likelihood of

2

success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.")

Defendants are entitled to discovery concerning every factual assertion made by Dr. Carr-Ellis as they relate to Plaintiffs' claims for preliminary relief and the four-factor test. For example, as to irreparable injury, how many procedures has the Clinic historically performed after 15 weeks? Did the patient referenced by Dr. Carr-Ellis in her declaration actually have a post-15 week procedure performed the day the Court entered the TRO? How many post-15 week procedures has the Clinic performed since the TRO has been in effect? How many post-15 week procedures does the Clinic expect to perform by the time of the preliminary injunction hearing? What specific procedures does the Clinic use to perform abortions after 15 weeks? Does the Clinic perform any procedures between weeks 16-20 that would give them standing to challenge the 15-week law for any time period other than through the end of the sixteenth week? What risks are associated with performing abortions during weeks 16-20 of gestation in general? What risks are associated with the specific procedures performed by the Clinic during weeks 16-20? Are they the same, or do the risks vary with gestational age? Balance of harms requires the Court to consider the justifications for the 15-week law asserted by the Legislature (including the harms the law is intended to prevent) as compared with the harm alleged by Plaintiffs. Meaningful consideration of the public interest factor will also necessarily require full contemplation of the State's interest in protecting unborn life, and an appropriate evidentiary record would assist that inquiry.

These are just a few of the questions relevant to issues raised or discussed in Dr. Carr-

Ellis' declaration in support of the TRO that are equally relevant to issues on which Plaintiffs will bear the burden of proof at the preliminary injunction hearing. Defendants need discovery beyond "viability" not merely to develop evidence to support their defenses, but also to explore the accuracy and reliability of Dr. Carr-Ellis' declaration testimony concerning the Clinic's patients, operations, and procedures—all of which is fair game. As Plaintiffs continue to seek preliminary and extraordinary relief, to bar Defendants from taking discovery concerning any factual assertion made by Dr. Carr-Ellis' just because an assertion does not directly pertain to "viability" would be fundamentally unfair and an abuse of discretion.

## PRINCIPLES OF JUDICIAL ECONOMY ARE NOT SERVED BY SPLITTING ONE ACTION INTO TWO

Plaintiffs also do not explain exactly what burden would be placed on either Plaintiffs or the Court if discovery were to proceed normally, and Plaintiffs were not permitted to proceed in the divide-and-conquer manner they would prefer.[1] Plaintiffs do not explain how principles of judicial economy would be furthered if the parties must go forward with a separate appeal of a ruling on the 15-week law while at the same time pursuing extremely wide-ranging and expansive discovery concerning the other laws now challenged by Plaintiffs. Splitting one action

---

[1] Plaintiffs have not offered any reason—in either their response to Defendants' motion to reconsider [Doc. 36] or in their reply in support of their motion to limit discovery [Doc. 38]—as to why they chose to conceal their plan to amend the complaint.

Plaintiffs filed the original complaint on March 19. [Doc. 1]. The Court held a hearing and entered the TRO the next day on March 20. [Doc. 9]. The Court held a telephonic status conference the following day on March 21. Plaintiffs filed their motion to limit discovery on March 26. [Doc. 16]. The Court held another telephonic status conference the following day on March 27. On March 28, less than 24 hours after representing to both Defendants and the Court that "viability" remained the only pertinent issue for discovery, Plaintiffs revealed that they planned to amend and add to the existing lawsuit challenges to virtually every Mississippi law concerning abortion on the books. Plaintiffs have not explained why it was necessary to play "hide the ball" throughout ten days of discussions among counsel as well as two status conferences with the Court before disclosing their plan.

into two is profoundly inefficient and uneconomical.

