**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

JACKSON WOMEN'S HEALTH
ORGANIZATION, on behalf of itself and its
patients,

and

SACHEEN CARR-ELLIS, M.D., M.P.H., on
behalf of herself and her patients,

      Plaintiffs,

v.

MARY CURRIER, M.D., M.P.H., in her
official capacity as State Health Officer of
the Mississippi Department of Health, et al.

      Defendants.

Case No. 3:18cv171-CWR-FKB

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**SUMMARY JUDGMENT (PHASE I)**

On March 19, 2018, Mississippi enacted House Bill 1510 ("the Act"), which bans abortion

in Mississippi after 15 weeks, except in extremely limited circumstances. The next day, this Court

entered a temporary restraining order preventing Defendants from enforcing the Act after finding

that Plaintiffs were likely to succeed on their claim that it is unconstitutional. Temporary

Restraining Order ("TRO"), ECF No. 9. In entering the order, the Court ruled, as the Supreme

Court has held time and again, that the Due Process Clause of the Fourteenth Amendment

guarantees a woman's "choice 'to have an abortion before viability,'" and that Mississippi "cannot

'prohibit any woman from making the ultimate decision' to do so." *Id.* at 1.

Discovery is now complete in this phase of the case, and there is no dispute about the only

issue of material fact: that a fetus is not viable until many weeks after the 15-week ban imposed by the Act.[1] Because there is no genuine dispute that the Act denies women the right to make the ultimate decision to terminate a pregnancy many weeks before viability, it is unconstitutional, and Plaintiffs are entitled to summary judgment. Plaintiffs therefore request that the Court declare the Act unconstitutional because it imposes an undue burden on a woman's right to end a pregnancy in violation of the Due Process Clause of the Fourteenth Amendment, and permanently enjoin its enforcement as applied to pre-viability abortions.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The Act bans abortions after 15 weeks as measured from the first day of a woman's last menstrual period ("lmp"),[2] with only narrow exceptions for medical emergencies or fetal anomalies that are incompatible with life. Because clear and undisputed medical evidence is overwhelming that viability is not possible until well after 15 weeks lmp, the Act is an unconstitutional ban on abortion prior to viability.

### I.       The Challenged Law

The Act was signed into law on March 19, 2018, H.B. 1510, 2018 Leg., Reg. Sess. (Miss. 2018), with an immediate effective date. *Id.* § 2. It states that "a person shall not intentionally or knowingly perform, induce, or attempt to perform or induce an abortion," if "the probable gestational age of the unborn human," which the physician is required to determine and document prior to performing the abortion, is "greater than fifteen (15) weeks." *Id.* § 1.4 ("the 15-week

---

[1] The Court has ordered that this case proceed in two phases, the first of which addresses only the 15-week ban. *See* Order Separating Claims & Extending TRO, ECF No. 25. Accordingly, "Defendants" here refers only to the State Defendants charged with enforcement of H.B. 1510: Mary Currier, M.D., in her official capacity as the State Health Officer for the Mississippi State Department of Health and Kenneth Cleveland, in his official capacity as the Executive Director of the Mississippi Board of Medical Licensure. *See* H.B. 1510 §§ 1.6, 1.7.

[2] Under the Act, "'gestational age' or 'probable gestation age'" is defined as "the age of an unborn human being as calculated from the first day of the last menstrual period [lmp] of the pregnant woman." Miss. H.B. 1510 § 1.3(f).

ban").[3]

The Act's only exceptions are for a patient experiencing a medical emergency or if there is a severe fetal abnormality. *Id.* The Act defines "medical emergency" as a physical condition or illness that makes it necessary to perform an abortion to save a patient's life or to prevent "a serious risk of substantial and irreversible impairment of a major bodily function." *Id.* § 1.3(j). It defines a "severe fetal abnormality" as "a life-threatening physical condition that, in reasonable medical judgment, regardless of the provision of life-saving medical treatment, is incompatible with life outside the womb." *Id.* § 1.3(h).

The Act includes substantial penalties. It provides that a physician "who intentionally or knowingly" violates the ban "commits an act of unprofessional conduct and his or her license to practice medicine in the State of Mississippi shall be suspended or revoked pursuant to action by the Mississippi State Board of Medical Licensure." *Id.* § 1.6. Further, the Act permits the Attorney General to enforce its provisions through an action in law or equity on behalf of the Director of the Mississippi State Department of Health ("the Department") or the Mississippi State Board of Medical Licensure. *Id.* § 1.7.

