**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| JACKSON WOMEN'S HEALTH ORGANIZATION, on behalf of itself and its patients,<br><br>and<br><br>SACHEEN CARR-ELLIS, M.D., M.P.H., on behalf of herself and her patients,<br><br>        Plaintiffs,<br><br>v.<br><br>THOMAS DOBBS, M.D., in his official capacity as State Health Officer of the Mississippi Department of Health, et al.<br><br>        Defendants. | Case No. 3:18-cv-171-CWR-FKB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Just four months after this Court permanently enjoined H.B. 1510, which banned abortion after 15 weeks of pregnancy (the "15 Week Ban"), Mississippi enacted Senate Bill 2116 ("S.B. 2116" or the "6 Week Ban"), a near-total abortion ban that represents the latest salvo in Mississippi's "decades-long campaign, fueled by national interest groups, to ask the Supreme Court to overturn *Roe* v. *Wade*." *Jackson Women's Health Org.* v. *Currier*, 349 F. Supp. 3d 536, 542 (S.D. Miss. 2018), *appeal filed*, No. 18-60868 (5th Cir. Dec. 17, 2018).  Plaintiffs seek a preliminary injunction to block enforcement of S.B. 2116, the State's second effort in only a year to adopt an unconstitutional ban on abortion well before viability, and strip pregnant women of

their constitutionally protected freedom to decide whether or not to continue a pregnancy prior to viability.[1]

        S.B. 2116 makes it a criminal offense to perform an abortion if a "fetal heartbeat" is detected, thereby banning abortions beginning at approximately 6 weeks of pregnancy except in extremely narrow circumstances.  If allowed to take effect on July 1, 2019, the 6 Week Ban will prohibit nearly all abortions in Mississippi, which is precisely the state's goal.  The 6 Week Ban continues a long-running strategy by Mississippi lawmakers and national anti-abortion special interest groups to eliminate abortion in the state, and ultimately the entire nation.  This strategy has taken various forms, including the web of onerous laws and regulations that are the subject of Plaintiffs' pending legal challenge, and now, in its most brazen iteration yet, the state seeks to ban abortions at a point so early that many women may not even be aware they are pregnant before the ban strips them of their rights.  The 6 Week Ban is on a collision course with *Roe* v. *Wade* and its progeny, by design.  *See, e.g.*, Larrison Campbell, *Republicans, Emboldened by a Trump Supreme Court, Advance 'Heartbeat" Abortion Ban Bill For First Time*, MISSISSIPPI TODAY (Feb. 5, 2019), https://mississippitoday.org/2019/02/05/republicans-emboldened-by-a-trump-supreme-court-advance-heartbeat-abortion-ban-bill-for-first-time/ (quoting a sponsor of S.B. 2116, Sen. Joey Fillingane, describing current Supreme Court composition as "absolutely . . . a factor" behind the 6 Week Ban).  Indeed, in response to a tweet threatening legal action if S.B. 2116 was signed,

---

[1] Plaintiffs are filing this Motion simultaneously with their motion for leave to file a supplemental amended complaint that supplements the existing complaint to add new claims and allegations related to the 6 Week Ban.  Plaintiffs understand, however, that the Court must grant that motion for leave before ruling on this Motion.

Plaintiffs are not moving this Court to re-open Part I of this case under Fed. R. Civ. P. 60(b) or to modify the permanent injunction issued against the 15 Week Ban. (ECF No. 89.)  Plaintiffs seek preliminary injunctive relief against S.B. 2116 because it has the effect of imposing an undue burden on Plaintiffs' patients' right to pre-viability abortion.  At this time, Plaintiffs do not seek preliminary injunctive relief based on their claims that the 6 Week Ban deprives Plaintiffs' patients of their right to equal protection or that it imposes an undue burden because it has an improper purpose, both of which are set forth in their proposed supplemental amended complaint.  (ECF No. 99-1.)

