# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

| | |
|---|---|
| JACKSON WOMEN'S HEALTH ORGANIZATION, on behalf of itself and its patients, | |
| SACHEEN CARR-ELLIS, M.D., M.P.H., on behalf of herself and her patients, | |
| Plaintiffs, | |
| v. | Case No. 3:18-cv-171-CWR-FKB |
| THOMAS DOBBS, M.D., M.P.H., in his official capacity as State Health Officer of the Mississippi Department of Health, et al., | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL STATE LEGISLATORS TO COMPLY WITH SUBPOENAS *DUCES TECUM* AND FOR A LIMITED EXTENSION OF THE DISCOVERY DEADLINE

Pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), Plaintiffs file this Memorandum of Law in Support of their Motion to Compel the State Legislators (two Committees and three Senators)[1] to comply with document subpoenas (the "Subpoenas").  The Subpoenas seek documents related to the drafting and passage of the Telemedicine Ban (2013 S.B. 2795), which occurred during a period of just eleven weeks.  *See infra*, pp. 9-10.  Plaintiffs also seek a limited extension of the discovery deadline for the sole purpose of allowing Plaintiffs to receive these documents.

---

[1]  The "State Legislators" are (1) the Mississippi House Public Health and Welfare Committee (served through Andrew Ketchings, the House Clerk); (2) the Mississippi Senate Public Health and Welfare Committee (served through Buck Clarke, the Senate Secretary, and Amanda Frusha, the Senate Clerk); (3) State Senator Angela Burks Hill; (4) State Senator Chris McDaniel; and (5) State Senator Joey Fillingane.  For simplicity, the first two recipients are referred to as the "Committees," and the latter three as the "Senators," and all recipients collectively as the "State Legislators."

**Introduction**

The documents sought from the State Legislators are relevant to Plaintiffs' claim that the Telemedicine Ban is unconstitutional under the Fourteenth Amendment, including because it was passed with the improper "purpose" of "presenting a substantial obstacle to a woman seeking an abortion." *Planned Parenthood of Southeastern Pennsylvania* v. *Casey*, 505 U.S. 833, 878 (1992).[2]  Discovery of evidence from legislators has been ordered for similar constitutional claims—including purpose claims in the abortion context—and should be ordered here.

Although Plaintiffs have repeatedly tried to compromise, and considerably narrowed the Subpoenas—including by dropping their requests for depositions of the Senators and for documents regarding the 6-week ban—the State Legislators have entirely rebuffed Plaintiffs' good faith efforts to come to ground.  Indeed, the Legislators have refused to produce even *one* document in response to the Subpoenas.  The State Legislators' objections are based on the legislative privilege, burden, and the timing of the Subpoenas.  Exhibit 6.  None of these objections warrant withholding responsive documents.

*Legislative privilege*:  First, as a threshold matter, the State Legislators refuse to provide a privilege log and thus their blanket privilege assertion is foreclosed by this Court's indistinguishable decision in *Jackson Municipal Airport Authority* v. *Bryant*.[3]  Additionally, Plaintiffs largely seek third-party correspondence from the State Legislators, which is categorically not protected by legislative privilege.  Moreover, binding Fifth Circuit precedent establishes that the legislative privilege is only a "qualified" privilege which must yield when

---

[2]   In addition to Plaintiffs' Due Process claim under *Casey*'s purpose prong, evidence of the improper purpose is also relevant to Plaintiffs' Equal Protection claim.  *See, e.g., FemHealth USA, Inc*. v. *City of Mount Juliet*, 458 F. Supp. 3d 777 (M.D. Tenn. 2020).

[3]   No. 3:16-CV-246, 2017 WL 6520967 at *6 (S.D. Miss. Dec. 19, 2017) (Ball, M.J.), *objections overruled*, *Jackson Mun. Airport Auth.* v. *Bryant*, 2018 WL 3117020, at *2 (S.D. Miss. June 25, 2018) (Reeves, J.), *vacated on other grounds sub nom. Stallworth* v. *Bryant*, 936 F.3d 224 (5th Cir. 2019).

important federal interests favor disclosure.  In *Casey*, the Supreme Court recognized that a law offends the U.S. constitution when it is passed with the purpose of presenting a substantial obstacle in the place of a woman seeking abortion, which is precisely the issue about which the Subpoenas seek documents.  Finally, as other courts in the Fifth Circuit have recognized, disclosure of legislative materials on a Confidential basis sufficiently protects any legislative privilege that may exist.

*Burden*:  The State Legislators have utterly failed to substantiate their claim of disproportionate burden, and thus have waived objection on those grounds.  To successfully assert burden, the objecting party must do more than assert boilerplate objections that the burden "is high," as the State Legislators have here.  Exhibit 6, at 17.  Despite the onus being on the State Legislators to show with specificity why discovery should be denied, they have refused to even respond to Plaintiffs' proposed search protocol or to provide hit counts for the same.  Now that the legislative session is ending, the burden on the State Legislators of complying will be even less.  Throughout the course of the COVID-19 pandemic, Plaintiffs have made every effort to compromise and accommodate attendant discovery challenges—including with the State Legislators.  However, the pandemic does not justify the State Legislators' continued refusal to provide any discovery at all.

*Timing*:  Trial is still nine months away.  There is ample time to decide this dispute and for Plaintiffs to receive these documents well in advance of the trial scheduled for December 6, 2021.  Because Plaintiffs acted reasonably in pursuing this discovery, despite the challenges of delayed party discovery, the pandemic, and the State Legislators' complete refusal to compromise or even meaningfully engage, the Court should exercise its discretion to order a limited extension of the discovery deadline to permit this discovery (and only this discovery)

after the March 17 deadline.[4]  An extension of the discovery deadline for this limited purpose presents no disadvantages to the State Legislators as they are non-parties to the case with no interest in maintaining the current case schedule.  On the contrary, the extension will allow them to conclude the 2021 legislative session before producing the requested documents.

