# Exhibit 8

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION
Civil Action No. 3:18-CV-00171-CWR-FKB
-----------------------------------x
JACKSON WOMEN'S HEALTH ORGANIZATION,
on behalf of itself and its patients;
SACHEEN CARR-ELLIS, on behalf of
herself and her patients,
Plaintiffs,
vs.
THOMAS E. DOBBS, M.D., M.P.H.,
in his official capacity as
State Health Officer of the
Mississippi Department of Health,
et al.,
Defendants.
-----------------------------------x
VIDEOTAPED DEPOSITION OF BYRON CALHOUN, M.D.
Conducted Virtually
Wednesday, February 3, 2021

Reported by:
Frank J. Bas, RPR
JOB NO. 189479

conclusion.

Q. Right. Okay. So the portion that we had discussed that suggests that common risk factors account for suicide and induced abortion rather than the induced abortion itself doesn't affect your opinion?

A. That's not what I said. That mischaracterizes what I said. I'm reading their conclusion. It said women with induced abortion have a two-fold in suicide increased risk.

It may decrease the risk if they change the way they do things, but it's still present, even in changing their guidelines.

Q. What is still present?

A. Risk for suicide.

Q. Okay. Are you aware of the large body of evidence demonstrating that abortion actually doesn't cause or increase the risk of suicide?

MR. BARNES: Object to form.

A. I'm aware that there's literature out there.

Q. Okay. Did you consider it in

preparing your report?

A. Yes.

Q. Why didn't you include any of it?

A. I didn't think it was pertinent to what I was talking about. I was talking about the increased risk. Not decreased risk or no risk.

Q. So when you're assessing the risk, you only -- you assessed the increased risk but you didn't consider what -- the decreased risk?

A. Or no risk. No, that's -- because it's not -- it's not pertinent. It's not true. There is an increased risk.

MR. BARNES: Object to form.

Q. But you're aware that there is also a large body of evidence demonstrating that there is not an increased risk?

MR. BARNES: Object to form. Vague and ambiguous.

A. Which is what the answer I've given you is saying. That's why we're here. It's to discuss those different -- those differences. My contention is that there is

an increased risk, and that's what I'm here to talk about.

Q. Okay. And what is your -- tell me a little bit about your understanding of the literature and the methodology that supports your opinion on this point of increased risk.

A. I don't understand the question.

Q. What don't you understand about it?

A. I just don't understand your question.

Q. Well, you said your opinion is that there is an increased risk of suicide in women who have abortions. Is that your opinion?

A. That's what the literature says.

Q. And -- right, I understand that's what the literature says. There's also literature that says the opposite, and so I was -- my question is: What methodology underpins the literature that says there is an increased risk?

A. Well, I think the methodology is using data linkage like Gissler uses in Finnish data to link the data together with abortion and outcomes.

B. CALHOUN

A. I'm there.

Q. Okay. You said -- you write, "I note that Mississippi medical practice regulations permit doctors to perform D&Cs in Level II offices."

And you cite the Mississippi code. Do you see that?

A. Yes.

Q. Okay. So what are you saying here?

A. Well, the last sentence really sort of encapsulates it. It says (as read):

"Even if licensure were not required, based on my experience a responsible practitioner in an office-based surgery would adopt similar safety measures."

Q. When you're referring to Level II offices and you cite the Mississippi code, this is the Mississippi code that governs office-based surgery, not abortion clinics?

A. Right. I'm saying that the same standard should apply.

Q. Got it.

In paragraph 90 of your report you conclude essentially that in your experience

C E R T I F I C A T E

STATE OF NEW YORK )
COUNTY OF NEW YORK )

I, FRANK J. BAS, a Notary Public within and for the State of New York, do hereby certify:

That BYRON CALHOUN, M.D., the witness whose testimony is hereinbefore set forth, was duly sworn by me and that such testimony given by the witness was taken down stenographically by me and then transcribed.

I further certify that I am not related by blood or marriage, to any of the parties in this matter and that I am in no way interested in the outcome of this matter.

That any copy of this transcript obtained from a source other than the court reporting firm, including from co-counsel, is uncertified and may not be used at trial.

IN WITNESS WHEREOF, I have hereunto set my hand this 10th day of February, 2021.

Frank Bas

_______________________

FRANK J. BAS, RPR CRR
STATE OF NEW YORK
Notary Public No. 01BA6260327

(My commission expires 4/30/2024)