1             IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
2                       NORTHERN DIVISION

3


4   JACKSON WOMEN'S HEALTH ORGANIZATION, ET AL.       PLAINTIFFS

5   VERSUS                   CIVIL ACTION NO. 3:18-cv-00171-CWR-FKB

6   THOMAS E. DOBBS, M.D., ET AL.                     DEFENDANTS

7

8

9             STATUS CONFERENCE PROCEEDINGS
          BEFORE THE HONORABLE CARLTON W. REEVES,
10            UNITED STATES DISTRICT COURT JUDGE,
                       JUNE 4, 2021,
11                  JACKSON, MISSISSIPPI

12

13             (APPEARANCES NOTED HEREIN.)

14

15

16

17

18

19

20

21

    REPORTED BY:
22
        CANDICE S. CRANE, RPR, CCR #1781
23      OFFICIAL COURT REPORTER
        501 E. Court Street, Suite 2500
24      Jackson, Mississippi  39201
        Telephone:  (601)608-4187
25      E-mail:  Candice_Crane@mssd.uscourts.gov

```
 1    APPEARANCES VIA VIDEOCONFERENCE:

 2    FOR THE PLAINTIFFS:     AARON S. DELANEY, ESQ.
                              CAITLIN GRUSAUSKAS, ESQ.
 3                            ALEXIA D. KORBERG, ESQ.
                              HILLARY SCHNELLER, ESQ.
 4                            SHAYNA MEDLEY, ESQ.
                              JENNY MA, ESQ.
 5                            ROBERT B. MCDUFF, ESQ.

 6    FOR THE DEFENDANTS:     PAUL E. BARNES, ESQ.
                              WILSON D. MINOR, ESQ.
 7                            ROBERT E. SANDERS, ESQ.
                              RAYFORD G. CHAMBERS, ESQ.
 8                            LEE DAVIS THAMES, ESQ.

 9    ALSO PRESENT:           WILLIAM "TREY" JONES, III, ESQ.
                              JACOB A. BRADLEY, ESQ.
10                            SANDER SABA
                              KAHOLI KIYONAMI
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

## TABLE OF CONTENTS

2

Style.................................................... 1

3

Appearances............................................. 2

4

Certificate of Court Reporter........................... 37

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              PROCEEDINGS VIA VIDEOCONFERENCE, JUNE 4, 2021

 2

 3         THE COURT:  Good morning.  This is the matter of

 4   Jackson Women's Health Organization versus Thomas E. Dobbs,

 5   Civil Action 3:18-cv-171-CWR-FKB.  We're here by Zoom with the

 6   parties on a joint motion for continuance and request for

 7   expedited consideration and other issues.

 8         Who do I have on for the plaintiff?

 9         MR. DELANEY:  Your Honor, it's Aaron Delaney for the

10   plaintiffs from Paul, Weiss, Rifkind, Wharton & Garrison.

11   With me today making appearances are my colleagues Alexia

12   Korberg and Caitlin Grusauskas, and I've also got a couple

13   colleagues not making appearances from Paul, Weiss, Sander

14   Saba and Kaholi Kiyonami, from -- just to observe and assist.

15         And then my co-counsel is also here -- I can let them

16   introduce themselves -- from the Center for Reproductive

17   Rights and also Mr. McDuff, I believe.

18         THE COURT:  Okay.

19         MR. MCDUFF:  Good morning.

20         THE COURT:  Good morning.

21         MR. MCDUFF:  Good morning, Your Honor.  This is Rob

22   McDuff; I'm on phone but not video.

23         THE COURT:  Okay.  Thank you, Mr. McDuff.

24         MS. SCHNELLER:  And good morning, Your Honor.  This is

25   Hillary Schneller from the Center for Reproductive Rights, and
```

1   with me are my colleagues Jenny Ma and Shayna Medley.

2       THE COURT:  Okay.  Anyone else for the plaintiffs?

3       Okay.  So who's representing the defendant?

4   Defendants, I guess, yeah.

5       MR. BARNES:  Your Honor, this is Paul Barnes with the

6   Mississippi Attorney General's Office representing the state

7   defendants, Dr. Dobbs and Dr. Cleveland.  Also with me is my

8   colleague Wilson Minor; he's here in the room with me, but he

9   has his video and audio turned off.  And we also have counsel

10  for some of the local defendants.

11      THE COURT:  I'm sorry, Mr. Barnes.  You broke up.  You

12  also have counsel for whom?

13      MR. BARNES:  I said I believe we also have some counsel

14  for some of the local defendants who can identify themselves.

15      THE COURT:  Okay.

16      MR. SANDERS:  Yes, Your Honor.  Your Honor, my name is

17  Bob Sanders.  I don't know whether you can see me.  I can't

18  see myself up there, but I represent the Hinds District

19  Attorney, Jody Owens.

20      THE COURT:  Thank you, Mr. Sanders.  We do not see you,

21  and that's fine.  I can hear you well.

22      Any other defendants?

23      MR. CHAMBERS:  Your Honor, Ray Chambers here on behalf

24  of County Attorney Gerald Mumford.

25      THE COURT:  Okay.  Any other parties?  Any other

1  parties or counsel present?

2      MR. THAMES:  Your Honor, this is Lee Thames.  I

3  represent the City of Jackson.

4      THE COURT:  Okay, Mr. Thames.  Thank you.

5      MR. JONES:  Good morning, Your Honor.  This is Trey

6  Jones, and I've got Jake Bradley here with me, and we

7  represent some members of the legislature, the Mississippi

8  Legislature, and there's a pending discovery motion involved.

9  We're not parties to the case.

10      THE COURT:  Okay.  Thank you, Mr. Jones.

11      All right.  Anyone else?

12      I realize this is a joint motion, at least on this

13  issue with respect to continuing the case and for the request

14  for expedited consideration.  I'll hear from the parties,

15  whichever way you want to be heard on this particular motion.