During the April 11 status conference, although it is not reflected on the record, the Court noted that the new claims asserted in the amended complaint would presumably require the case to be placed on a complex track in light of the need for extensive discovery. Defendants will be pursuing discovery to support and illustrate the State's interest in protecting unborn life until the final discovery deadline, as it is a basis for several of the laws belatedly challenged by Plaintiffs, including the 24-hour waiting period and informed consent provisions. Plaintiffs will not be able to dodge questions concerning that issue during discovery in connection with "Part II." There is no reason to place limits on discovery for the sake of judicial economy, and it would do nothing to "conserve" the Parties' resources, because that discovery will be taking place anyway.[2]

But for the *sua sponte* portion of the April 11 order, there would be no reason to limit discovery; discovery could proceed normally as in every other case. By dividing the case, the Court is allowing Plaintiffs to have it both ways: to present all claims in one action, but to litigate as though they have brought two separate actions. Plaintiffs chose to amend their complaint and drastically alter the scope and focus of this lawsuit. They should not be allowed to avoid the consequences of that choice.

## CONCLUSION

For the foregoing additional reasons, the Court should grant Defendants' motion to reconsider and vacate the pertinent portion of the *sua sponte* order dated April 11, 2018.

Respectfully submitted this the 7th day of May, 2018.

---

[2] Defendants will prepare for the preliminary injunction hearing and create as full a record as practical by the time of that hearing. However, it is highly unlikely that record can be as complete as the record would be after 12-18 months of discovery.

          **MARY CURRIER, M.D., M.P.H., in her official capacity as STATE HEALTH OFFICER OF THE MISSISSIPPI DEPARTMENT OF HEALTH, and KENNETH CLEVELAND, M.D., in his official capacity as EXECUTIVE DIRECTOR OF THE MISSISSIPPI STATE BOARD OF MEDICAL LICENSURE**

By:   *s/Paul Barnes*
       PAUL E. BARNES, MSB No. 99107
       WILSON MINOR, MSB No. 102663
       Special Assistant Attorneys General

STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
Post Office Box 220
Jackson, MS   39205
Telephone No. (601)359-4072
Facsimile: (601)359-2003
pbarn@ago.state.ms.us
wmino@ago.state.ms.us

**CERTIFICATE OF SERVICE**

      This is to certify that on this day I, Paul E. Barnes, Special Assistant Attorney General for the State of Mississippi, electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent notice of such filing to the following:

Robert B. McDuff  
MCDUFF & BYRD  
767 North Congress Street  
Jackson, MS 39202  
rbm@McDuffLaw.com

Hillary Schneller - PHV  
CENTER FOR REPRODUCTIVE RIGHTS  
199 Water Street, 22nd Floor  
New York, NY 10038  
hschneller@reprorights.org

Julie Rikelman - PHV  
CENTER FOR REPRODUCTIVE RIGHTS  
199 Water Street, 22nd Floor  
New York, NY 10038  
jrikelman@reprorights.org

Leah Wiederhorn - PHV  
CENTER FOR REPRODUCTIVE RIGHTS  
199 Water Street, 22nd Floor  
New York, NY 10038  
lwiederhorn@reprorights.org

Christine Parker - PHV  
CENTER FOR REPRODUCTIVE RIGHTS  
199 Water Street, 22nd Floor  
New York, NY 10038  
cparker@reprorights.org

Aaron S. Delaney - PHV  
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP - New York  
1285 Avenue of the Americas  
New York, NY 10019-6064  
adelaney@paulweiss.com

Alexia D. Korberg - PHV
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP - New York
1285 Avenue of the Americas
New York, NY 10019-6064
akorgerg@paulweiss.com

Claudia L. Hammerman-PHV
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP - New York
1285 Avenue of the Americas
New York, NY 10019-6064
chammerman@paulweiss.com

Crystal Johnson - PHV
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP - New York
1285 Avenue of the Americas
New York, NY 10019-6064
cjohnson@paulweiss.com

Roberto J. Gonzalez - PHV
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP - Washington
2001 K Street, NW
Washington, DC 20006
rgonzalez@paulweiss.com

Beth L. Orlansky
MISSISSIPPI CENTER FOR JUSTICE - Jackson
P. O. Box 1023
5 Old River Place, Ste. 203 (39202)
Jackson, MS 39215-1023
borlansky@mscenterforjustice.org


THIS, the 7th day of May, 2018.

              *s/Paul Barnes*
              PAUL E. BARNES