On March 20, 2018, this Court granted Plaintiffs' motion for a temporary restraining order against the Act. TRO, ECF No. 9. On April 11, 2018, this Court scheduled a preliminary injunction hearing for September 24, with the temporary restraining order to expire 30 days after that hearing. Order Separating Claims & Extending TRO, ECF No. 25.

## II.       The 15-Week Ban is a Pre-viability Abortion Ban

There is no factual dispute in this case that the Act bans abortion before viability. Viability is defined as the point at which there is a reasonable likelihood that a fetus will be able to survive

---

[3] Prior to the enactment of the 15-week ban, Mississippi banned abortions at 20 weeks lmp. Miss. Code Ann. § 41-41-137.

for a sustained period of time outside the womb, with or without medical assistance. *See* Decl. of Sacheen Carr-Ellis, M.D., M.P.H., in Supp. of Pls.' Mot. Summ. J. (Phase I) ("Carr-Ellis Decl.") ¶ 9 (attached as Ex. 1 to Pls.' Mot. Summ. J. (Phase I)); Decl. of Martina Badell, M.D. in Supp. of Pls.' Mot. Summ. J. (Phase I) ("Badell Decl.") ¶ 5 (attached as Ex. 2 to Pls.' Mot. Summ. J. (Phase I)); *see also Colautti v. Franklin*, 439 U.S. 379, 388 (1979) (Viability is the point in pregnancy at which "there is a reasonable likelihood of the fetus' sustained survival outside the womb, with or without artificial support.").

Plaintiffs have presented undisputed evidence that viability is medically impossible at 15 weeks lmp. *See* Carr-Ellis Decl. ¶ 11; Badell Decl. ¶ 4. Although many factors determine whether a particular fetus is viable, even in the most optimal circumstances, *no* fetus is viable at 15 weeks lmp. *See* Carr-Ellis Decl. ¶¶ 11–12; Badell Decl. ¶¶ 6–8. Defendants have provided no evidence whatsoever—nor could they—to undermine this well-established medical fact. To the contrary, for more than twenty years, it has been the Department's position that a fetus with a gestational age between 14–16 weeks lmp has "no chance of survival outside the womb." Dr. Mary Currier's Resps. to Pls.' First Set Reqs. Admis. to Defs., No. 2 ("Currier Resps.") (attached as Ex. 3 to Pls.' Mot. Summ. J. (Phase I)) (admitting that every version of the Department's Informed Consent Information booklet on abortion available between 1996 and prior to March 2018 included such a statement).

Additionally, as a matter of well-established medical fact, a fetus is not viable until many weeks after 15 weeks lmp, when the ban begins to operate. Defendants do not dispute this fact either. Instead, Defendant Currier admits that there is no data indicating that any baby born in Mississippi before 22 weeks lmp has ever survived to hospital discharge, and that an infant born at 22 weeks lmp has only "a small chance of surviving." Currier Resps. No. 5; *see also Informed*

*Consent Information*, Miss. State Dep't of Health (March 2018), https://msdh.ms.gov/msdhsite/_static/resources/7582.pdf. Indeed, extraordinary, life-sustaining intervention is generally not possible for a delivery before 22 weeks lmp, because the infant's development will not have progressed to a point where such intervention is anatomically possible. *See* Badell Decl. ¶ 11. Accordingly, Plaintiffs' experts place viability, at the earliest, at 23 weeks lmp. Badell Decl. ¶ 4; Carr-Ellis Decl. ¶ 11.

If the Act takes effect, abortion will be illegal in Mississippi after 14 weeks, 6 days lmp except in extremely limited circumstances. *See* Carr-Ellis Decl. ¶ 10. Thus, without an injunction, all women who would have been able to obtain care at the Clinic to end a pregnancy after this point will be turned away—on average, at least one patient every week. *See id.* ¶ 8. These patients will either be forced to carry their pregnancy to term against their will or will have to leave the state to obtain care. *See id.* ¶ 10.

## ARGUMENT

### I. Legal Standard

Summary judgment is proper when there is no genuine dispute of material fact and judgment is appropriate as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also, e.g.*, *Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 175 (5th Cir. 2016). Once Plaintiffs introduce competent evidence into the record regarding the material facts, it is Defendants' burden to demonstrate a genuine dispute about those facts. *See, e.g.*, *Diaz*, 820 F.3d at 176 (affirming grant of summary judgment when party opposing motion failed to articulate specific evidence in record that would create a genuine dispute).

As the Court has already ruled, the constitutionality of the Act "hinges on a single question: whether the 15-week mark is before or after viability." Order on Disc., ECF No. 41. Here, there is

no genuine dispute that the 15-week mark is approximately two months prior to viability, and thus the 15-week ban prohibits abortions well before viability. Accordingly, the Court should grant summary judgment to Plaintiffs and declare the Act unconstitutional as applied to pre-viability abortions.