Governor Bryant tweeted: "We will all answer to the good Lord one day.  I will say in this instance, 'I fought for the lives of innocent babies, even under threat of legal action.'"[2]   Mississippi's willful disregard of settled precedent—and its flouting of this Court's clear ruling four months ago—lays bare its true purpose, and cannot be condoned.

Plaintiffs can make the necessary showing to support a preliminary injunction. Given controlling precedent and this Court's recent order enjoining the 15 Week Ban, Plaintiffs almost certainly will succeed on the merits of their claim that the 6 Week Ban violates the rights of their patients under the Due Process Clause of the Fourteenth Amendment.  The Constitution guarantees—as recently reaffirmed by this Court, following decades of Supreme Court precedent—that women have the authority to decide for themselves whether or not to have an abortion before viability.  The 6 Week Ban supplants that authority with the coercive power of the State of Mississippi (indeed, even earlier in pregnancy than the 15 Week Ban) and, as such, is unconstitutional.

In addition, enforcement of the 6 Week Ban will irreparably harm Plaintiffs' patients by denying their constitutional right to obtain a pre-viability abortion and by effectively making abortion care unavailable in Mississippi.  If the 6 Week Ban takes effect, it will prohibit nearly all abortions performed at Jackson Women's Health Organization, the only licensed abortion facility and regular abortion provider in the state.   Defendants, by contrast, will not be harmed by an injunction that maintains the status quo, nor will the public interest be served by enforcement of an unconstitutional law.  A preliminary injunction against the 6 Week Ban is therefore warranted.

---

[2]     Phil     Bryant     (@PhilBryantMS),     Twitter     (Mar.     20,     2019), https://twitter.com/PhilBryantMS/status/1108503101781262336.

## FACTUAL BACKGROUND

### I.      The 6 Week Ban.

On March 21, 2019, a year after signing the 15 Week Ban and just four months

after this Court permanently enjoined that prior ban as unconstitutional, Mississippi Governor Phil

Bryant signed S.B. 2116 into law.  *See Jackson Women's Health Org.*, 349 F. Supp. 3d at 538.

S.B. 2116, entitled "An Act . . . To Prohibit An Abortion Of An Unborn Human Individual With

A Detectable Fetal Heartbeat," prohibits the performance of "an abortion on a pregnant woman

with the specific intent of causing or abetting the termination of the life of the unborn human

individual that the pregnant woman is carrying and whose fetal heartbeat has been detected[.]"

S.B. 2116 § 1(2)(a), 2019 Leg., Reg. Sess. (Miss. 2019).[3]    Detection of a "fetal heartbeat" can

occur as early as 6 weeks, 0 days of pregnancy, as measured from the first day of a woman's last

menstrual period (LMP).[4]    *See* Decl. Sacheen Carr-Ellis, M.D., M.P.H., Supp. Pls.' Mot. for

Prelim. Inj. ("Carr-Ellis Decl.") ¶¶ 11-12.[5]    The ban becomes effective on July 1, 2019.  S.B.

2116 § 3.

The only exceptions to the 6 Week Ban are if the abortion is "designed or intended,

in the person's reasonable medical judgment, to prevent the death of a pregnant woman or to

---

[3] "Fetal heartbeat" is defined as "cardiac activity or the steady or repetitive rhythmic contraction of the fetal heart within the gestational sac." *Id.* § 1(1)(a).  A copy of S.B. 2116 is attached to the accompanying Motion for Preliminary Injunction as Exhibit A ("Ex. A").

[4] Pregnancy is commonly measured by the number of days that have passed since the first day of a woman's last menstrual period ("LMP"), also referred to as "gestational age."  LMP does not always correlate with the actual number of days since a given woman's last period, including because women may ovulate without having a menstrual period two weeks before.  LMP may be better understood as roughly two weeks before fertilization. Carr-Ellis Decl. ¶ 7 n.1.