The importance of the requested documents to Plaintiffs' claim also supports the limited extension Plaintiffs request.  *See infra*, pp. 13-14.  Plaintiffs' attempted to obtain direct evidence of the purpose of the Telemedicine Ban via multiple other avenues, including party discovery, but were unable to for reasons that include the Mississippi Legislature's practice of only releasing limited legislative history to the public.  Finally, while State Defendants object to any extension of the deadlines—despite the fact that they received, on consent, no fewer than three extensions of the schedule themselves—they cannot demonstrate any prejudice that would justify denying Plaintiffs this important discovery.  The remaining deadlines for summary judgment, *Daubert* motions, motions *in limine*, and trial can and should remain unchanged, and State Defendants have no involvement in the production of the documents requested from the State Legislators.

## Background

Mississippi legislators and executive officials have engaged in a decades-long campaign to eliminate the constitutional right to access abortion in Mississippi.  Because the U.S. Supreme Court has prevented Mississippi from banning abortion outright, Mississippi, among other states, has tried to circumvent the Court's rulings with a series of laws and regulations that make

---

[4]   While Plaintiffs are not, in this motion, seeking to extend the discovery deadline for any other purpose, Plaintiffs reserve their right to request extensions for other limited purposes if warranted.  For example, Plaintiffs served a deposition subpoena on former Governor Phil Bryant, which he has moved to quash.  Dkt. No. 194.  Plaintiffs are attempting to reach a negotiated resolution.  *See* Dkt. No. 206.  If those efforts are unsuccessful, Plaintiffs may seek to take former Governor Bryant's deposition after the discovery deadline.

abortion more difficult, if not impossible, for many women to access.  It has always been clear that the goal of these laws is, in Governor Bryant's words, "ending abortion in Mississippi."[5]

The law that is the focus of these subpoenas is the Telemedicine Ban, passed by the Mississippi Legislature in 2013 and signed into law by Governor Bryant the same year.  The Ban was passed during the same session as another set of laws that promoted more widespread use of telemedicine in Mississippi generally.[6]  The Telemedicine Ban was passed out of apparent concern that Mississippi's support of telemedicine in all other contexts could lead some patients and practitioners to also use telemedicine to deliver abortion services.  The Telemedicine Ban thus singles out abortion care exclusively and explicitly prohibits health care providers from using telemedicine to prescribe an "abortion inducing drug" with the purpose of inducing an abortion.  2013 Miss. Laws Ch. 551 (S.B. 2795), codified at Miss. Code Ann. §§ 41-41-107, 111.[7]  Violation of the ban is a misdemeanor. *Id.* § 41-41-111.

The Telemedicine Ban was one of several similar pieces of legislation passed during the administration of former Governor Bryant, including the "Admitting Privileges" law that was passed in 2012—the year before the Telemedicine Ban.[8]  Plaintiffs earlier challenged the

---

[5]   @PhilBryantMS, Twitter (Jan. 22, 2014, 6:31 PM),
      https://twitter.com/PhilBryantMS/status/426135083620114432.

[6]   2013 S.B. 1109 (codified at Miss. Code. Ann. § 41-127-1) (permitting "a health care practitioner licensed in this state [to] prescribe, dispense, or administer drugs or medical supplies, or otherwise provide treatment recommendations to a patient after having performed an appropriate examination of the patient either in person or by the use of instrumentation and diagnostic equipment through which images and medical records may be transmitted electronically" and providing "[t]reatment recommendations made via electronic means, including issuing a prescription via electronic means, shall be held to the same standards of appropriate practice as those in traditional provider-patient settings").

[7]   Exhibit 1 (requiring a physician administering an "abortion-inducing" medication to be in the same room and in the physical presence of the patient).

[8]   Three of those four provisions have already been enjoined—two permanently, and one preliminarily—by federal courts (including this Court) for infringing upon the constitutional right to abortion.  *See Jackson Women's Health Org.* v. *Currier*, 320 F. Supp. 3d 828 (S.D. Miss. 2018) (granting permanent injunction against the admitting privileges provision of 2012 House Bill 1390); *Jackson Women's Health Org.* v. *Currier*, 349 F. Supp. 3d 536 (S.D. Miss. 2018), *aff'd sub nom. Jackson Women's Health Org. v. Dobbs*, 945 F.3d 265 (5th Cir. 2019) (granting permanent injunction on 2018 House Bill 1510, the 15-week ban); *Jackson Women's Health*

constitutionality of the Admitting Privileges law, and specifically claimed that law was enacted with the "unconstitutional purpose to cause fewer abortions." *JWHO I* Compl., No. 3:12-cv-00436-DPJ-FKB, ECF 1, at ¶1.  As part of discovery in that case, Plaintiffs sought, *and received*, production of a legislator's documents, including emails.  Delaney Decl.  In the Court's order enjoining the Admitting Privileges law, the Court emphasized that Plaintiffs "offered evidence— including quotes from significant legislative and executive officers—that the Act's purpose is to eliminate abortions in Mississippi.  They likewise submitted evidence that no safety or health concerns motivated its passage. This evidence has not yet been rebutted."  Order Granting TRO, 3:12-cv-00436-DPJ-FKB, ECF 17, at 3.  It is significant that similarly-situated legislators in that case produced documents relevant to the same constitutional claim at issue here.

Less than one year after the district court's decision enjoining the Admitting Privileges Law, the Mississippi Legislature passed the Telemedicine Ban.  The Ban asserts that its purpose is to "protect women" from the purported risks of medication abortion and ensure physicians "meet the standard of care."  Miss. Code Ann. § 41-41-103.  There is no official legislative record about why the Legislature chose to include, for the first time, such a findings section.  But an email from Terri Herring, a prominent anti-abortion activist and key proponent of the Ban, suggests that it was in anticipation of challenges in court.  *See infra*, p.9.