16      I know there's some disagreement about the timing or

17  the schedule, so, Mr. Barnes, I'll start with you.

18      MR. BARNES:  Yes, Your Honor.  Since I did actually

19  file the joint motion on behalf of the parties, just very

20  briefly give the Court the background.  Shortly after the

21  Supreme Court, rather unexpectedly, granted cert on the

22  15-week law, Ms. Schneller and I began conferring -- we are

23  the counsel of record in the Supreme Court -- about the

24  potential impact that the Supreme Court case might have on the

25  litigation at this level.

1          Over the next couple of weeks, Mr. Delaney got

2     involved, and last week we conferred and reached an agreement

3     that neither side believed that it was workable or feasible to

4     try the case in December after the Supreme Court has informed

5     us that -- or the clerk has informed us it's very likely that

6     the case will be heard for argument in November.  And

7     obviously there's substantial overlap -- excuse me -- with the

8     briefing schedule, the remaining briefing schedule on

9     dispositive and *Daubert* motions here as well as the briefing

10    schedule in the Supreme Court.

11         And as I know you're aware, preparation for oral

12    argument for a Supreme Court case, especially one of this

13    magnitude, is an all-in-type endeavor.

14         So we conferred.  We were able to agree on that fact;

15    both sides agreed that we needed to ask the Court if the Court

16    would be willing to please move the case out of December, and

17    that's where we had a little bit of a disagreement.  We know

18    the case has been going on now for three years, and we all

19    want to get it to the finish line.  But, Your Honor, it is --

20    and that's why the joint motion, obviously.  We drafted

21    (AUDIO GAP) one paragraph and the plaintiffs drafted the other

22    about our positions.

23         It's our position that even -- nobody can predict what

24    the Supreme Court will do.  I'm certainly not going to try to

25    tell the Court or make a prediction, but certainly it is

1   significant.  And it has been recognized as possibly, you

2   know, a very significant case in abortion law in general, but

3   certainly it has the potential to have an impact on the legal

4   issues that the Court is going to have to consider even in

5   Part II.  And so it is our position, state defendants'

6   position, that the Court should, in our view, wait until the

7   Supreme Court has ruled, then hold a status conference, set a

8   new trial date and final briefing schedule for the pending

9   motions, and move forward from there.

10       At that point -- obviously I'll be happy to answer any

11  questions the Court has, but I guess it will be -- next I

12  think either Mr. Delaney or Ms. Schneller probably should pick

13  up from there with their position.

14       THE COURT:  Okay.  Who -- Mr. Schnell- -- excuse me,

15  Ms. Schneller, Mr. Delaney, which of the two of you?

16       MR. DELANEY:  Your Honor, it's Aaron Delaney.  I'll

17  speak on behalf of the plaintiffs on this motion.

18       So, Your Honor, I want to start by echoing Mr. Barnes

19  that, you know, we do fundamentally agree that, you know, this

20  unexpected cert grant has created a conflict between the two

21  cases, and obviously, Your Honor, they're both incredibly

22  important, incredibly significant cases and parts of the same

23  case, and we want to make sure we give them both fair,

24  adequate, and complete attention.

25       And that's why, Your Honor, we're in agreement with

1   Mr. Barnes that the trial and the briefing schedule should

2   be -- there should be a continuance on both just to

3   accommodate the Supreme Court schedule given the burdens not

4   only on the attorneys but also, Your Honor, a Supreme Court

5   case creates actually a significant burden on our clients who,

6   you know, are dealing with the demands of that, the media, and

7   all the things that come along with a Supreme Court case but

8   also, you know, running the clinic day to day, and it's a

9   leanly run clinic as it is.

10          So we do think it's important to recognize those

11  burdens, and that's why we're agreeing with Mr. Barnes on the

12  continuance as a conceptual matter.

13          I think where we disagree, Your Honor --

14          THE COURT:  Mr. Delaney -- Mr. Delaney, we do have a

15  court reporter here taking a transcript of this, so I'll ask

16  that you slow down just a little bit.

17          MR. DELANEY:  Absolutely.

18          THE COURT:  I'm following you fine.  I just want you to

19  slow down for my court reporter.

20          MR. DELANEY:  Mr. Barnes is laughing.  He knows I

21  always do this.  No problem, Your Honor, and I apologize to

22  the court reporter.

23          So I think where we disagree, Your Honor -- and it will

24  be no surprise to you -- is on the potential impact of the

25  Supreme Court decision, when it comes, on this case.  And why

1    we are disagreeing with Mr. Barnes on staying this case,

2    basically, until after the decision is for a few reasons, Your

3    Honor.

4           One, as a practical matter, as you're well aware, there

5    are abortion cases going on all over this country at any given

6    time, and there has been -- this is now the third Supreme

7    Court grant in the last five or six years, and as a practical

8    matter, all those cases can't simply stop completely once the

9    Supreme Court, you know, takes one of these cases.

10          Now, obviously it's in our case, and this is why we're

11   saying we need a short continuance so they don't conflict, but

12   we don't think the whole case has to stop in its tracks until

13   the Supreme Court makes a ruling.