## II.    H.B. 1510 Bans Abortion Prior to Viability and is Therefore Unconstitutional Under Settled Supreme Court Precedent

Recognizing "the urgent claims of the woman to retain the ultimate control over her destiny and her body, claims implicit in the meaning of liberty," the Supreme Court has held that a "woman has a right to choose to terminate her pregnancy" before viability. *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 869–70 (1992). Accordingly, the Supreme Court has also held that "a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Casey*, 505 U.S. at 879 (affirming the "central holding of *Roe v. Wade*[, 410 U.S. 113, 163–64 (1973)]"); *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 453 (5th Cir. 2014) ("[F]or more than forty years, it has been settled constitutional law that the Fourteenth Amendment protects a woman's basic right to choose an abortion."), *cert. denied*, 136 S. Ct. 2536 (2016).

An unbroken line of Supreme Court and circuit court precedent—including from the Fifth Circuit—has held that a state may not ban abortion before viability. *Casey*, 505 U.S. at 846 ("Before viability, the State's interests are not strong enough to support a prohibition of abortion . . . ."); *see also Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2299 (2016) (reaffirming that a law is invalid if it bans abortion "before the fetus attains viability" (quoting *Casey*, 505 U.S. at 878)); *Gonzales v. Carhart*, 550 U.S. 124, 146 (2007) ("assum[ing]" the principle that "[b]efore viability, a State 'may not prohibit any woman from making the ultimate decision to terminate her pregnancy'" (quoting *Casey*, 505 U.S. at 879)); *Stenberg v. Carhart*, 530 U.S. 914, 920–21 (2000) (declining to "revisit" the legal principle reaffirmed in *Casey* that "before 'viability . . . the woman

has a right to choose to terminate her pregnancy'" (quoting *Casey*, 505 U.S. at 870)); *Roe*, 410 U.S. at 163–64; *accord Jackson Women's Health Org.*, 760 F.3d at 457 ("Pre-viability, a woman has the constitutional right to end her pregnancy . . . ."); *Isaacson v. Horne*, 716 F.3d 1213, 1217 (9th Cir. 2013) (stating the Supreme Court has been "unalterably clear regarding one basic point": "a woman has a constitutional right to choose to terminate her pregnancy before the fetus is viable"), *cert. denied*, 571 U.S. 1127 (2014); *Sojourner T v. Edwards*, 974 F.2d 27, 31 (5th Cir. 1992) (striking down ban on all abortions with exceptions), *cert. denied*, 507 U.S. 972 (1993).

At various points in this case, Defendants have appeared to argue that the State of Mississippi may have an interest, such as protecting the health of the woman or the potential life of the fetus prior to viability, that could override a woman's constitutional right to decide whether to terminate her pregnancy before viability. But the Supreme Court has categorically stated that, before viability, the state's interests "are not strong enough to support a prohibition of abortion." *Casey*, 505 U.S. at 846; *see also id.* at 860. Put another way, "the Supreme Court has already weighed the State's interests against a woman's privacy right to terminate her pregnancy prior to viability" and concluded that before viability, no state interest is strong enough to support a ban. *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 888 F.3d 300, 307 (7th Cir. 2018). Accordingly, lower courts "cannot reweigh a woman's privacy right against the State's interest," nor can exceptions render a ban constitutional. *Id.*; *see also Casey*, 505 U.S. at 879 ("Regardless of whether exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability."). Thus, the arguments Defendants make here have been rejected by the Supreme Court and every federal appellate court that has considered them. *See Roe*, 410 U.S. at 150, 163–64; *see also Casey*, 505 U.S. at 860 ("[D]ivergences from the factual premises of 1973 have no bearing

on the validity of *Roe*'s central holding, that viability marks the earliest point at which the State's interest in fetal life is constitutionally adequate to justify a legislative ban on nontherapeutic abortions."); *Isaacson*, 716 F.3d at 1229 (holding that because 20-week ban "acts as a prohibition of, and not merely a limitation on the manner and means of, pre-viability abortions, under long-established Supreme Court law no state interest is strong enough to support it"). Given this unwavering line of Supreme Court precedent, every federal appellate court faced with a law prohibiting abortion before viability, with or without exceptions, has ruled that it violates the Fourteenth Amendment.[4]