[5] Plaintiff Sacheen Carr-Ellis, M.D., M.P.H. is a board-certified obstetrician/gynecologist licensed to practice medicine in Mississippi.  *Id.* ¶ 1.  Dr. Carr-Ellis has been providing abortion services for approximately twenty years and has been Jackson Women's Health Organization's medical director since 2015.  *Id.* ¶¶ 3-4.  Dr. Carr-Ellis's declaration in support of Plaintiffs' motion is attached to the accompanying Motion for Preliminary Injunction as Exhibit B.

prevent a serious risk of the substantial and irreversible impairment of a major bodily function of the pregnant woman." *Id.* § 1(2)(b)(i).[6]  These limited exceptions to the 6 Week Ban are even more restrictive than the 15 Week Ban, which provided an exception for severe fetal abnormalities. *See* H.B. 1510 § 1.4(b).

Violation of the 6 Week Ban subjects abortion providers to severe criminal penalties and professional sanctions: "purposeful[], knowing[] or reckless[]" violation is a misdemeanor punishable by a penalty of $1,000, up to 6 months' imprisonment in a county jail, or both, and a violation (even if unintentional) also is "grounds for the nonissuance, suspension, revocation or restriction of a [medical] license or the denial of restatement or renewal of a [medical] license" by the state.  S.B. 2116 §§ 1(2)(e) and 2(16); *see* Miss. Code Ann. § 41-41-39.

## II.     The 6 Week Ban is a Near-Total Abortion Ban.

The critical and undisputable fact that supports—indeed, compels—issuance of a preliminary injunction is that the 6 Week Ban, like the 15 Week Ban before it, prohibits abortion before viability.  As described below, viability—the point at which there is a reasonable likelihood that a fetus will be able to survive for a sustained period of time outside the womb, with or without medical assistance—is medically impossible at 6 weeks LMP, when the ban begins to operate. Carr-Ellis Decl. ¶ 20.

Prior to an abortion at the Jackson Women's Health Organization ("the Clinic"),[7] it is standard medical practice—and a requirement under Mississippi law—for a clinician to

---

[6] If a person performs an abortion under these exceptions, the 6 Week Ban requires the person to "declare in writing, under penalty of perjury," that the abortion was necessary for one of these purposes and "provide in that written document, under penalty of perjury, the medical condition of that pregnant woman that the [abortion] will assertedly address, and the medical rationale for the conclusion" that the exception applied.  S.B. 2116 § 1(2)(b)(ii).

[7] Jackson Women's Health Organization ("the Clinic") is the only licensed abortion facility in Mississippi.  *Id.* ¶ 4. The Clinic provides more than 2,000 abortions each year.  *Id.* ¶ 6. Abortion care is available at the Clinic beginning at approximately 5 weeks up to 16 weeks 0 days LMP.  *Id.* ¶ 7.

perform an ultrasound on the patient.  Carr-Ellis Decl. ¶ 8.  An ultrasound is performed for a variety of reasons, including determining the gestational age of the pregnancy and determining whether the pregnancy is located in the patient's uterus.  *Id.*   It can also detect embryonic or fetal cardiac activity.  *Id.*  The earlier the patient's pregnancy, the more likely a clinician is to use vaginal, rather than abdominal, ultrasound, because vaginal ultrasound creates a clearer image than abdominal ultrasound.  *Id.* ¶ 9.  It is necessary, before performing an abortion, to confirm that the pregnancy is in the uterus, and not ectopic.  The Clinic does not typically perform abortions before 5 weeks, 0 days LMP because, due to the embryo's very small size at that stage, it may not be possible to confirm the location of the pregnancy, even with the use of vaginal ultrasound, as is necessary before performing an abortion.  *Id.* ¶ 10.

Cardiac activity in a still-forming embryo can be detected with the use of vaginal ultrasound at approximately 6 weeks, 0 days LMP.  *Id.* ¶ 11.  At that point in pregnancy, the embryo is tiny, and cardiac activity can be seen—as a flicker on the screen—on ultrasound, but it cannot be heard.  *Id*.  At that point in pregnancy, no embryo is capable of surviving for a sustained period outside the womb, with or without medical assistance: the 6 Week Ban prohibits abortions many months before a fetus may be viable.  *Id.* ¶ 19.