There is little publicly available information regarding the development of the Telemedicine Ban.  The Mississippi Legislature does not publish committee reports, hearing transcripts, or floor discussions.[9]  As a result, there is no public record on why these findings

---

*Org.* v. *Dobbs*, 379 F. Supp. 3d 549 (S.D. Miss. 2019), *aff'd*, 951 F.3d 246 (5th Cir. 2020) (granting preliminary injunction to 2019 Senate Bill 2116, the 6-week ban).

[9]    State of Mississippi Judiciary Library, "Frequently Asked Questions" (Jan. 30, 2011), available at https://courts.ms.gov/research/statelibrary/st_lib_faqs.pdf (describing legislative history as "limited because committee reports, transcripts of hearings, and records of floor discussions are not published.")

were included or what evidence, if any, the legislature considered. The findings, of course, conflict with well-documented evidence that medication abortion is safe, and is as safe and effective when provided via telemedicine as in-person and meets the standard of care.[10]

The Telemedicine Ban originated in the Public Health and Welfare Committee; Senators Hill and McDaniel were authors of the bill (Exhibit 1, at 1); and Senator Fillingane personally worked with the Governor's office and anti-abortion groups to promote it (Exhibit 12; *infra*, p. 18). Each Senator has publicly expressed the intention to restrict abortion rights in Mississippi and across America. For example, at a town hall during his 2018 campaign for a U.S. Senate seat, Senator McDaniel said he "was going to do everything in [his] power to make sure no babies are killed in this country."[11] Senator Fillingane has endorsed the idea of "testing the limits of *Roe*"[12] and urged the Mississippi legislature to be "more bold" in doing so.[13] And Senator Burks Hill has said that when the Supreme Court takes up a case to overturn *Roe* v. *Wade*, "Mississippi's the state that [the challenged law] should come from."[14]

---

[10] *See, e.g.*, The National Academies of Sciences, Engineering, and Medicine, *The Safety and Quality of Abortion Care in the United States* 57-58, 79 (The National Academies Press 2018), https://doi.org/10.17226/24950. (finding no evidence that medication abortion requires the physical presence of a physician, and concluded that telemedicine medication abortion is just as safe as in-person treatment); *Implementing Telehealth in Practice: Committee Opinion No, 798*, 135 Amer. College of Obstetricians & Gynecologists e73, (2020), https://www.acog.org/-/media/project/acog/acogorg/clinical/files/committee-opinion/articles/2020/02/implementing-telehealth-in-practice.pdf; *Mifeprex (mifepristone) Information*, U.S. Food & Drug Admin., (Feb. 5, 2018), https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/mifeprex-mifepristone-information (requiring mifepristone be dispensed in certain health care settings, but not requiring it be provided in-person by prescribing health care professional).

[11] @senatormcdaniel, Twitter (Nov. 3, 2018, 4:41 PM), https://twitter.com/senatormcdaniel/status/1058821379645231104.

[12] Ashton Pittman, "Southern 'Defiance': The Fight for Roe Rages in Mississippi," *Jackson Free Press* (May 29, 2019), https://www.jacksonfreepress.com/news/2019/may/29/southern-defiance-fight-roe-rages-mississippi/.

[13] Alan Blinder, "Federal Judge Blocks Mississippi Abortion Law," *The New York Times* (May 24, 2019), https://www.nytimes.com/2019/05/24/us/mississippi-abortion-law.html.

[14] Larrison Campbell, "Legislators Fiercely Challenge Abortion Access," *Mississippi Today* (Jan. 27, 2017), https://mississippitoday.org/2017/01/27/five-bills-fiercely-challenge-abortion-access/.

In an effort to fill in the gap in the legislative record, Plaintiffs have sought party and other non-party discovery regarding the purpose of all Challenged Laws and Regulations, which proved largely fruitless.[15]  Only through party discovery did Plaintiffs learn, in September 2020, that the Mississippi State Department of Health "had no role in the enactment" of the Telemedicine Ban and thus no information regarding the findings.[16]  Plaintiffs sought documents from the Governor in January 2020 yet received them only in the last few weeks, after delays attributed to COVID-19, the snow, and other difficulties.  Exhibit 14, at 1–2; Exhibit 15, at 1–2.  Had Plaintiffs known earlier what evidence those documents did (and did not) contain, they may have subpoenaed the State Legislators sooner.

The Governor's documents suggest that the findings were not supported by any evidence, but rather were drafted by anti-abortion activists and included in the bill—over the objection of the Mississippi Medical Association—with an eye toward "court challenges."  Exhibit 2.  A pamphlet distributed by Mississippi Right to Life claims that medication abortion is "not a legitimate medical procedure," but rather a "deadly" drug.  Exhibit 3.  Terri Herring, the president of Pro-Life Mississippi, emailed Governor Bryant and other officials that the bill would

---

[15]   Plaintiff's First Set of Document Requests dated April 29, 2019 asked for: (a) "Documents Concerning any purported benefits of the Challenged Laws and Regulations or any burdens imposed by the Challenged Laws and Regulations on any woman seeking to access abortion" (Request No. 5); (b) "Documents sufficient to show any and all research conducted by, sponsored by, relied upon, or otherwise in the possession of the Department or the Mississippi Board of Medical Licensure, related to the safety and/or the benefits of the administration of abortions or abortion-related care by APCs" (Request No. 11); and (c) "Documents sufficient to show any and all research conducted by, sponsored by, or otherwise in the possession of the Department or the Mississippi State Board of Medical Licensure, related to the safety and/or the benefits, of Telemedicine, whether provided by a physician or APC, compared to in-person diagnosis and/or treatment" (Request No. 12).  Plaintiffs' Second Set of Documents Requests dated September 22, 2020 asked for" (d) "Documents and communications between You and any third parties, including medical organizations and advocacy groups, concerning abortion safety or the issues being litigated in this matter" (Request No. 17); and (e) "Documents reflecting or related to any meeting (including any meeting between You and any legislator or legislative official or any other third party) concerning abortion, the Challenged Laws and Regulations, or the Clinic" (Request No. 26).