14          But more importantly, Your Honor, we think our case is

15   going to be tried under the undue burden standard that was set

16   forth in *Casey* and which has been applied multiple times since

17   that, since *Casey* was decided in 1992.  And we just don't

18   think the standard is going to fundamentally change as a

19   result of the current Supreme Court case.  At its core --

20          THE COURT:  Mr. --

21          MR. DELANEY:  -- the issue before the Supreme Court

22   right now --

23          THE COURT:  Mr. Delaney, let me interject right here --

24          MR. DELANEY:  Yeah.

25          THE COURT:  -- and ask a question.

1          The question before the U.S. Supreme Court in this

2    case, they certified one question as I take it, and it's to

3    the effect of -- I mean, I'm not -- I'm paraphrasing.  It's

4    whether any and all pre-viability restrictions are

5    unconstitutional; isn't that the question that the Supreme

6    Court has asked you-all to present to it?

7          Is that the question that will be addressed --

8          MR. DELANEY:  Yes, it is, Your Honor.

9          THE COURT:  -- by the parties?

10         Is it -- well, do -- what is the specific question,

11   then?

12         MR. DELANEY:  At the Supreme Court, yes.

13         THE COURT:  Right.  The specific question before the

14   Supreme Court that they've asked the parties to address, and,

15   again, I'm paraphrasing, but it's whether any and all

16   pre-viability restrictions are unconstitutional.  Isn't that

17   the question?

18         MR. DELANEY:  It is, Your Honor.

19         THE COURT:  Okay.  So we know we're talking about

20   pre-viability issues in this case.  And so assuming the court

21   says, yes, the states can enforce pre-viability restrictions,

22   that those pre-viability restrictions are constitutional, what

23   does that do with Parts II and III?  What does that do with

24   Part I of this case at that point once they make that

25   ruling -- if they were to make that specific ruling?

1      MR. DELANEY:  So, Your Honor, let me just say I think

2   you're essentially right on the question before the Court.

3   But even more specifically what's before the court, the

4   Supreme Court, is whether to revisit its prior holding that

5   prior to viability is a ban -- not a restriction, Your Honor,

6   a complete and total prohibition on abortion, is that in all

7   cases always an undue burden under the undue burden standard?

8      We think that is a narrower question than what we're

9   going to try in this case, which are restrictions that don't

10  completely ban abortion but merely place restrictions and do

11  they have the purpose and effect of creating a substantial

12  obstacle for abortion.  That's what's on trial.  But that's

13  not the issue before the Supreme Court.

14      What's before the Supreme Court is:  Is a ban always an

15  undue burden?  And, Your Honor, we think at worst -- you know,

16  we -- well, first of all, we think the Supreme Court will

17  still uphold that a ban is unconstitutional under a

18  longstanding 50 years of precedent.  But we think at worst, if

19  the court does take a different view, we don't think they're

20  going to do away with the undue burden test.

21      In other words, the undue burden test which balances

22  the benefits and the burdens of a particular restriction, or

23  in this case a ban, will still be the test, and the evidence

24  you'll have to show would still be the same under that.  They

25  would just be saying that -- whereas prior to this decision, a

1  ban was always considered an undue burden, they would just be

2  saying, well, now they would hear -- you know, the courts

3  would have to entertain evidence on a ban and balance the

4  benefits and burdens.

5       So fundamentally the test doesn't change, Your Honor.

6  The evidence that we will need at trial in terms of the

7  purpose of the laws, the benefits and burdens of the

8  restrictions that are at issue in Part II of this case, that

9  would not change.  And, again, Your Honor, we think that's in

10  the worst-case scenario, which is why we think we can proceed

11  without a decision.

12       THE COURT:  Well, I mean, why wouldn't it be -- why

13  isn't it prudent just to see what they're going to say?

14       I can imagine, you know, it could be nine different

15  decisions, I mean, or nine different opinions.  I don't know;

16  it could be five or six opinions, and then we'll have to

17  figure out whose opinion controls or what -- it could be a

18  unanimous decision.  It could -- all of this is speculation as

19  to what the court might do, so why wouldn't it be prudent to

20  just wait and see what they say?

21       I mean, because we may find that you might want to

22  revisit some of the issues with respect to the experts.  You

23  might want to revisit some of the issues with respect to the

24  evidence that bears on any of these burdens, any of these

25  restrictions.  I'm just trying to figure out how are the

1   parties benefitted by spending, engaging in substantial costs

2   and fees, and they might have to redouble or sort of go down a

3   different path based upon what the Supreme Court says about

4   the particular question that it has asked the parties to

5   address.

6          And part of the real -- you know, one of the real big

7   issues in this case, I think, is that this Court and the Fifth

8   Circuit has already ruled that the 15-week restriction is a

9   ban for all practical purposes here in the state of

10   Mississippi because there is no medical testimony that this

11   court has seen that says that a fetus is viable at 15 weeks.

12          But if the Court -- if the Supreme Court says it

13   doesn't matter, then I imagine there's going to be some

14   dispute about the medical proof, and -- you know, I don't

15   know.

16          But wouldn't it be prudent, Mr. Delaney, to just wait

17   and see what -- the Supreme Court took this case up for a

18   reason.  I mean, there was no circuit split on this issue,

19   none.  They took this case up for a reason with that

20   particular question.  So we need to know what their answer or

21   what's their response to that, because it's not common, I

22   think, for the Supreme Court to take up matters that are

23   not -- where there has not been a circuit -- where there is no

24   circuit split.  So help me figure out --

25          MR. DELANEY:  Yes, Your Honor.

1        THE COURT:  -- Mr. Delaney, and I think I called you

2   Delaney.

3        MR. DELANEY:  Yes, Your Honor.

4        THE COURT:  You know, help me figure this out; why

5   should we put your client through the expense of continuing to

6   go forward down a path where we don't know what the ultimate

7   answer will be?

8        MR. DELANEY:  So, Your Honor, candidly, these are all

9   issues obviously we've considered and discussed.  You know,

10  we've played out various scenarios on our team and with our

11  clients, you know, talking about what's the right way forward.

12       And, you know, at its core, Your Honor, you sort of put

13  your finger on it, which is:  What is the Supreme Court going

14  to do, and is it going to radically reshape the law in this

15  area, fundamentally change the undue burden standard, and some

16  of the other issues that you've raised.