Further, courts have repeatedly held that a state cannot diminish a woman's constitutional rights by setting a fixed number of weeks of pregnancy as the point at which it can override her ultimate decision to terminate a pregnancy: "Viability is the critical point." *Colautti*, 439 U.S. at 389. Viability is the point in pregnancy "when, in the judgment of the attending physician on the particular facts of the case before him, there is a reasonable likelihood of the fetus' sustained survival outside the womb, with or without artificial support." *Id.* at 388. The Supreme Court has been clear that "it is not the proper function of the legislature or the courts to place viability, which

---

[4] The Supreme Court has affirmed or denied *certiorari* in each one of those cases it has been asked to review. *See MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 773 (8th Cir. 2015) (striking down ban on pre-viability abortions at 6 weeks with exceptions), *cert. denied*, 136 S. Ct. 981 (2016); *Edwards v. Beck*, 786 F.3d 1113, 1117 (8th Cir. 2015) (striking down ban on pre-viability abortions at 12 weeks with exceptions), *cert. denied*, 136 S. Ct. 895 (2016); *Isaacson*, 716 F.3d at 1217, 1231 (striking down ban on pre-viability abortions at 20 weeks with exceptions), *cert. denied*, 571 U.S. 1127 (2014); *Jane L. v. Bangerter*, 102 F.3d 1112, 1114, 1118 (10th Cir. 1996) (striking down ban on pre-viability abortions at 22 weeks with exceptions), *cert. denied*, 520 U.S. 1274 (1997); *Sojourner T*, 974 F.2d at 31 (striking down ban on all abortions with exceptions), *cert. denied*, 507 U.S. 972 (1993); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1368–69 (9th Cir. 1992) (same), *cert. denied*, 506 U.S. 1011 (1992). State high courts have likewise struck down laws that ban abortion prior to viability. *See DesJarlais v. State, Office of Lieutenant Governor*, 300 P.3d 900, 904–05 (Alaska 2013) (invalidating proposed ban on all abortions with exception for "necessity"), *reh'g denied*; *In re Initiative Petition No. 395, State Question No. 761*, 286 P.3d 637, 637–38 (Okla. 2012) (invalidating proposed definition of a fertilized egg as a "person" under due process clause), *cert. denied*, 568 U.S. 978 (2012); *Wyo. Nat'l Abortion Rights Action League v. Karpan*, 881 P.2d 281, 287, 293 (Wyo. 1994) (ruling proposed ban on abortions would be unconstitutional); *In re Initiative Petition No. 349, State Question No. 642*, 838 P.2d 1, 7, 12 (Okla. 1992) (striking down proposed abortion ban with exceptions), *cert. denied*, 506 U.S. 1071 (1993).

essentially is a medical concept, at a specific point in the gestation period. The time when viability

is achieved may vary with each pregnancy." *Id.* at 388 (quoting *Planned Parenthood of Cent. Mo.*

*v. Danforth*, 428 U.S. 52, 64 (1976)). As the Supreme Court has stated:

> Because [viability] may differ with each pregnancy, neither the legislature nor the
> courts may proclaim one of the elements entering into the ascertainment of
> viability—be it weeks of gestation or fetal weight or any other single factor—as the
> determinant of when the State has a compelling interest in the life or health of the
> fetus.

*Id.* at 388–89. Rather, "the determination of whether a particular fetus is viable is, and must be, a

matter for the judgment of the responsible attending physician." *Id.* at 388 (quoting *Danforth*, 428

U.S. at 64). "State regulation . . . must allow the attending physician 'the room he needs to make

his best medical judgment.'" *Id.* at 397 (quoting *Doe v. Bolton*, 410 U.S. 179, 192 (1973)).

Accordingly, federal appellate courts have unanimously struck state laws that seek to fix

viability, or otherwise limit access to abortion, based on a specific gestational age.[5] For example,

in *Isaacson*, the Ninth Circuit invalidated a 20-week ban with limited exceptions. There, the

Defendants did not dispute that the ban prevented some women from obtaining abortions prior to

viability. The Ninth Circuit held that because the ban deprived some women of the ultimate

decision to terminate their pregnancies prior to viability, it was unconstitutional "under a long line

of invariant Supreme Court precedents." *Isaacson*, 716 F.3d at 1217; *see also id.* ("While the state

may *regulate* the mode and manner of abortion prior to fetal viability, it may not *proscribe* a

woman from electing abortion . . . ."). Likewise, the Eighth Circuit held unconstitutional bans on

abortion at six and twelve weeks based on the undisputed fact that both laws banned abortion

months before viability. *MKB Mgmt. Corp. v. Stenehjem*, 795 F.3d 768, 773 (8th Cir. 2015)