Many women do not make their first trip to the Clinic by 6 weeks LMP, and thus the 6 Week Ban bans abortion before many women even have begun to seek such care.  *See id.* ¶ 12.  Until they miss a period, many women have no reason to suspect that they may be pregnant.  *Id.* ¶ 13.  To put S.B. 2116 in perspective, for a woman with an average menstrual cycle (*e.g.*, a period every 28 days), 6 weeks, 0 days LMP is just two weeks after a missed period.  *Id.* ¶ 13.  However, even at that point, many women may not have any of the physical indicators of potential pregnancy, such as a missed period.  *Id.* ¶ 14.  Many women do not menstruate at regular intervals,

or go long stretches without experiencing a menstrual period, and therefore may not even realize at 6 weeks LMP that they may be pregnant. Indeed, it is normal for women to have an ovulatory cycle that is not within two weeks of their last period. *Id.* Further, women may experience bleeding—including bleeding during early pregnancy—that can be mistaken for a period, and irregular periods or intra-menstrual bleeding may occur in women who are obese. *Id.*

In addition, women who have certain medical conditions, who are breastfeeding, or who use hormonal contraceptives may not experience a missed period at 6 weeks LMP. *Id.* ¶ 15. Breastfeeding, for example, can suppress menstruation for weeks or months, and even after a woman's period returns, it may continue to be irregular; it is common for a breastfeeding woman to have a shorter or longer period than normal, to skip a period, or to have a period return and then go months before her next one. *Id.* Additionally, women using hormonal contraception can become pregnant, but may not have regular periods or experience a period at all. *Id.*

For all of these reasons, a woman may be 6 weeks pregnant but not even realize she has missed a period, much less consider that missed period as unusual or a signal that she may be pregnant, yet as a result of the 6 Week Ban, she would be prohibited from seeking an abortion. *Id.*¶ 16.

If allowed to go into effect, the 6 Week Ban would bar nearly all of the Clinic's patients from obtaining an abortion in Mississippi. *Id.* ¶¶ 12, 15. These patients will either be forced to carry their pregnancy to term against their will or to leave the state to obtain care. *Id.* ¶ 18.

## ARGUMENT

A plaintiff is entitled to a preliminary injunction where, as here, the following elements are met: (1) a substantial likelihood of success on the merits; (2) substantial threat of

irreparable injury; (3) the injury to the plaintiff outweighs any harm the injunction might cause defendants; and (4) granting the injunction will not disserve the public interest.  *See, e.g.*, *Jackson Women's Health Org* v. *Currier*, 760 F.3d 448, 452 (5th Cir. 2014); *Janvey* v. *Alguire*, 647 F3d 585, 595 (5th Cir. 2011).  As set forth below, each factor weighs heavily in Plaintiffs' favor.

## I.   Plaintiffs Will Succeed on the Merits of Their Substantive Due Process Claim.

Plaintiffs are virtually certain to succeed on the merits of their claim that the 6 Week Ban violates women's liberty rights under the Fourteenth Amendment by banning abortions before viability.  In permanently enjoining the 15 Week Ban, this Court held, as it was bound to do under Supreme Court precedent, that a ban on abortion prior to viability is unconstitutional.  *Jackson Women's Health Org.*, 349 F. Supp. 3d at 542-43.  This straightforward constitutional rule applies regardless of the particular point before viability at which the state bans abortion, regardless of whatever interests the state may assert in support of the ban, and regardless of any exceptions the ban may include.  *Id.* at 540-43; *see also Planned Parenthood of Se. Pa.* v. *Casey*, 505 U.S. 833, 879 (1992); *id.* at 846 ("Before viability, the State's interests are not strong enough to support a prohibition of abortion . . . .").