[16]   Dobbs Declaration, ¶ 13; *see also* Cleveland Dep. 199:12–200:5 (explaining that he had no knowledge of how the Telemedicine Ban was developed and that, to his knowledge, BML was not involved).

not "hurt" anyone, except abortion providers.  Exhibit 4.  Notably, the Governor's documents further reveal that his office did not take a particularly active role.  *Infra*, p. 15.

**Argument**

**I.      The Subpoenas Seek Relevant Documents.**

As narrowed, Plaintiffs seek the following documents from each Senator:[17]

> 1.   Produce all Documents that You[18] considered or relied upon while drafting [2013 S.B. 2795],[19] including but not limited to any papers, studies, reports, opinions, or similar documents;
>
> 2.   Produce all Documents relating to the drafting, revising, or passage of 2013 S.B. 2795;
>
> 3.   Produce all Documents reflecting any Communications between You and the following parties concerning 2013 S.B. 2795:
>
>> A.   Any committees of the Mississippi Legislature, including but not limited to the House Health Committee,
>>
>> B.   Interest or advocacy groups, legislators, legislative staff members, other elected officials and their staff members,
>>
>> C.   Any state agency or Board,
>>
>> D.   Any constituents, lobbyists, and Non-Governmental Third Parties, including but not limited to groups or associations that oppose abortion,
>>
>> E.   Any individual running for or holding public office in Mississippi,
>>
>> F.   Any healthcare providers, medical experts, or research organizations.

Plaintiffs seek the following documents from the Committees:

---

[17]   The Subpoenas also initially sought documents concerning the 15 Week Ban, the 6 Week Ban, and other abortion legislation.  As part of the meet and confer process, Plaintiffs agreed to drop those requests.

[18]   Capitalized terms are defined in the Subpoenas.

[19]   This portion of the request originally read: "legislation related to abortion or women's reproductive health."  Ex. 7 at 13; Ex. 8 at 13; Ex. 9 at 13.  Plaintiffs agreed to narrow the request to the Telemedicine Ban.  Ex. 5 at 1.

9

1.      Produce all Documents provided to or considered by the [Senate or House][20] Health Committee related to [2013 S.B. 2795];[21]

2.      Produce all Documents reflecting comments or assessments by the [Senate or House] Health Committee related to its review of legislation concerning [2013 S.B. 2795];[22]

3.      Produce all Documents reflecting the drafting and revision process for 2013 S.B. 2795;

4.      Produce all Documents reflecting any Communications between the [Senate or House] Health Committee and the following parties concerning 2013 S.B. 2795:

   A.   The Mississippi Legislature, including but not limited to the [Senate or House] Health Committee and other legislative committees,

   B.   Any interest or advocacy groups, legislators, legislative staff members, other elected officials and their staff members,

   C.   Any individual running for or holding public office in Mississippi,

   D.   Any state agency or Board,

   E.   Any constituents, lobbyists, and Non-Governmental Third Parties, including but not limited to groups or associations that oppose abortion,

   F.   Any healthcare providers, medical experts, or research organizations.

These requests are also set forth in the Proposed Order, and the original requests in

Exhibits 7, 8, 9, at p. 13 and Exhibits 10 and 11, at p. 11.

*        *        *

---

[20]   The House Committee must produce Documents concerning the House Committee, and the Senate Committee must produce Documents concerning the Senate Committee.

[21]   This portion of the request originally read: "abortion or women's reproductive health, including but not limited to any reports, studies and analyses concerning abortion safety." Ex. 10 at 11; Ex. 11 at 11.  Plaintiffs agreed to narrow the request to the Telemedicine Ban.  Ex. 5 at 1.

[22]   This portion of the request originally read: "abortion." Ex. 10 at 11.  Plaintiffs agreed to narrow the request to the Telemedicine Ban.  Ex. 5 at 1.

These documents are directly relevant to Plaintiffs' claim that the Telemedicine Ban was passed for the unconstitutional "purpose" of placing substantial obstacles in the way of women seeking abortion care.  Supp. Am. Compl., Dkt. No. 119 at 6.  The Supreme Court recognized a federal constitutional claim based on improper "purpose" in *Casey* and has repeatedly reaffirmed that holding.  *Casey*, 505 U.S. at 878; *Whole Woman's Health* v. *Hellerstedt*, 136 S. Ct. 2292, 2309 (2016); *June Medical Services*, *L.L.C.* v. *Russo*, 140 S. Ct. 2103, 2120 (2020); *id.* at 2135 (Roberts, J., concurring).  While states have certain legitimate interests in regulating abortion, the means chosen by the state to further its interests must "be calculated to inform the woman's free choice, not hinder it."  *Casey*, 505 U.S. at 877.  Restrictions that, for example, "serve no purpose other than to make abortion more difficult" are invalid.  *Id.* at 901.[23]

While the Telemedicine Ban states that its purpose is to "protect women" from the dangers of telemedicine (Exhibit 1, at 2), it cites no evidence for those findings, and they are not controlling for federal constitutional purposes.  *See Whole Woman's Health* v. *Hellerstedt*, 136 S. Ct. 2292, 2310 (2016) (legislative findings not "dispositive").  In assessing the state's articulation of its legislative purpose, "[courts] are not to accept the government's proffered purpose if it is a mere 'sham.'"  *Okpalobi v. Foster*, 190 F.3d 337, 354-55 (5th Cir. 1999), *superseded on other grounds on reh'g en banc*, 244 F.3d 405 (5th Cir. 2001) (internal citations and quotations omitted); *see also Gonzales* v. *Carhart*, 550 U.S. 124, 165 (2007) ("The Court retains an independent constitutional duty to review factual findings where constitutional rights are at stake.").  Indeed, the expert evidence in this case flatly contradicts those findings.[24]

---

[23]   The purpose inquiry is not a condemnation of opponents of abortion.  *Casey*, 505 U.S. at 850.  Rather, it ensures that the means used to regulate abortion respect the autonomy of individuals' reproductive health decisions, reconciling their personal liberty with the state's legitimate interests in regulation.