17       And I guess, Your Honor, in our, you know, view, our

18  strategic view, and especially working with our counsel,

19  Center for Reproductive Rights, who tries these cases all over

20  the country, you know, our view is that the most likely

21  outcome is not -- is that it's not going to significantly

22  change the law in terms of how we would try this case.

23       You know, that being said, Your Honor, you know, we

24  are, you know, also conscious of the Court's time and the

25  Court's busy schedule and, you know, the burdens of a trial,

1    especially with this hanging over the Court.  So, you know,

2    our position with Mr. Barnes and with this court is always the

3    same; we have a view and we have a strategic view that we can

4    try this case, even with a decision pending because of where

5    we think the law is and where it's going to be.  But, you

6    know, we're willing to work with the Court and with Mr. Barnes

7    to find a reasonable solution for all parties.

8          THE COURT:  Okay.  I think Mr. Barnes -- Mr. Barnes,

9    I'll go back to you.  I imagine you disagree with some of

10   that, because I saw the expression on your face.  So I mean --

11         MR. BARNES:  Well, I'm sorry, Your Honor.  I've never

12   had much of a poker face, but it's no mystery to Mr. Delaney.

13   We've had candid conversations about this, and it's no

14   surprise to the Court that we have this disagreement.

15         But obviously, yes, we think it would be more prudent

16   to wait.  And the Court brought up the issue of fees.  You

17   know, not only do we have trial preparation fees, the cost of

18   experts, all those sorts of things, which, you know, we might

19   have to have a do-over on at least some of that.  And -- but

20   we also all know who the plaintiffs ultimately hope will be

21   paying for that, because we know that if they're successful,

22   they'll be asking the State of Mississippi to ultimately foot

23   the bill.  So cost is certainly a concern for us.

24         I think, you know, Your Honor, you put your finger on

25   it when you talked about the specific question that the

1    Supreme Court has granted cert on.  It's a really broad

2    question.  It could be a very narrow question or it could be a

3    very broad question depending on how the court wants to

4    address it.  I think the court gave itself the leeway to make

5    any -- any rulings and any sort of lesser-included rulings in

6    that broad topic.

7          But since the court did -- as Your Honor said, without

8    a circuit split and, as I mentioned earlier, rather

9    unexpectedly after the cert petition had been pending for so

10   long at the Supreme Court without action, if -- the fact that

11   the court granted cert on the question of whether or not any

12   or all pre-viability prohibitions on elective abortions are

13   unconstitutional, it certainly implies that at least some

14   members of the court think the answer might be no.  It implied

15   that there are at least some pre-viability prohibitions that

16   could be constitutional.

17         Now, as I mentioned before, that could be narrow or

18   broad.  The court could simply say, no, they're not all

19   unconstitutional, and remand it.  Or the court could, you

20   know, fundamentally dig into the standard and give guidance

21   and instruction.  We don't know, but it certainly is a

22   possibility.  And certainly if there is any ban or prohibition

23   that the Supreme Court determines could be constitutional, we

24   think it will necessarily say something about regulations or

25   restrictions that don't rise to the level of a prohibition.

1          The second thing that I'd like to mention, Your Honor,

2     that we haven't talked about yet is the pending Fifth Circuit

3     case, the Texas dismemberment abortion case.  We think that

4     also is relevant in that, you know, there is a -- Mr. Delaney

5     mentioned balancing several times, and obviously in the

6     briefing on our motion, we take the position that the chief

7     justice's concurring opinion in *June Medical* actually has

8     changed the standard and is controlling.  There is a circuit

9     split on that issue, whether or not -- the question is whether

10    a restriction or regulation is a substantial obstacle to a

11    large fraction of women without any balancing or whether the

12    courts are to actually perform benefits-versus-burdens

13    balancing.  Obviously there's a sharp dispute about that, and

14    we acknowledge it.

15         The Fifth Circuit -- a panel in the Fifth Circuit back

16    in the fall held that the chief justice's opinion was not

17    controlling and that balancing was required.  But a week

18    later, the Fifth Circuit agreed to review that case en banc.

19    The court heard oral argument at the end of January but has

20    not yet issued a ruling.  So that's secondary to the issue of

21    the Supreme Court ruling, but it appears at least one of the

22    issues the Fifth Circuit has before the entire court is the

23    specific question of what does the undue burden test mean

24    after *June Medical*?  And there is some dispute about that, and

25    we think that is another potential development that cautions

1    prudence.

2         THE COURT:  And if the Supreme Court -- in whatever

3    outcome of the Supreme Court decisions, they will remand it,

4    but they will remand it to the Fifth Circuit; isn't that

5    correct?  And the Fifth Circuit would have -- I assume, you

6    know, they will go through the opinion to determine whether or

7    not it should be remanded to this court, I presume; right?

8         MR. BARNES:  I presume so also, Your Honor.  And I

9    would say when you were talking earlier about what might have

10   to take place with regards to the 15-week law, you know, which

11   is specifically at issue, first of all, as we, you know,

12   agreed and acknowledged in the Fifth Circuit, the fetal

13   heartbeat law, which is still at issue here in Part III of the

14   case, you know, it's moving along concurrently with Part II,

15   and plaintiffs have filed a dispositive motion on the fetal

16   heartbeat law.

17        That law is derivative, in a sense, of the 15-week law

18   in that if the 15-week law or all prohibitions are

19   unconstitutional, then the fetal heartbeat law necessarily

20   would also fall.

21        However, if the 15-week law may be constitutional, if

22   that's what the Supreme Court rules, then that brings into

23   question the viability, for lack of -- I apologize.  I didn't

24   mean to -- for lack of a better term, the viability of the

25   fetal heartbeat law as well.  Your Honor, the stage we were

1    at, as the Court will recall with the 15-week law, is that we

2    did put on -- we did designate one expert on fetal pain.  The

3    plaintiffs did not, instead moved to exclude our expert, and

4    the Court granted that motion.