(affirming district court's grant of summary judgment because 6-week ban "generally prohibits

---

[5] *See, e.g.*, *MKB Mgmt. Corp.*, 795 F.3d at 773 (6-week ban); *Edwards*, 786 F.3d at 1117 (12-week ban); *Isaacson*,
716 F.3d at 1217, 1231 (20-week ban); *Jane L.*, 102 F.3d at 1114, 1118 (22-week ban).

abortions before viability"), *cert. denied*, 136 S. Ct. 981 (2016); *Edwards v. Beck*, 786 F.3d 1113, 1117 (8th Cir. 2015) ("By banning abortions after 12 weeks' gestation, the Act prohibits women from making the ultimate decision to terminate a pregnancy at a point before viability."), *cert. denied*, 136 S. Ct. 895 (2016).

In sum, the law is clear that a state does not have the power to ban abortion before viability, regardless of what exceptions may be provided to the ban. There is no dispute in this case that viability is not possible until well after 15 weeks lmp, when the ban begins to operate. Mississippi's 15-week ban is therefore "a preclusion prior to fetal viability and is thus invalid under binding Supreme Court precedent." *Isaacson*, 716 F.3d at 1217. For that reason, the Court should strike the ban as applied to pre-viability abortions. *See, e.g.*, *Casey*, 505 U.S. at 846, 870–71, 879.

### III.    This Court Should Grant Permanent Injunctive Relief

Given that the 15-week ban prohibits abortion before viability, it violates the Fourteenth Amendment rights of Plaintiffs' patients. Where, as here, (1) Plaintiffs have established success on the merits; (2) the loss of constitutional freedoms unquestionably constitutes irreparable injury to Plaintiffs' patients; (3) the State of Mississippi cannot be harmed by the issuance of an injunction that prevents the State from enforcing an unconstitutional law, and (4) upholding constitutional rights serves the public interest, permanent injunctive relief is warranted. *See Elrod v. Burns*, 427 U.S. 347, 373–74 (1976); *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006). For these reasons, Plaintiffs request that the Court declare the Act unconstitutional as applied to pre-viability abortions and permanently enjoin its enforcement as applied to pre-viability abortions.

### <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Summary Judgment, declare the Act unconstitutional under the Due Process

Clause of the Fourteenth Amendment, and permanently enjoin Defendants from enforcing it as

applied to pre-viability abortions.


Respectfully submitted this 24th day of August, 2018.

/s/ Hillary Schneller_____
Julie Rikelman,* NY Bar # 3011426
Christine Parker,* CA Bar # 315529
Hillary Schneller,* NY Bar # 5151154
Leah Wiederhorn,* NY Bar # 4502845
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3777 (Phone)
(917) 637-3666 (Fax)
jrikelman@reprorights.org
cparker@reprorights.org
hschneller@reprorights.org
lwiederhorn@reprorights.org
*Pro Hac Vice

Roberto J. Gonzalez,* D.C. Bar # 501406
Paul, Weiss, Rifkind, Wharton &
Garrison, LLP
2001 K Street, NW
Washington, D.C. 20006
(202) 223-7316 (Phone)
(202) 204-7344 (Fax)
rgonzalez@paulweiss.com
*Pro Hac Vice

Robert B. McDuff, MS Bar # 2532
767 North Congress Street
Jackson, MS 39202
(601) 969-0802 (Phone)
(601) 969-0804 (Fax)
rbm@mcdufflaw.com

Beth L. Orlansky, MS Bar # 3938
Mississippi Center for Justice
P.O. Box 1023
Jackson, MS 39205
(601) 352-2269 (phone)
borlansky@mscenterforjustice.org

Claudia Hammerman,* NY Bar # 2574333
Aaron S. Delaney,* NY Bar # 4321642
Caitlin Grusauskas,* NY Bar # 4846788
Alexia D. Korberg,* NY Bar # 5094222
Paul, Weiss, Rifkind, Wharton &
Garrison, LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 373-3000 (Phone)
(212) 492-0364 (Fax)
chammerman@paulweiss.com
adelaney@paulweiss.com
cgrusauskas@paulweiss.com
akorberg@paulweiss.com
*Pro Hac Vice

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2018, I electronically filed the foregoing

Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment (Phase I) with the

Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic

filing to all counsel of record.

> _s/ Hillary Schneller_
> Hillary Schneller,* NY Bar # 5151154
> Center for Reproductive Rights
> 199 Water Street, 22nd Floor
> New York, NY 10038
> Ph: (917) 637-3777
> Fax: (917) 637-3666
> hschneller@reprorights.org
> *Admitted _pro hac vice_