An unbroken line of Supreme Court and Fifth Circuit precedent reaffirms that the State has no power to "prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Casey*, 505 U.S. at 879; *see Whole Woman's Health* v. *Hellerstedt*, 136 S. Ct. 2292, 2299 (2016) (reaffirming that a law is invalid if it bans abortion "before the fetus attains viability") (quoting *Casey*, 505 U.S. at 878)); *Gonzales* v. *Carhart*, 550 U.S. 124, 146 (2007) ("assum[ing]" the principle that "[b]efore viability, a State 'may not prohibit any woman from making the ultimate decision to terminate her pregnancy'" (quoting *Casey*, 505 U.S. at 879)); *Roe* v. *Wade*, 410 U.S. 113, 163-64 (1973); *accord Jackson Women's Health Org.*, 760 F.3d at

457 ("Pre-viability, a woman has the constitutional right to end her pregnancy . . . ."); *Sojourner T* v. *Edwards*, 974 F.2d 27, 31 (5th Cir. 1992) (striking down ban on all abortions with exceptions), *cert. denied*, 507 U.S. 972 (1993).

Given this unwavering precedent, abortion "bans do not fare well in court." *Jackson Women's Health Org*., 349 F. Supp. 3d at 541; *see Isaacson* v. *Horne*, 716 F.3d 1213, 1217, 1231 (9th Cir. 2013) (striking down ban on pre-viability abortions at 20 weeks with exceptions), *cert. denied*, 571 U.S. 1127 (2014); *Jane L.* v. *Bangerter*, 102 F.3d 1112, 1118 (10th Cir. 1996) (striking down ban on pre-viability abortions at 22 weeks with exceptions), *cert. denied*, 520 U.S. 1274 (1997); *Sojourner T*, 974 F.2d at 31 (striking down ban on all abortions with exceptions); *Guam Soc'y of Obstetricians & Gynecologists* v. *Ada*, 962 F.2d 1366, 1368-69 (9th Cir. 1992) (striking down ban on all abortions with exceptions), *cert. denied*, 506 U.S. 1011 (1992); Memorandum Opinion and Order at 45-48, *Bryant* v. *Woodall*, 1:16-cv-1368-WO-LPA (M.D.N.C. Mar. 25, 2019), ECF No. 84 (striking down North Carolina's 20-week ban on abortion).

Similarly, no attempt to ban abortion after detection of an embryonic heartbeat has survived a court challenge. *See, e.g.*, *MKB Management Corp.* v. *Stenehjem*, 795 F.3d 768, 772-73 (8th Cir. 2015) (striking down North Dakota ban on abortion following detectable embryonic heartbeat, which banned abortion at approximately 6 weeks, as unconstitutional under established Supreme Court precedent), *cert. denied*, 136 S. Ct. 981 (2016); *Edwards* v. *Beck*, 786 F.3d 1113, 1117-19 (8th Cir. 2015) (striking down Arkansas ban on abortion at 12 weeks if fetal heartbeat was detected), *cert. denied*, 136 S. Ct. 895 (2016).  In fact, just weeks ago a federal court entered a temporary restraining order against Kentucky's own version of the 6 Week Ban, a law that would ban abortion after embryonic cardiac activity is detected, which, like the ban here, would have prohibited nearly all abortions in the state by banning abortion at approximately 6 weeks LMP.

*See* Temporary Restraining Order at 2-3, *ENW Women's Surgical Center* v. *Beshear*, No. 3:19-cv-178-DJH (W.D. Ky. Mar. 15, 2019), ECF No. 15 (finding plaintiffs have a "strong likelihood of success" in establishing the law is an unconstitutional ban on pre-viability abortion).[8]  And a day ago, that court extended the temporary restraining order through the date of a final ruling in the case.  Mem. of Conference & Order at 2, *ENW Women's Surgical Center* v. *Beshear*, No. 3:19-cv-178-DJH (W.D. Ky. Mar. 27, 2019), ECF No. 32.