[24]   Dr. Mark Nichols, a board-certified obstetrician-gynecologist with three decades of experience as an abortion provider, has testified that telemedicine abortion care is safe and effective.  When telemedicine is available in conjunction with medication abortion, health outcomes are actually improved because abortions are safer earlier

In analyzing a law's purpose, courts applying *Casey* have repeatedly considered evidence of the type sought here, including evidence regarding the record before the legislature, the legislative process and drafting history, and communications between legislators and third parties. *See, e.g.*, *June Med. Servs. LLC* v. *Kliebert*, 158 F. Supp. 3d 473, 502 (M.D. La. 2016) (considering emails between third party and legislative sponsor, including discussion that similar statute in Texas had "tremendous success in closing abortion clinics and restricting abortion access"); *Planned Parenthood of Wisconsin, Inc.* v. *Van Hollen,* 94 F. Supp. 3d 949, 955 (W.D. Wis. 2015) (considering evidence that law was enacted despite "no member of the Wisconsin legislature or legislative aide consult[ing] with or s[eeking] the advice of the Medical Examining Board as to any medical need or benefit"); *Planned Parenthood of Greater Iowa Inc.* v. *Atchison*, 126 F.3d 1042, 1049 (8th Cir. 1997) (considering evidence of "the state authorities' response to these lobbying efforts," which "suggest that subjecting the plaintiff to [restriction] had the intended effect of impeding or preventing access to abortions").[25]

It is well-established that discovery from state legislators is appropriate in federal litigation, including, for example, those involving voting rights,[26] the dormant commerce

in pregnancy.  Nichols Rep. ¶ 66.  Medication abortion provided through telemedicine is just as safe and effective as medication abortion provided in-person; it has a very low complication rate whether it is provided in-person or via telemedicine.  Nichols Rep. ¶ 70.  Over the past decade, abortion providers have provided abortion services via telemedicine across the country and found their interactions with patients are unchanged from in-person interactions.  Nichols Rep. ¶ 68.  The safety and efficacy of telemedicine is evinced by Mississippi's use of telemedicine in a wide range of other contexts, including dispensing prescription medications that present a greater risk to patients than medication abortion.  Nichols Rep. ¶ 67.

[25]   While the mere involvement of anti-abortion interest groups in the legislative process, standing alone, is insufficient to ultimately prove an improper purpose, *Okpalobi*, 190 F.3d at 354 (citing *Mazurek* v. *Armstrong*, 520 U.S. 968 (1997)), their involvement is relevant and can indicate an improper purpose when taken together with other circumstances.  Thus, communications with such groups are a proper subject for discovery.

[26]   *See, e.g.*, *Benisek* v. *Lamone*, 241 F. Supp. 3d 566, 576-577 (D. Md. 2017) (ordering production of conversations between legislators because they were most probative evidence of whether an impermissible purpose may have "infected the legislative process"); *Nashville Student Organizing Committee* v. *Hargett,* 123 F. Supp. 3d 967, 971 (M.D. Tenn. 2015) (ordering depositions of state legislators to probe purpose of Tennessee Voter ID law); *City of Greensboro* v. *Guilford Cty. Bd. of Elections*, 2016 WL 11660626, at *5 (M.D.N.C. Dec. 20, 2016) (ordering production of legislative documents reflecting illicit racial considerations in redistricting process); *Bethune-Hill* v. *Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 339, 342-343 (E.D. Va. 2015)

clause,[27] and other prohibitions on discrimination such as under the Americans with Disabilities Act and Fair Housing Act.[28]  And a long line of Supreme Court cases confirms that evidence of legislative purpose is relevant to constitutional inquiries. *See, e.g.*, *Washington* v. *Davis*, 426 U.S. 229, 244 n.11 (1976) (Court's prior cases refuted "proposition that legislative purpose is irrelevant in constitutional adjudication"); *Rogers* v. *Lodge*, 458 U.S. 613, 617 (1982) (Court's duty is to examine whether law was "conceived or operated as purposeful device" to discriminate in violation of Fourteenth Amendment).

Evidence of improper legislative purpose is no less important in the abortion context than others.  *Okpalobi*, 190 F.3d at 354 (noting that "abortion law is not the only realm of jurisprudence in which courts are required to question whether a measure has been adopted for an impermissible purpose" and citing voting rights and Establishment Clause cases as guidance). Such discovery has not been restricted to cases involving claims of racial discrimination (which are subject to strict scrutiny); rather, it has been allowed even where a classification is subject only to rational basis review.[29]

---

(ordering state legislators to produce documents in Equal Protection case because allegation that "discriminatory purpose has been a motivating factor" weighs in favor of disclosure); *Veasey* v. *Perry*, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014) (disclosure of internal legislative documents necessary because it is unlikely that an official would "announce on the record" an impermissible purposes); *Perez* v. *Perry*, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) ("where important federal interests are at stake," law favors disclosure of legislative documents).

[27]   *Am. Trucking Associations, Inc.* v. *Alviti*, 2020 WL 6255264 at *11 (D.R.I. Oct. 23, 2020) (denying motion to quash subpoena because the "relevant subject matter [was] the intentions of [state officials] and the ways in which those intentions may have influenced the drafting and passage of" statute).

[28]   *See, e.g.*, *Angelicare, LLC* v. *St. Bernard Parish*, 2018 WL 1172947 (E.D. La. Mar. 6, 2018) (ordering depositions of parish legislators).