5         I think if there is any remand to the Fifth Circuit and

6    then ultimately to this court, we certainly -- one, the

7    Supreme Court is going to have to tell us what issues the

8    court -- evidentiary issues are relevant to the court's

9    decision.  But certainly I am confident that the plaintiffs

10   would want the opportunity for discovery at that point for

11   whatever issues the Supreme Court deems relevant, including

12   fetal pain.  And at that point, I would anticipate we would

13   see experts from them.

14        The one other thing I wanted to mention, Your Honor, is

15   that, you know, the Fifth Circuit might well unofficially hold

16   the Texas dismemberment decision until after the Supreme Court

17   rules.  And as you know, I mean, the Fifth Circuit, somebody

18   could just hold it on a dissent or a concurrence on an opinion

19   and they wouldn't have to necessarily take any official

20   action.

21        But, Your Honor, we fundamentally agree with the

22   principles the Court has discussed and about the potential

23   ramifications that is the basis.  Again, this is an unusual

24   situation.  It's an unusual situation to have this many laws

25   at issue in a single case.  It's unusual to have had, you

1    know, separate appeals.

2         And, again, I just -- we think it would be most prudent

3    to wait.  However, we respect the plaintiffs' position, and we

4    understand the differences that the parties have.  Again,

5    that's why we respectfully filed a joint motion to let the

6    Court know exactly what we did agree and could agree on and

7    where we couldn't.

8         THE COURT:  Mr. Delaney, let me ask you this question:

9    If the Court agrees with your position, if this court, if I

10   agree with your position, what does the plaintiff foresee a

11   trial looking like that occurs maybe in the spring of 2022?

12   What does a trial in this case look like?

13        All the discovery would have been done in Part II and

14   Part III.  You know, we will still have hanging over our head

15   awaiting an opinion by the Supreme Court, so what does a trial

16   look like that occurs prior to the Supreme Court's ruling?

17        MR. DELANEY:  Yes, Your Honor.  I mean -- and first,

18   before -- I'll address that.  Just one point that Mr. Barnes

19   raised about the Fifth Circuit decision -- or the Fifth

20   Circuit case that's pending right now.  And as you correctly

21   stated, one of the issues in that trial is any potential

22   tension between the undue burden standard, you know, clarified

23   by the Supreme Court in *Whole Woman's Health v. Hellerstedt*

24   and Judge Roberts' concurrence in the *June Medical* case.  I'd

25   like to note first of all, that was already before the Fifth

1    Circuit before Mr. Barnes filed the -- his summary judgment,

2    and so, you know, he was prepared to proceed with that case

3    pending.  So I'm not sure why that is relevant to this, you

4    know, separate and apart from the Supreme Court case.

5         And also, Your Honor, we believe, and cases have been

6    doing this already around the country, that you can brief it

7    under both, and we believe we win under both.  So it's not

8    materially significant, so just on that point.

9         In terms of the trial, Your Honor, I think I already

10   sort of hinted at it before, is that, you know, there are four

11   other laws that are not bans.  They're not complete

12   prohibitions.  They are things like the informed consent law,

13   the telemedicine ban, you know, one that says only physicians

14   can perform abortions in Mississippi, and lastly the separate

15   licensing regime.  So those four laws, they would go forward

16   under the existing undue burden standard, which, as I said,

17   again, we don't think it's likely that the Supreme Court is

18   going to do away with that standard as opposed to potentially

19   saying that even a complete prohibition would need to be, you

20   know, further analyzed under that ban.  So that would go

21   forward.  The evidence that's been generated by the parties in

22   discovery would be substantially identical.

23        And even on the six-week ban, Your Honor, it's

24   preliminarily enjoined under the undue burden standard, but we

25   also have an equal protection claim not only against the

1  six-week ban but also against the other four laws that is

2  not -- the equal protection claims are not before the Supreme

3  Court right now, and so it could -- you know, we believe the

4  trial could proceed under the current record on the undue

5  burden claims with respect to the four non-bans laws, if I can

6  put it that way, and also the equal protection claims as to

7  all the laws at issue.

8          And then obviously, Your Honor, if the Supreme Court

9  hands down a decision, you know, A, I think, especially since

10  this is a bench trial, Your Honor, we could address any impact

11  it has on those laws and your findings on those laws with

12  supplemental submissions.  And, Your Honor, you had already

13  bifurcated the 15-week ban from this part of the case, and so

14  if there needed to be some limited additional discovery, as

15  Mr. Barnes alluded to, you know, we could deal with that case

16  separately as we've done since the beginning of the trial.

17          It wouldn't prevent us from proceeding with respect to

18  the other laws and the equal protection claims.  So kind of at

19  a high level, I think that's what the trial would look like,

20  Your Honor.

21          THE COURT:  Okay.  Now, I take it it's your contention

22  that based on the question that's before the Supreme Court, I

23  know you say it's unlikely the Supreme Court will not overturn

24  the undue burden sort of thing that now controls.  It's not a

25  foregone conclusion that the court will not overturn its

1    preexisting state of the law.  I mean, they could do it.  They

2    could overturn that by addressing the specific question that

3    the parties are arguing before the Court.

4         Is that a fair statement?  They could.  I mean, it's a

5    possibility; right?

6         MR. DELANEY:  Yes, Your Honor.  I'm certainly not going

7    to pretend I know exactly what the Supreme Court is going to

8    do, so that is definitely a possibility.  As you said, we

9    don't think it's likely given what we've seen from the court

10   on these cases over the last few years, but we understand it's

11   a possibility.