The same result should follow here.  As this Court succinctly reasoned just a few months ago in striking down Mississippi's 15 Week Ban, "[t]he record is clear: States may not ban abortions prior to viability; 15 weeks lmp is prior to viability; and plaintiffs provide abortion services to Mississippi residents after 15 weeks lmp. As the facts establish, [H.B. 1510] is unlawful." *Jackson Women's Health Org.*, 349 F. Supp. 3d at 540.  The same reasoning applies here.  The 6 Week Ban prohibits abortion beginning at approximately 6 weeks LMP, months before viability.  *See* Carr-Ellis Decl. ¶¶ 12, 19-20.  Nearly all of the Clinic's patients obtain abortion care at or after that point.  *Id.* ¶ 18.  If the 6 Week Ban takes effect, nearly all abortion care will be illegal in Mississippi, except in extremely limited circumstances.  *See id.* ¶¶ 17-18.  Accordingly, under settled law, including a Fifth Circuit ruling striking down Louisiana's abortion ban three decades ago and this Court's ruling striking down the 15 Week Ban four months ago, the 6 Week Ban is unlawful: the state has no power to prohibit abortion before viability, which is exactly what the 6 Week Ban seeks to do.

In short, under clear Supreme Court precedent, the 6 Week Ban is unquestionably unconstitutional.  Plaintiffs have therefore established to a near certainty their likelihood of

---

[8] *See also Planned Parenthood of the Heartland, Inc.* v. *Reynolds*, Case No. EQCE 83074, 2019 WL 312072, at *4 (Iowa Dist. Ct. Jan. 22, 2019) (Trial Order) (holding that a ban on abortions after a fetal heartbeat is detected, which operated as a 6-week ban, violated the Iowa Constitution).

succeeding on the merits of their claim that the ban violates their patients' substantive due process rights.

## II.    Plaintiffs and their Patients Will Suffer Irreparable Harm if the 6 Week Ban Takes Effect.

Plaintiffs and their patients will suffer serious and irreparable harm in the absence of a preliminary injunction.  By enacting a near-total ban on abortion, the ban prevents pregnant women from exercising their fundamental constitutional right of reproductive freedom.  Like the 15 Week Ban, the 6 Week Ban is an outright ban on pre-viability abortions that threatens "irreparable harm to Mississippians' abilities to control their 'destiny and . . . body.'" *Jackson Women's Health Org.* v. *Currier*, No. 3:18-CV-171-CWR-FKB, 2018 WL 1567867, at *1 (S.D. Miss. Mar. 20, 2018) (quoting *Casey*, 505 U.S. at 869).  It is well established that, where a plaintiff establishes a constitutional violation, no further showing of irreparable injury is necessary. *See Elrod* v. *Burns*, 427 U.S. 347, 373 (1976) ("The loss of [constitutional] freedoms . . . unquestionably constitutes irreparable injury."); *Opulent Life Church* v. *City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (citation omitted)); *Deerfield Med. Ctr.*, 661 F.2d at 338 (5th Cir. 1981) (When "the constitutional right of privacy is 'either threatened or in fact being impaired,' . . . this conclusion mandates a finding of irreparable injury." (quoting *Elrod*, 427 U.S. at 373)).

Further, forcing women to remain pregnant against their will inflicts physical and emotional consequences upon women that alone constitute irreparable harm.  *See, e.g.*, *Elrod*, 427 U.S. at 373-74 (threatened and actual loss of First Amendment freedoms); *Deerfield Med. Ctr.*, 661 F.2d at 338 (alleged violation of women's right to privacy); *Jackson Women's Health Org.* v. *Currier*, 940 F. Supp. 2d 416, 423 n.6 (S.D. Miss. 2013), *aff'd*, 760 F.3d 448 (5th Cir. 2014).

## III.    The Injuries to Plaintiffs and Their Patients Far Outweigh Any Harm to Defendants.

While Plaintiffs and their patients will suffer numerous irreparable harms without an injunction, Defendants will suffer no injury whatsoever; Plaintiffs' requested relief will simply preserve the status quo. *See Jackson Women's Health Org.*, 940 F. Supp. 2d at 424 (because preliminary injunction order would "essentially continue[] the status quo," balance of equities tips in favor of preliminary relief). Further, the State cannot be harmed by being prevented from violating the Constitution. *See Deerfield Med. Ctr.*, 661 F.2d at 338-39. Thus, the balance of hardships tips decidedly in favor of granting the relief Plaintiffs seek.