[29]   *See, e.g.*, *N. Pacifica, LLC* v. *City of Pacifica*, 274 F. Supp. 2d 1118, 1124 (N.D. Cal. 2003) (ordering depositions of councilmembers in plaintiff developer's rational basis Equal Protection claim); *Harrison* v. *Shanahan*, No. 118CV641LMBIDD, 2019 WL 2216474, at *9 (E.D. Va. May 22, 2019) ("documents sought by plaintiffs could undercut both stated and conceivable justifications for the military policies at issue in this lawsuit and are thus clearly relevant to plaintiffs' claims"); *End Ventures, LLC* v. *Inc. Vill. of Sag Harbor*, No. CV 09-3967 LDW AKT, 2011 WL 6337708, at *4 (E.D.N.Y. Dec. 19, 2011) (ordering discovery from legislators over legislative privilege objection because the reasoning behind the legislative action was "itself [] the subject of the litigation").

II.     **The Legislators Have Failed to Substantiate**
        **Their Objection of Disproportionate Burden.**

Any burden on the State Legislators of providing these documents is justified by the
needs of this case, which concerns important constitutional rights, and by the strong
circumstantial evidence that indicates these documents would be favorable to Plaintiffs.  And as
a threshold matter, the State Legislators, having refused to substantiate their generic assertion
that producing these documents would pose a significant burden, have waived the objection.
Even if the State Legislators had advanced anything more than boilerplate objections—and they
have not—the Court would still need to weigh the following factors against any demonstrated
burden: "(1) relevance of the information requested; (2) the need of the party for the subpoenaed
materials; (3) the breadth of the request; (4) the time period covered by the request; [and] (5) the
particularity with which the party describes the requested materials."  *Wiwa* v. *Royal Dutch
Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004).  All weigh in favor of production.

The State Legislators' objection letters (Exhibit 6) failed to support their claim of
disproportionate burden.  In the Fifth Circuit, a "third party objecting to a subpoena on the basis
that the subpoena is unduly burdensome bears the burden of showing why discovery should be
denied." *Dotson* v. *Edmonson*, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017).  This is a
"heavy burden."  *Id.*  Non-parties' objections to Rule 45 subpoenas "must be made with
specificity" and the recipient must "explain and support its objections," rather than relying on
"general" or "boilerplate" objections.  *Ford Motor Co.* v. *Versata Software, Inc.,* 316 F. Supp. 3d
925, 932 (N.D. Tex. 2017).  Here, the State Legislators simply asserted, without basis, that the
"burden and expense of producing the requested documents is high."  Exhibit 6, at 7, 15, 23, 30,
37.  Their "failure to make particularized objections to document requests constitutes a waiver of
those objections." *Sabol* v. *Brooks*, 469 F. Supp. 2d 324, 328-29 (D. Md. 2006).

The State Legislators also referred to "complications arising from COVID-19."  Exhibit 6, at 7, 23, 30, 37.  While those complications may have justified accommodation (which Plaintiffs made every effort to provide), they in no way support the State Legislators' *total* objection and *complete* refusal to produce documents.  *See*, *e.g.*, *Stallings* v. *Wayne Cty., Mississippi,*  2020 WL 1892260, at *3 (S.D. Miss. Apr. 16, 2020) (Document discovery does not "create[ ] unnecessary risks or run[ ] afoul of current restrictions" related to COVID-19.).

Even if the State Legislators had substantiated a burden, Plaintiffs' countervailing need for this discovery would outweigh it.  As noted, there is little publicly available information, and Plaintiffs have tried and failed to obtain the information through party discovery.  *See supra,* p. 7 & n.14 (quoting document requests).  The documents Plaintiffs obtained from the Governor and Lieutenant Governor likewise reveal that the executive branch decided to "keep[] its distance," and was not involved in key discussions between legislators and third parties.  Exhibit 2.

Despite the State Legislators' complete refusal to compromise (or even meaningfully engage), Plaintiffs have taken considerable steps to reduce the burden of complying with the Subpoenas.  Plaintiffs have dropped their requests for depositions.  And Plaintiffs have narrowed their requests to those relevant to a single statute (the Telemedicine Ban) that was passed during an eleven-week period.  Plaintiffs also provided the State Legislators with proposed search terms to be applied to electronically stored information (including emails), with custodians, and with a proposed date range for emails.  Exhibit 5, at 9.  Plaintiffs offered to narrow the terms based on hit counts, but the State Legislators failed to respond.  By failing to engage, the State Legislators have waived their right to contend that this protocol is burdensome.  *See Bounds* v. *Capital Area Family Violence Intervention Center, Inc.*, 314 F.R.D. 214, 220 (M.D. La. 2016) (declining to

narrow subpoena due to recipient's failure to identify whether "preliminary search . . . ha[d] been conducted" and the "number of potentially responsive emails").

Any burden arising from the pendency of the legislative session is no longer relevant, given that the session will have ended by the time this motion is decided.[30]

## III.    The Legislators' Blanket Objections of Legislative Privilege Are Improper.

The State Legislators also stand on their blanket objection that *all* documents sought by the Subpoenas are protected by the "legislative privilege" and that even producing a privilege log would invade the privilege.  In other words, the State Legislators assert a complete immunity to federal court discovery, based solely on their own say-so.  This Court has already considered and rejected such arguments in *Jackson Municipal Airport Authority*.

This objection is improper for at least three reasons.  First, the legislative privilege is a "qualified" privilege that must yield when, as here, the purpose of legislation is relevant to a federal constitutional claim.  Second, the legislative privilege does not protect communications with (or documents shared with) third parties, such as lobbyists.  And third, the protective order in the case provides sufficient protection for purposes of discovery.

### A.    The Legislative Privilege is a "Qualified" Privilege that Must Yield When the Purpose of Legislation Is Relevant to a Federal Constitutional Claim.