12        THE COURT:  Okay.  And if they do, then the discovery

13   and how the issues might be litigated on what I'm calling "the

14   trap laws," I guess -- I think that's the nomenclature that's

15   been used, I think, with respect to these other sort of

16   restrictions -- the parties might have to go back and

17   reanalyze how the specific laws affect persons here in

18   Mississippi, how it affects the clinic here in Mississippi,

19   and how it affects individual doctors who practice here in

20   Mississippi.  Is that a fair statement, Mr. Delaney?

21        MR. DELANEY:  So, Your Honor, I'm not sure I agree

22   completely with that in terms of the evidence that would have

23   to be presented.  So, you know, right now the evidence we're

24   planning to put on at trial is around, for example, the

25   purpose of the laws, right, which, again, we don't anticipate

1    the Supreme Court is going to do away completely with the

2    purpose test and whether -- I mean, that's -- whether the

3    purpose of a law is unconstitutional is not unique to the

4    abortion context.  Obviously it exists in voting laws and

5    racial discrimination laws, so we don't anticipate they're

6    going to do away with that.  And I don't believe there's

7    significant additional -- we have a pending motion with the

8    legislators, as Mr. Jones mentioned earlier, but we don't

9    think fundamentally that evidence is going to change or shift

10   or need additional discovery.

11          And then on the benefits and the burdens of the law,

12   you know, again, Your Honor, we think both parties have had a

13   significant opportunity to put forward all the evidence on,

14   for example, the benefits or lack of benefit of the law and

15   also with respect to the burden.  So I'm not sure how the

16   Supreme Court decision would sort of, for example, change, you

17   know, is a woman -- what kind of burden does it impose on a

18   woman to have to make two trips to the clinic?  I'm not sure

19   there's additional discovery to be done on that just because

20   the court, you know, for example, potentially says that while

21   you can't ban it completely, you can have a complete ban

22   pre-viability.  I think it would still be relevant about

23   whether, you know, women are struggling to get to the clinic

24   or not.

25          THE COURT:  Okay.  All right, then.  Thank you.

1          Any final words, Mr. Barnes?

2          MR. BARNES:  Very quickly, Your Honor.  I just wanted

3      to mention that we think that the purpose prong of the test is

4      at issue too and questionable because neither the Supreme

5      Court nor other courts have ruled purely based on purpose that

6      an abortion law should be struck down.  And the Supreme Court,

7      of course, in *Mazurek* said some things that cast some doubt

8      about that, so we think that's still a murky area of law.  I

9      only mentioned that because Mr. Delaney did.

10          The other thing, Your Honor, is as far as these Part II

11     claims, if the chief justice's opinion is determined to be

12     controlling -- and as I said, there is a circuit split there

13     already between the Sixth and Eighth Circuit -- evidence of

14     benefits would be irrelevant.  If the question is simply

15     whether a law imposes a substantial obstacle on a large

16     fraction of women seeking an abortion, then putting on

17     evidence of benefit and discussing balancing and even

18     considering the balancing would be unnecessary.  So we think

19     that would have an impact on the way the parties would

20     approach trial and obviously the way the Court would be

21     viewing the evidence.

22          However, Your Honor, we've hashed this out pretty good.

23     The Court clearly understands the issues, and we have nothing

24     further.

25          THE COURT:  Well, let me just be clear on one thing.

1    All the discovery -- we're at the stage now that all -- at

2    least as the case sits right now, the discovery is complete,

3    and the next thing on the docket are the dispositive motions

4    and things of that nature.  And the trial date was actually

5    set for December of this year.  So is -- and I see you sort of

6    reaching, Mr. Barnes, but isn't all the discovery complete at

7    this time, at least with the posture of the case as it is

8    today?

9         MR. BARNES:  Yes, Your Honor.  And I was just going to

10   say with one possible exception, which is why Mr. Jones is on

11   the call, in that there is still pending some specific limited

12   discovery that the plaintiffs moved to compel with regards to

13   certain legislative information and documents, and Judge Ball

14   has not yet ruled on that motion.  That's the one exception.

15        THE COURT:  Okay.

16        MR. BARNES:  But, yes, Your Honor, we did -- by hook

17   and by crook, but we got to -- we got to the end of discovery

18   by March 17th.

19        THE COURT:  Okay.  All right.  All right.  Well, I --

20        MR. DELANEY:  Your Honor --

21        THE COURT:  Mr. Delaney, you had something?  I'm sorry.

22        MR. DELANEY:  Yeah.  No, I was just going to agree with

23   Mr. Barnes.  But also, Your Honor, we've always been focusing

24   a fair amount on the trial today, which makes sense, but

25   there's also the pending dispositive motion schedule, which I

1  believe both parties had requested a continuance on that as

2  well.  Again, we disagreed, you know, on the timing of that.

3  I think the -- but I think that both parties were fully in

4  agreement that with the upcoming briefing and argument

5  schedule with respect to the Supreme Court, we'd very much

6  appreciate a continuance on the summary judgment briefing, at

7  the very least, to deconflict with that schedule.  And I think

8  we didn't -- we didn't set out an exact schedule because I

9  think to some extent it depends on when you're going to set

10 the trial date, Your Honor.

11      But I did just want to flag that, and, you know, the

12 plaintiffs do just want to reiterate, A, that at the very

13 least, we'd like to deconflict that briefing schedule against

14 the Supreme Court schedule.  The parties are happy -- you

15 know, once Your Honor sets a trial date, I think the parties

16 are happy to work out a reasonable schedule on that.

17      But, you know, if Your Honor is going to delay the

18 trial until after the decision, we would sort of request the

19 same consideration around the summary judgment briefing for I

20 guess the similar reasons that you would grant a continuance

21 until after the decision.