## IV.    A Preliminary Injunction Will Serve the Public Interest.

A preliminary injunction would plainly serve the public interest. Indeed, the public interest is served "when an injunction is designed to avoid constitutional deprivations." *Jackson Women's Health Org.*, 940 F. Supp. 2d at 424; *see also Ingebretsen* v. *Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) ("public interest [is] not disserved by an injunction preventing [the] implementation" of law that violates constitutional rights). Further, the public interest is well-served by "maintaining the status quo pending a full trial on the merits." *United States* v. *Texas*, 508 F.2d 98, 101 (5th Cir. 1975).

Preliminary injunctive relief in this case would protect women's constitutional right to access abortion care prior to viability. Without relief from the Court, nearly all of the Clinic's patients will be forced either to carry their pregnancy to term or to leave the state to obtain an abortion. Carr-Ellis Decl. ¶ 18. Further, restraining Defendants from enforcing the Act will maintain the status quo. Accordingly, a preliminary injunction serves the public interest.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue a preliminary injunction prohibiting Defendants from enforcing S.B. 2116 as applied to pre-viability abortions and for such further relief that the Court deems warranted.

Respectfully submitted this 28th day of March 2019.

| | |
|---|---|
| /s/ *Aaron Delaney* | /s/ *Robert McDuff* |
| Claudia Hammerman,* NY Bar # 2574333 | Robert B. McDuff, MS Bar, # 2532 |
| Aaron S. Delaney,* NY Bar # 4321642 | 767 North Congress Street |
| Caitlin Grusauskas,* NY Bar # 4846788 | Jackson, MS 39202 |
| Alexia D. Korberg,* NY Bar # 5094222 | (601) 969-0802 (phone) |
| Paul, Weiss, Rifkind, Wharton | (601) 969-0804 (fax) |
|   & Garrison, LLP | rbm@mcdufflaw.com |
| 1285 Avenue of the Americas | |
| New York, NY 10019 | Beth L. Orlansky, MS Bar # 3938 |
| (212) 373-3000 (phone) | Mississippi Center for Justice |
| (212) 492-0364 (fax) | P.O. Box 1023 |
| chammerman@paulweiss.com | Jackson, MS 39205 |
| adelaney@paulweiss.com | (601) 352-2269 (phone) |
| cgrusauskas@paulweiss.com | borlansky@mscenterforjustice.org |
| akorberg@paulweiss.com | |
| *Pro Hac Vice* | |
| | |
| Roberto J. Gonzalez,* D.C. Bar # 501406 | Hillary Schneller,* NY Bar # 5151154 |
| Crystal Johnson,* NY Bar # 5405204 | Julie Rikelman,* NY Bar # 3011426 |
| Paul, Weiss, Rifkind, Wharton | Leah Wiederhorn,* NY Bar # 4502845 |
|   & Garrison, LLP | Christine Parker,* CA Bar # 315529 |
| 2001 K Street, NW | Center for Reproductive Rights |
| Washington, D.C. 20006 | 199 Water Street, 22nd Floor |
| (202) 223-7316 (phone) | New York, NY 10038 |
| (202) 204-7344 (fax) | (917) 637-3777 (phone) |
| rgonzalez@paulweiss.com | (917) 637-3666 (fax) |
| cjohnson@paulweiss.com | hschneller@reprights.org |
| *Pro Hac Vice* | jrikelman@reprights.org |
| | lwiederhorn@reprights.org |
| | cparker@reprights.org |
| | *Pro Hac Vice* |

ATTORNEYS FOR PLAINTIFFS

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 28, 2019, I caused the foregoing Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction to be electronically filed with the Clerk of the Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Aaron Delaney*
Aaron Delaney,* NY Bar #4321642
Paul, Weiss, Wharton, Rifkind
& Garrison, LLP
1285 Avenue of the Americas
New York, NY 10019
Ph: (212)-373-3119
Fax: (212)-492-0119
adelaney@paulweiss.com
*Admitted pro hac vice