As this Court and the Fifth Circuit have already held, the legislative privilege is a "qualified" privilege.  *Jackson Mun. Airport Auth.*, 2017 WL 6520967 at *6 (citing *Jefferson Cmty. Health Care Centers, Inc.* v. *Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017)); *Rodriguez* v. *Pataki*, 280 F. Supp. 2d 89, 92 (S.D.N.Y. 2003)).  It "must be strictly construed and

---

[30]    In *Jackson Municipal Airport Authority*, this Court, on December 19, ordered the legislators to produce documents and a privilege log by February 28.  2017 WL 6520967, at *10.  That year, the legislative session ran from January 2 to March 28.  No objection based on the pendency of the session was raised, likely because the burden of review documents and preparing a privilege log falls on counsel, not the legislators personally.

accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Jefferson Cmty. Health Care Centers*, 849 F.3d at 624; *Jackson Airport*, 2017 WL 6520967 at *6.

A five-factor test determines whether legislative privilege must yield: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future "timidity" by government employees who recognize that their documents are discoverable. *Jackson Mun. Airport Auth.*, 2017 WL 6520967 at *6; *Veasey*, 2014 WL 1340077 at *2; *Perez* v. *Perry*, 2014 WL 106927 at *2 (S.D. Tex. Jan.8, 2014). Here, the balance of factors weighs against applying the privilege.

*First*, as explained above, the discovery sought is directly relevant to a federal constitutional claim specifically recognized by the U.S. Supreme Court. *Supra* Part I.

*Second*, direct evidence of the State Legislators' purpose in passing the Telemedicine Ban is not readily available from any other apparent source. Plaintiffs have already exhausted public information, party discovery, and third-party subpoenas to the Governor and Lieutenant Governor. *Supra*, pp. 9, 15. While there is strong circumstantial evidence of an improper purpose, plaintiff "need not confine [its] proof to circumstantial evidence," when direct evidence is available from the State Legislators themselves. *Bethune-Hill*, 114 F. Supp. 3d at 341.

*Third*, this litigation implicates fundamental constitutional rights. Where such rights are at stake, this factor weighs strongly in favor of disclosure.[31] The interest is even greater in a case

---

[31] *N. Pacifica, LLC* v. *City of Pacifica*, 274 F. Supp. 2d 1118, 1124 (N.D. Cal. 2003) (ordering legislators to produce documents because the "federal constitutional interests involved are substantial" even though "no suspect class such as race or gender or some other basis for heightened scrutiny is involved."); *Nashville*

such as this one, which seeks a remedy that will protect the rights of many, as opposed to damages for the violation of the rights of a single person. *L.H.* v. *Schwarzenegger*, 2007 WL 2009807, at *8 (E.D. Cal. July 6, 2007). In such a case, "there is a societal interest in accurate fact-finding" that outweighs the State Legislators' interest in non-disclosure. *Id.*

*Fourth*, the State Legislators' role is central to this litigation, as they drafted and passed the Telemedicine Ban.[32] The Telemedicine Ban originated in the Committees. On the enrolled bill, Senator Hill is listed as the principal author, and Senator McDaniel as an additional author.[33] While Senator Fillingane is not listed as an official author, he was involved in the drafting and passage of the bill, acting as intermediary between Terri Herring, president of Pro-Life Mississippi, and other legislators. Exhibit 12. He was also present at the signing ceremony, along the Governor and the other drafters. Exhibit 13.

*Finally,* allowing discovery in cases where the legislators' purpose has established federal constitutional relevance—and where the legislators do not face any personal liability—does not significantly chill proper legislative conduct. *Bethune-Hill*, 114 F. Supp. 3d at 343. Given the nature of the Senators' public statements, *supra*, pp. 7-8, "timidity" is not an issue here. *See American Trucking*, 2020 WL 6255264, at *9 (noting, in discounting this factor, that "the movants clearly were not concerned with shielding their intentions from prying eyes").

### B. Legislative Privilege Does Not Cover Communications with or Information Shared with Third Parties.

---

*Student Org. Comm*. v. *Hargett*, 123 F. Supp. 3d 967, 971 (M.D. Tenn. 2015) (ordering legislators to produce documents because case involved "a serious constitutional issue").

[32] In addition to Senators Hill and McDaniel, the official authors included Senators Phillip Gandy, Billy Hudson, and Cindy Hyde-Smith. Plaintiffs did not subpoena Senators Gandy, Hudson, or Hyde-Smith.

[33] Mississippi Legislature 2013 Regular Session Senate Bill 2795=, http://billstatus.ls.state.ms.us/2013/pdf/history/SB/SB2795.xml.

At a minimum, as this Court and others have held, the legislative privilege does not apply to communications with (or documents shared with) third parties, such as advocacy groups and lobbyists.  *Jackson Mun. Airport Auth*, 2017 WL 6520967, at *7; *see also Perez* v. *Perry*, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (communications "with any outsider" "waive[]" the privilege); *Bethune-Hill*, 114 F. Supp. 3d at 343 ("no one could seriously claim privilege" over communications between legislators and third parties).

### C.      The Protective Order in the Action is Sufficient to Protect any Privilege.

The Protective Order entered by this Court allows subpoena recipients to designate information Confidential.  Dkt. No. 104 at 3, 7-8.  As other courts have recognized, at the discovery stage, such protection is sufficient to protect the State Legislators' interests, even if the Court is not inclined to "fully pierce the legislative privilege."  *Veasey*, 2014 WL 1340077 at *3-4.  The issue of public disclosure can be resolved at later stages of the proceedings.

### IV.   The Court Should Grant a Limited Extension of the Discovery Deadline to Accommodate Plaintiffs' Receipt of These Documents.