22      THE COURT:  Okay.  Well --

23      MR. BARNES:  And, yes, Your Honor, we -- I just want to

24 say we agree, and I think we agreed with the plaintiffs and

25 said so in the motion that we understand that whenever the

 1    Court sets the trial, we would, you know, have to work

 2    backward from that to find an appropriate briefing schedule.

 3    But I appreciate Mr. Delaney bringing that issue up, because

 4    we do agree with him on that point.

 5         THE COURT:  Okay.  Well, I think we all are in

 6    agreement on one thing:  the need to deconflict our schedule

 7    with that of the Supreme Court.  Even I will bow to the

 8    Supreme Court on this one here, okay?

 9         So I think I have no problem doing that, and I know the

10    parties will have to spend a substantial amount of time in

11    preparation for the argument that is set to go forward at some

12    point in time, whether it's the fall or even early winter,

13    spring.  Whenever they do it, I know it's going to take a

14    substantial amount of time from the parties to prepare for

15    that, and I will not stand in the way of your preparation --

16    or this court will not stand in the way of your preparation

17    for that matter.

18         I'm going to -- if you hear it, I'm inclined to, you

19    know, grant this motion in some way.  We'll try to figure out

20    a timeline and a schedule and all of that, but I know this

21    case will not be tried in December; that I know.  The question

22    will be whether we should just wait until the decision from

23    the U.S. Supreme Court, and I'll tell you I'm inclined to do

24    that, whether we should wait on that decision and schedule a

25    status conference sometime after the fact.

1          I'm not even sure -- I think Mr. Barnes's proposal is

2     two weeks after the Supreme Court has issued a decision to

3     have a status conference.  I'm not sure two weeks would be

4     adequate because, again, I think the case is going to be

5     remanded to the Fifth Circuit.  And they might have something

6     to say about what has been returned to them or what has been

7     returned to it.  And then they -- that court might give us

8     specific instructions about how to go forward, so, you know,

9     that's what I'm thinking in my mind right now, just to give

10    you some thoughts about where I will come down.

11         But I do want to pivot for a second and have the

12    parties for a few minutes address this issue on the other

13    motion about the -- exceeding the page limitation on the

14    current briefing.  We got the motion for reconsideration on

15    yesterday that was filed by the State, so I do want to talk

16    about that.  I don't know if I'll rule today on it, but I want

17    to give you an opportunity, Mr. Barnes, to address that

18    particular motion.

19         MR. BARNES:  Yes, Your Honor.  And, again, as the

20    original motion was unopposed, the relief in the motion for

21    reconsideration is also unopposed.  I tried to be very -- to

22    very clearly delineate what plaintiffs agreed to, which is the

23    relief, the excess pages, and to make clear, I wasn't trying

24    to put words in the plaintiffs' mouth in our memorandum.

25         But the purpose of the memorandum, Your Honor, was to

1    provide additional information to the Court.  Our original

2    motion was quite short and perfunctory -- excuse me -- and we

3    felt that providing the Court with additional information

4    about the breadth and scope of the topics and the complexity

5    would help demonstrate the need for additional page limits.

6         Obviously, Your Honor, we -- we could have filed our

7    original motion earlier, and we did not.  And that, you know,

8    obviously falls on us.  However, because our first brief was

9    44 pages, if the Court keeps the limit at 45 pages, that would

10   only allow us one page for any reply, and, Your Honor, that --

11   that would be inadequate.

12        We understand that the Court might not -- that if the

13   Court was inclined to grant us any relief, the Court might not

14   go all the way to the 70 pages we'd originally requested,

15   although that's our first request, because we think that that

16   amount of space is needed considering the number of topics.

17        And as Mr. Delaney mentioned in the earlier discussion,

18   you know, we -- we tried to address equal protection claims,

19   *et cetera*, and did address them in our original brief, but I

20   would not call our analysis complete.  We simply -- you know,

21   we had to prioritize and pick and choose.  But that's why in

22   our motion, Your Honor, we asked for -- again, renewed our

23   request for 70 pages total for both sides on that one motion.

24   We're not asking for any relief concerning the *Daubert* motions

25   and the page limits.

 1         And in the alternative, though, if the Court does not

 2    find that 70 pages are necessary in the Court's opinion,

 3    that's why we asked for 60.  Your Honor, that would -- that

 4    would still allow the State roughly 16 pages for a reply

 5    brief, which we think would be reasonable.  And I'd be happy

 6    to answer any questions the Court might have, or if

 7    Mr. Delaney has anything if I've, you know, gotten anything

 8    incorrect or if he just feels like he wants to speak as to any

 9    of these issues, but we would just renew our request.

10         THE COURT:  And --

11         MR. BARNES:  I -- I apologize we didn't provide that

12    additional information to the Court in our original motion.

13         THE COURT:  Okay.  Well, with respect to the original

14    motion, the original motion suggested, I think, that the

15    plaintiffs were not requesting any additional pages, that they

16    were going to file their motion and responses all within the

17    limitations of the current rules; is that correct?

18         MR. BARNES:  Not exactly, Your Honor.

19         THE COURT:  Okay.

20         MR. BARNES:  Plaintiffs were -- and as they represented

21    and did, said that their motions would all fall within the

22    35-page limits, you know, from the local rules and that -- and

23    so we agreed that their motion and our response to that would

24    be bound by the 35-page limit.

25         However, our agreement with the plaintiffs was that

1    whatever page limits the Court granted to the State for

2    briefing our dispositive motion, that the plaintiffs would

3    have an equal number of pages to respond.  So, for example, if

4    the Court were to -- like, at 45 pages now, if that's all the

5    State has and we have one page left for a reply, then the

6    plaintiffs would have 45 pages for their responding brief.

7         However, if the Court extended that out to 60 or 70

8    pages, the plaintiffs would likewise have that amount of space

9    for their reply brief.  That was our intent, and I apologize

10   if that was not clear from our filing.