The current "discovery deadline" is March 17, 2021.  (*See* Nov. 13, 2020 Text-only Order.)  To the extent that deadline applies to Rule 45 subpoenas to third parties, Plaintiffs request a brief extension of the deadline for the sole purpose of allowing the State Legislators to produce such documents as the Court orders them to produce following this motion.  *See Wiwa*, 392 F.3d at 822 (reversing quashing of Rule 45 subpoena and noting that "[i]t is not uncommon for a district court to admit evidence—even after the discovery deadline—obtained through properly- and timely-served discovery requests.").

The Court has broad discretion to extend the discovery deadline for "good cause."  Fed. R. Civ. P. 16(b)(4); *see Hinkle Metals & Supply Co.* v. *Compton's Appliance, Inc.*, 2012 WL 12965936, at *2 (S.D. Miss. June 21, 2012).  That discretion may be exercised to permit

discovery that cannot be effectuated within the prior discovery deadline as contemplated by Local Rule 7(b)(2)(C).[34]  *See, e.g.*, *736 Bldg. Owner, LLC* v. *Regions Bank*, 2015 WL 13424459, at *1 (S.D. Miss. Dec. 21, 2015) (compelling Rule 30(b)(6) deadline to occur after discovery deadline); *Curtis* v. *Select Med. Corp.*, 2015 WL 4546258, at *3 (S.D. Miss. July 28, 2015) (compelling interrogatory responses after the discovery deadline).

Such an extension is appropriate under the circumstances.

*Frist*, there will be no prejudice to the State Defendants or the State Legislators.  The extension will not impact the trial date or any interim deadline.  In fact, an extension will allow the State Legislators to respond to the Subpoenas after their current legislative session, which ends nine days after the current discovery deadline.

*Second*, as explained above, the documents from the State Legislators are important and likely to support Plaintiffs' federal constitutional claims.  *Supra*, pp. 13–14; *see 736 Bldg. Owner, LLC*, 2015 WL 13424459, at *1 (compelling a 30(b)(6) deposition after deadline because it "relates to important issues in this action").

*Third*, Plaintiffs have diligently pursued evidence of purpose.  Plaintiffs served the Subpoenas on the State Legislators in January 2021, almost two months prior to the deadline. *See* Exhibits 7 through 11.  The need to subpoena the State Legislators did not become clear until late last year.  That timing was due to the delays of party and non-party discovery, including both Defendants' document productions and Defendants' expert reports.  Defendants' rolling document productions continued into (at least) November 2020,[35] and Defendant Dobbs did not

---

[34]   Defendants and the State Legislators have asserted that this motion violates Local Rule 7(b)(2)(C), which provides that: "A party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court and time to effectuate the court's order before the discovery deadline."

[35]   Excluding productions related solely to expert discovery, depositions, and the re-production of documents from *JWHO I*, Defendants produced:  4 documents on June 14, 2019; 17 documents on September 12-13, 2019; 86

submit his Declaration—the one disclaiming DOH's "role in the enactment" of the Telemedicine

Ban—until September 2020.  To be sure, the COVID-19 pandemic posed "significant

challenges" for Plaintiffs, State Defendants, and non-parties.  Dkt. Nos. 160, 163, 171.

Regardless of fault, the fact of the matter is that important discovery was delayed through no

fault of Plaintiffs'.

*Fourth*, as in *Jackson Municipal Airport Authority*,[36] this dispute concerns a third-party

subpoena.  The timely resolution of such a dispute is not always possible, given that parties are

expected to pursue party discovery before third-party discovery, and given that parties such as

Plaintiffs have no remedy other than to obtain the documents.

### Conclusion

The Court should compel the State Legislators to respond to the Subpoenas, as set forth

in the Proposed Order.

Respectfully submitted this 8th day of March, 2021.

/s/ Aaron S. Delaney
AARON S. DELANEY
CLAUDIA HAMMERMAN
CAITLIN GRUSAUSKAS
ALEXIA D. KORBERG
PAUL, WEISS, RIFKIND
    WHARTON & GARRISON, LLP
1285 Avenue of the Americas
New York, NY 10019

---

documents on September 27, 2019; 563 documents on November 20, 2019; 13 documents on December 11, 2019; 6 documents on December 13, 2019; 18 documents on January 13, 2020; 413 documents on February 26, 2020; 356 documents on June 3, 2020; 392 documents on November 9, 2020.  The discovery deadline was extended on three occasions: from May 29, 2020 to July 24, 2020 (*see* text-only order (March 19, 2020)); from July 24, 2020 to December 17, 2020 (*see* text-only order (May 18, 2020)); and from December 17, 2020 to March 17, 2021 (*see* text-only order (November 13, 2020)).

[36]   A motion to extend the deadline was filed on June 28, 2017, just two days before the discovery deadline, and the motion to compel was filed on July 7, after the original deadline.  *See Jackson Mun. Airport Auth.* v. *Bryant*, 2017 U.S. Dist. LEXIS 106609, *8 (S.D. Miss. July 11, 2017); *See also Jackson Mun. Airport Auth.* v. *Bryant,* No. 3:16-cv-246-CWR-FKB (S.D. Miss. Jan. 15. 2019) (text-only order further extending the discovery deadline).

(212) 373-3000
adelaney@paulweiss.com
chammerman@paulweiss.com
cgrusauskas@paulweiss.com
akorberg@paulweiss.com

HILLARY SCHNELLER
JULIE RIKELMAN
CENTER FOR REPRODUCTIVE RIGHTS
199 Water St., 22nd Fl.
New York, NY 10038
(917) 637-3777
hschneller@reprorights.org
jrikelman@reprorights.org

BETH L. ORLANSKY
MISSISSIPPI CENTER FOR JUSTICE                    ,
P.O. Box 1023
Jackson, MS 39205
(601) 352-2269
borlansky@mscenterforjustice.org

ROBERT B. MCDUFF
767 North Congress Street
Jackson, MS 39202
(601) 969-0802
rbm@mcdufflaw.com

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 8th  day of March, 2021, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of

electronic filing to all counsel of record.

*/s/ Aaron S. Delaney*
Aaron S. Delaney