11        THE COURT:  Okay.  Now, in looking at the motion for

12   reconsideration, the State -- I believe there's a line in it

13   that the State contends that some of the arguments of the

14   plaintiffs are baseless, and if that is the case, I mean, why

15   do we need -- at least with respect to the baseless arguments,

16   why do we need, you know, any number of pages with respect to

17   arguments that the State deems are baseless?

18        I mean one, two, you know, a paragraph.  I mean, why do

19   we need a lot?  I know they raised a lot of issues, you say,

20   under the trap laws and the reasonableness of the burdens.

21   And I think the State says tying each of those together is

22   baseless, has not been done, or whatever reason.  I mean, so

23   why -- why do we need so many pages, Mr. Barnes?

24        MR. BARNES:  Your Honor, because it's -- it's -- it's

25   actually complex to get -- it's complex and difficult to get

1    down to why at the core some of these issues are baseless.

2    The one -- the leading example, I think, of that that would be

3    the -- the -- we've been calling it "the combined effect" or

4    the -- I'm sorry?

5             THE COURT:  Basically tying all the restrictions --

6             MR. BARNES:  I'm sorry, Your Honor.

7             THE COURT:  I'm sorry.  Go ahead.

8             MR. BARNES:  I was having a senior moment; I apologize.

9    And obviously we have a sharp disagreement.  Plaintiffs

10   certainly believe there is a basis for that.  We do not.  We

11   think -- and I think that issue alone could take a 35-page

12   brief in itself.  So I expect that, Your Honor, at the very

13   least plaintiffs would want the additional pages to be able

14   to -- I don't want to put words in Mr. Delaney's mouth, but

15   they, you know, would want to respond to those vigorously, I

16   would anticipate.

17            THE COURT:  Okay.  Well, I know the State has already

18   on the front end exceeded its full page limitations by about

19   nine or ten pages, and, you know, when -- I guess when these

20   motions -- when this motion was filed, it was filed at the

21   same -- I guess within that same motion was -- or might have

22   been a separate motion, was a request about the *Daubert* issues

23   and all of the pages, the request for exceeding the page

24   limitations or adding to the page limitations there.  So the

25   Court is being confronted with having, you know, hundreds of

1    pages of argument on these issues, and that's what I was faced

2    with when I took up -- I took into consideration the first

3    motion.

4            Mr. Delaney, do you have anything to say with

5    respect -- on behalf of the def- -- excuse me, the plaintiffs

6    here?

7            MR. DELANEY:  Your Honor, other than to obviously

8    contest Mr. Barnes's assertion that some of our claims are

9    baseless, no; we take no position on this, and we will -- we

10   will do the briefing within whatever limit the Court sets.

11           THE COURT:  Okay.  Okay.  I don't think I have anything

12   else.  I know we have some of the other parties or any of the

13   other individuals or whatever; is there -- does anyone wish to

14   weigh in on anything?

15           Because we have this record here, and I know it's a

16   record that preserves everything for appeal and for posterity.

17   So this is your opportunity to make sure that you have been

18   heard.  Is there anyone else that needs to be heard on

19   anything?

20           Okay.  All right.  Counsel, thank you for making

21   yourselves available.  We will get some sort of order out --

22   well, this -- there will be a continuance; I can tell you

23   that.  This trial will not go forward in December; I can tell

24   you that.  In what form or how long, we'll get something out

25   to you, so you can start focusing all of your energy to the

1   cert grant and preparing for the case that is before the U.S.

2   Supreme Court.

3           Is there anything additional?

4           And I know --

5           MR. DELANEY:  Yes, Your Honor.  There is --

6           THE COURT:  Mr. Delaney?  Mr. Delaney?

7           MR. DELANEY:  Yeah.  Apologies, Your Honor.  I just

8   wanted to --

9           THE COURT:  No.  No.

10          MR. DELANEY:  Yes, sir.  Can you hear me?

11          THE COURT:  Yes.  Go ahead.

12          MR. DELANEY:  Okay.  I just wanted to confirm.  You

13  mentioned the trial, Your Honor, but obviously with the

14  pending -- there's a pending deadline on the summary

15  judgments.  I just wanted to confirm the order will move those

16  dates as well so the parties -- I think it's June 18th is the

17  current date.

18          THE COURT:  Yes.  Yes.  Yeah.  Yeah.  I mean, I'm going

19  to allow the parties to focus their full attention to the case

20  that is before the U.S. Supreme Court.  No need for you-all to

21  be scurrying around doing things here when that time and

22  energy could be focused on that extraordinary question that is

23  before the U.S. Supreme Court.

24          MR. DELANEY:  Thank you, Your Honor.

25          THE COURT:  All right.  Is there -- again, Counsel, all

1    counsel, I appreciate you for making yourselves available for

2    this call.  The Court will issue something -- it might be a

3    text order.  It might be a short order -- in due course, but

4    you can stand down in this case for right now.

5         Thank you so much for your time.  That's all that the

6    Court has before it in this matter.  The Court is in recess.

7    ***************************************************************

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**COURT REPORTER'S CERTIFICATE**

I, Candice S. Crane, Official Court Reporter for the United States District Court for the Southern District of Mississippi, do hereby certify that the above and foregoing pages contain a full, true, and correct transcript of the proceedings had in the forenamed case at the time and place indicated, which proceedings were stenographically recorded by me to the best of my skill and ability.

I further certify that the transcript fees and format comply with those prescribed by the Court and Judicial Conference of the United States.

THIS, the 24th day of June, 2021.


/s/ Candice S. Crane, RPR CCR

Candice S. Crane, RPR, CCR #1781
Official Court Reporter
United States District Court
Candice_Crane@mssd.uscourts.gov