UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| JACKSON WOMEN'S HEALTH ORGANIZATION, on behalf of itself and its patients,<br><br>SACHEEN CARR-ELLIS, M.D., M.P.H., on behalf of herself and her patients,<br><br>               Plaintiffs,<br>v.<br><br>THOMAS DOBBS, M.D., M.P.H., in his official capacity as State Health Officer of the Mississippi Department of Health, et al.,<br><br>               Defendants. | Case No. 3:18-cv-171-CWR-FKB |

**PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE
BALL'S ORDER DATED FEBRAURY 18, 2022**

Pursuant to Fed. R. Civ. P. 72, Plaintiffs respectfully object to Magistrate Judge Ball's Order dated February 18, 2022 (Dkt. No. 250 (the "Order")), to the extent that it denied Plaintiffs' motion to compel the State Legislators[1] to produce the Senators' emails. The State Legislators should be compelled to produce the Senators' emails.

## Preliminary Statement

"Constitutional litigation occasionally requires 'discovery into the motives of the government officials' who caused the alleged violation." *Jackson Mun. Airport Auth.* v. *Bryant*, 2018 WL 3117020 (S.D. Miss. June 25, 2018) (Reeves, J.) (quoting *Benisek* v. *Lamone*, 138 S. Ct. 1942, 1944 (2018)).[2] Such discovery is required here.

As relevant to this objection, Plaintiffs' motion sought to compel a production of emails from 3 custodians (Senators Burks Hill, McDaniel, and Fillingane), regarding a single statute (the Telemedicine Ban, 2013 S.B. 2795), and from a 77-day time period (January 21 to April 8, 2013). The State Legislators' review would have been further limited by search terms.[3] The Order denies that motion on the ground that "the subpoenas are facially overbroad, would impose an undue burden, and are not proportional to the needs of this case." Order at 3.

That Order is contrary to law and clearly erroneous for three related reasons.

---

[1] The "State Legislators" are (1) Andrew Ketchings, in his capacity as Clerk of the Mississippi House; (2) Buck Clarke, in his capacity as Secretary of the Mississippi Senate, and Amanda Frusha, in her capacity as Clerk of the Mississippi Senate; (3) State Senator Angela Burks Hill; (4) State Senator Chris McDaniel; and (5) State Senator Joey Fillingane. Together, Burks Hill, McDaniel, and Fillingane are the "Senators."

[2] The Fifth Circuit vacated on the ground that particular plaintiffs lacked standing. *Stallworth* v. *Bryant*, 936 F.3d 224 (5th Cir. 2019). On remand, the Court "reinstated" the decision as to the other plaintiffs with standing. *Jackson Mun. Airport Auth.* v. *Reeves*, 2021 WL 1435270, at *1 (S.D. Miss. Mar. 15, 2021) (Reeves, J.), *appeal filed*, 21-60312 (5th Cir.).

[3] For the limitations, *see* Dkt. No. 208 ("Mot.") at 15; Dkt. No. 207-7 at 3, 9-10; Dkt. No. 226 ("Reply") at 10; Dkt. No. 226-6 (Redline of Proposed Order). The original Proposed Order was emailed to Magistrate Judge Ball but not electronically filed. Plaintiffs also moved to compel the production of documents other than emails related to the House and Senate Public Health and Welfare Committees. Plaintiffs are not seeking relief from that portion of the Order.

*First*, the Order is contrary to law because it failed to address the burden of the discovery sought by the motion to compel, and instead finds fault with other discovery initially sought by the subpoenas. The motion narrowed Plaintiffs' initial subpoena requests in response to the State Legislators' objections of burden. That practice is entirely standard and encouraged by the Federal Rules. By refusing to consider Plaintiffs' efforts at compromise during the meet-and-confer process, the Order perversely faults Plaintiffs for attempted conciliation and rewards the State Legislators for refusing to compromise.

A motion to compel cannot be denied on the ground that some *other* discovery—which the seeking party has declined to pursue with a motion to compel—might be overbroad, burdensome, or disproportionate. Indeed, the outcome here would have been contrary to law even if Plaintiffs had not narrowed their requests themselves, and instead moved to compel on their initial subpoena as drafted. The Fifth Circuit has held that, even when a court is considering a motion to compel compliance with a subpoena that is "facially overbroad," the court should "modify the subpoena to cure any overbreadth" rather than "quashing it outright." *Wiwa* v. *Royal Dutch Petroleum Co.*, 392 F.3d 812, 818–19 (5th Cir. 2004).

*Second*, to the extent that the Order can be read to find that the discovery that the motion sought to compel is overbroad, unduly burdensome, or disproportionate, any such finding would be clearly erroneous. On its face, a search-term-limited email review of 3 custodians over a period of 77 days does not suggest a significant burden. And the record on the motion to compel does not show otherwise. Moreover, the State Legislators failed to substantiate their claim of burden with, for example, evidence regarding the number of emails that would require review (*i.e.*, a "hit count").

***Third***, even assuming for the sake of argument that the discovery sought would impose a significant burden, that burden is not undue or disproportionate and does not justify the Order's complete denial of any discovery from the State Legislators. The burden of a targeted email review is well-justified by Plaintiffs' claim that the Telemedicine Ban violates the Fourteenth Amendment because it was passed for an improper "purpose" and violates equal protection. *See Planned Parenthood of Southeastern Pennsylvania* v. *Casey*, 505 U.S. 833, 878 (1992); *FemHealth USA, Inc.* v. *City of Mount Juliet*, 458 F. Supp. 3d 777 (M.D. Tenn. 2020). The Order fails to balance the purported burden against the relevance of the evidence to Plaintiffs' purpose and equal protection claims.

The State Legislators' and the State Defendants' other objections to this discovery, which the Order does not adopt, are equally meritless. The discovery is not barred by the legislative privilege, and limited relief from the scheduling order is appropriate—particularly now that the schedule has been undone by the State Defendants' appeal of a separate part of this case to the U.S. Supreme Court.

## Factual Background

In 2013, the Mississippi Legislature passed legislation to permit and encourage the widespread use of telemedicine in Mississippi.[4] Yet, during the same session, the Legislature criminalized the use of telemedicine to prescribe an "abortion inducing drug." 2013 Miss. Laws Ch. 551 (S.B. 2795), codified at Miss. Code Ann. §§ 41-41-107. Senators Burks Hill and

---

[4] 2013 S.B. 1109 (codified at Miss. Code. Ann. § 41-127-1) (permitting "a health care practitioner licensed in this state [to] prescribe, dispense, or administer drugs or medical supplies, or otherwise provide treatment recommendations to a patient after having performed an appropriate examination of the patient either in person or by the use of instrumentation and diagnostic equipment through which images and medical records may be transmitted electronically" and providing "[t]reatment recommendations made via electronic means, including issuing a prescription via electronic means, shall be held to the same standards of appropriate practice as those in traditional provider-patient settings").

4

McDaniel authored the Telemedicine Ban, and Senator Fillingane worked with anti-abortion groups to promote it. Dkt. No. 207-3 at 1; Dkt. No. 207-14.

The Telemedicine Ban was one of several abortion-restricting statutes passed during the administration of former Governor Bryant; three others are currently enjoined by federal courts.[5] While the Telemedicine Ban asserts that its purpose is to "[p]rotect women" from the dangers of telemedicine and to ensure physicians "meet the standard of care," Miss. Code Ann. § 41-41-103, there is little publicly available information regarding its development or the scientific evidence, if any, before the legislature.[6] The Ban's findings conflict with well-documented evidence that medication abortion is safe and effective when provided via telemedicine.[7] Documents produced by the former Governor suggest that the Ban's findings were ghostwritten

---

[5] *See Jackson Women's Health Org.* v. *Currier*, 320 F. Supp. 3d 828 (S.D. Miss. 2018) (granting permanent injunction against the admitting privileges provision of 2012 House Bill 1390); *Jackson Women's Health Org.* v. *Currier,* 349 F. Supp. 3d 536 (S.D. Miss. 2018), *aff'd sub nom. Jackson Women's Health Org.* v. *Dobbs,* 945 F.3d 265 (5th Cir. 2019) (granting permanent injunction on 2018 House Bill 1510, the 15-week ban), *cert. granted*, 141 S. Ct. 2619 (May 17, 2021); *Jackson Women's Health Org.* v. *Dobbs*, 379 F. Supp. 3d 549 (S.D. Miss. 2019), *aff'd*, 951 F.3d 246 (5th Cir. 2020) (granting preliminary injunction to 2019 Senate Bill 2116, the 6-week ban).

[6] State of Mississippi Judiciary Library, "Frequently Asked Questions" (Jan. 30, 2011), available at https://courts.ms.gov/research/statelibrary/st_lib_faqs.pdf (describing legislative history as "limited because committee reports, transcripts of hearings, and records of floor discussions are not published.")

[7] *See, e.g.*, The National Academies of Sciences, Engineering, and Medicine, *The Safety and Quality of Abortion Care in the United States* 57-58, 79 (The National Academies Press 2018), https://doi.org/10.17226/24950. (finding no evidence that medication abortion requires the physical presence of a physician, and concluded that telemedicine medication abortion is just as safe as in-person treatment); *Implementing Telehealth in Practice: Committee Opinion No, 798*, 135 Amer. College of Obstetricians & Gynecologists e73, (2020), https://www.acog.org/-/media/project/acog/acogorg/clinical/files/committee-opinion/articles/2020/02/implementing-telehealth-in-practice.pdf; *Mifeprex (mifepristone) Information*, U.S. Food & Drug Admin., (Feb. 5, 2018), https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/mifeprex-mifepristone-information (requiring mifepristone be dispensed in certain health care settings, but not requiring it be provided in-person by prescribing health care professional); ); U.S. Food & Drug Admin., Mifeprex (mifepristone) Information (Dec. 6, 2021), https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/mifeprex-mifepristone-information (not requiring mifepristone be provided in-person by prescribing health care professional); *see also id* (reflecting changes made in 2021 to remove requirement that mifepristone be dispensed only in certain health settings and expanding locations at which mifepristone can be dispensed to include certified pharmacies).

by anti-abortion activists and included over the objection of the Mississippi Medical Association. Dkt. Nos. 207-4 to 207-6.

## Procedural History

Plaintiffs served the subpoenas in January 2021. Dkt. Nos. 207-8 to 207-13 and 226-4. The State Legislators objected in full to the subpoenas—on the grounds of relevance, burden, and the legislative privilege—and refused to produce any documents. Dkt. Nos. 222-11 and 222-12. After a meet and confer, as the Federal Rules contemplate and encourage (*see infra*, pp. 10-11), Plaintiffs made an offer of compromise in an attempt to address the objection of burden. Dkt. No. 207-7. The State Legislators refused to engage with that proposal and made no counter-offer. Instead, the next day, they contacted Magistrate Judge Ball. Dkt. No. 222-8. After a pre-motion conference, Plaintiffs filed the motion to compel, which the State Legislators and State Defendants opposed. Dkt. Nos. 207, 208, 222, 223, 224, 226. At no time have the State Legislators offered to produce a single document.

Plaintiffs moved to compel the production described in their offer of compromise, including, as relevant, emails from the official and personal accounts of Senators Burks Hill, McDaniel, and Fillingane. Dkt. No. 208 at 15; Dkt. No. 226 at 10; Dkt. No. 207-7 at 3. The State Legislators' obligation to collect and review would have been limited by the time period of the 2013 legislative session (January 21 to April 8, 2013) and by a list of 37 search terms. Dkt. No. 207-7 at 9–10. The search terms targeted documents about abortion, Plaintiffs, and the Telemedicine Ban, and included the names and email domains of certain third parties believed to be involved with the Telemedicine Ban. *Id.* The proposed order reflected those limitations (by reference to Exhibit 5) as well as the text of the requests to which the State Legislators should respond. *See* Dkt. No. 226-6.

In addition to the Senators' emails, the motion sought hard copy documents and non-email electronically stored information. *See* Dkt. No. 207-7 at 1; Dkt. No. 226 at 10. In an effort to simplify the issues and to further reduce the burden on the State Legislators, Plaintiffs are not seeking further review of the denial of that discovery.

The State Legislators opposed on the grounds of relevance, burden, legislative privilege, and the scheduling order. Dkt. No. 223. As to the burden of an email production, the State Legislators argued the requests were "aimed at no less than **seventy-seven** Legislators and the untold number of staffers" and that "the burden would fall primarily on the legislative staff and specifically the information technology ("IT") department," who would be responsible for collecting the Senators' official email accounts. *Id.* at 15 (emphasis in original). While the State Legislators understood that Plaintiffs had limited their request for emails to those of the three Senators (*id.* at 3 (citing Dkt. No. 207-7)), they asked the Magistrate Judge to disregard that limitation on the ground that "Plaintiffs never 'narrowed' until they filed their Motion." *Id.* at 13. (This apparently refers to the fact that Plaintiffs' limitations were part of an offer of compromise that the State Legislators did not accept. *See id.* at 1, 9, 13.)

The State Legislators' opposition was accompanied by declarations from the Director of the Senate's Legislative Services Office (Dkt. No. 222-9), the Clerk of the House (Dkt. No. 222-10), the Chief Information Office of the Legislative Budget Office (Dkt. No. 222-14), and Senator Burks Hill (Dkt. No. 222-15). The first two declarations counted the number of members of the Committees; the third purported to calculate the time required to collect the emails, on the assumption that each of the 37 search terms would need to be run separately for each of the 77 Committee members (which assumption is false, *see infra*, n.10 and Dkt. No. 226-

7

5); and Senator Burks Hill's affidavit described personal circumstances that would purportedly make it difficult for her to devote time to responding to the subpoenas.

It is likely that the burden of drafting these declarations—during the legislative session—was greater than the burden of the email collection at issue.

The State Defendants joined the State Legislators' objections as to relevance and the scheduling order, but not burden or the legislative privilege.  Dkt. No. 224.

After the motion to compel was fully briefed, the U.S. Supreme Court granted certiorari in the State Defendants' appeal from this Court's permanent injunction regarding the 15-week ban.  *Dobbs* v. *Jackson Women's Health Org.*, 141 S. Ct. 2619 (May 17, 2021).  Soon thereafter, the Court ordered that the motion to compel "shall proceed to a timely resolution," but otherwise stayed the case until the Supreme Court issues its decision.  Dkt. No. 244 (June 9, 2021).  On February 18, 2022, Magistrate Judge Ball issued the Order denying the motion.

## Argument

Upon a party's objection, a district judge should reconsider, modify, or set aside any pretrial order of a magistrate judge that is "clearly erroneous" or "contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *James* v. *Cleveland Sch. Dist.*, 2020 WL 4370608, at *2 (N.D. Miss. July 30, 2020) (internal quotation marks and citation omitted).  "This means that, for questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and review under [Rule 72(b)'s] de novo standard."  *Id.*

"A finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed."  *Verso Paper, LLC* v.

8

*HireRight, Inc.*, 2012 WL 2376046, at *4 (S.D. Miss. June 22, 2012) (Reeves, J.) (quoting *Am. Cancer Soc'y* v. *Cook*, 675 F.3d 524, 528 (5th Cir. 2012)).

I.  **The Order Erroneously Denied Discovery of the Senators' Emails.**

   A.  **The Order Erred by Assessing Discovery that Plaintiffs Did Not Move to Compel.**

The Order makes no factual finding that the email production that Plaintiffs have moved to compel—involving 3 custodians, 77 days, and search terms—would be overbroad, unduly burdensome, or disproportionate. Nor could it. Instead, the Order "finds that the subpoenas *duces tecum* at issue are facially overbroad." Order at 3.[8] The Order's finding of overbreadth (and its related findings of undue burden and disproportionality) based on discovery that Plaintiffs did not move to compel is contrary to law.

That legal error underlies all the Order's relevant findings. The Order discusses the purported burden of an email collection from *77 custodians*—a figure which counts all the Senators on the Senate Health Committee, and all the Representatives on the House Health Committee, in either 2013 or 2019. *Id.* at 4.[9] In addition to those 77 custodians, the Order asserts that additional custodians would be required by the subpoena's inclusion of the legislators' "employees, agents, or representatives" in the definition of "You." *Id.* at 3, 5. The Order therefore concludes that the "subpoenas, therefore, demand production of documents from 77 total legislators," and that "the entire document-production review process must be conducted as to all documents from each of these 'employees, agents, [and] representatives.'" *Id.* at 4, 5.

---

[8]  *See also, e.g.*, Order at 4 ("Based on a plain reading of the subpoenas, they are clearly facially overbroad, and Plaintiffs' motion should be denied on that basis alone."); *id.* at 5 ("[T]he 'Definitions' and 'Instructions' . . . are a significant part of why these subpoenas are so facially overbroad."); *id.* at 6 ("Plaintiffs' proposal simply does not cure the facially overbroad and unduly burdensome nature of these subpoenas.").

[9]  Alternatively, the Order asserts that excluding the 2019 members "only reduces the number of committee-member legislators during the 'Relevant Period' from 75 to 55." *Id.* at 6.

9

The Order's finding that an email collection from 77+ custodians would be burdensome is irrelevant to the question presented by the motion to compel. The relevant burden is "the burden or expense *of the proposed discovery*," Fed. R. Civ. P. 26(b)(1) (emphasis added), and here, Plaintiffs proposed a production of emails from only 3 custodians.[10] That a production from 77 custodians might be burdensome is no reason to deny a production from 3 custodians.

"Generally, modification of a subpoena is preferable to quashing it outright," and a Court should "modify the subpoena to cure any overbreadth." *Wiwa* v. *Royal Dutch Petroleum Co.*, 392 F.3d 812, 818-19 (5th Cir. 2004). In *Wiwa*, for example, the district court had quashed a third-party subpoena in its entirety. *Id.* at 814. The Fifth Circuit held that order was "an abuse of discretion," reversed, and ordered the third party to respond to the subpoena as modified. *Id.* at 815, 821-22. The modifications the Fifth Circuit adopted were substantially those that plaintiff had proposed in a meet-and-confer letter. *Id.* at 821-22.

The Order quotes *Wiwa* for its statement that: "A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." Order at 3 (quoting *Wiwa*, 893 F.3d 818). But the Order fails to address *Wiwa*'s continued discussion, in the paragraph immediately following, quoted above, of how a court should respond to facial overbreadth. *Wiwa* holds that a facially overbroad subpoena should be modified rather than quashed.

In addition to being contrary to *Wiwa*, the rule adopted by the Order—that a reasonable motion can be denied on the ground that the original subpoena was overbroad—is perverse and often impossible to satisfy. As the Advisory Committee Notes from the 2015 amendment of

---

[10] *See* Mot. 15 (referring to Ex. 5 for proposed "custodians," "search terms," and "date range"); Ex. 5 (Dkt. No. 207-7) at 3 (meet-and-confer letter offering to limit email collection to "the senators' @senate.ms.gov email accounts" and "the senators' other email accounts"); Reply at 10 ("[W]hat is actually at issue in this Motion are requests for documents . . . which seek email from only three custodians (the three Senators), not 77.").

Rule 26 acknowledge, parties typically lack sufficient information to account for potential burdens when drafting requests:

> A party requesting discovery, for example, may have little information about the burden or expense of responding. . . . A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination.

Fed. R. Civ. P. 26 advisory committee note. The rule contemplates that "these uncertainties should be addressed and reduced" through the meet-and-confer process or through "conferences with the Court." *Id.* Contrary to the Federal Rules, the rule of decision adopted by the Order gives a proponent of discovery no opportunity to address an objection of burden, and worse, gives the other party no incentive to compromise. Here, the State Legislators never compromised; did not provide details about their email systems prior to motion practice; and never provided (whether during the meet-and-confer process or in opposing the motion) "hit counts" for Plaintiffs' proposed parameters, or their own proposed parameters. The effect of the Order is to reward the State Legislators' obstructionism.

Relatedly, the Order refused to "consider Plaintiffs' proposed changes submitted in their reply brief," citing a rule against new arguments in a reply brief. Order at 6 n.5. But Plaintiffs' further efforts at compromise were not new "arguments." Rather, these further compromises responded to new arguments of burden and purported new evidence first disclosed to Plaintiffs by the State Legislators' opposition brief and exhibits. In any event, the compromises in Plaintiffs' reply brief are related to other (non-email) discovery sought by the motion, not the Senators' emails at issue in this objection. Dkt. No. 226 at 10; *see also* Dkt. No. 226-6.

  **B. The Order Makes No Factual Finding of a Relevant Burden, and the Record Would Not Support Such a Finding.**

Because the Order never addressed the limited email production actually sought by the motion, it made no factual finding regarding the relevant amount of burden. Instead the Order

11

addressed the burden of producing emails from 77+ custodians (which, as noted above, Plaintiffs never sought) or of interviewing all the persons formerly associated with the Committees in order to determine the location of the Committees' hard copy documents and non-email ESI (which is no longer at issue).  Order at 4-6.

The only discussion of burden in the Order that could even arguably apply to a production of emails from three Senators is the following sentence:

> [T]he most time-consuming exercise is not the ESI searches themselves, but rather entire process of reviewing all documents produced by the searches to determine which documents are actually responsive to the subpoena requests, and as for those documents, then determining which documents are protected from disclosure by a privilege or other protection (and preparing a privilege log addressing each such document) and determining whether portions of some documents should be redacted (and if so, making each such redaction on each such document), all of which must be done before production.

Order at 4-5.  That sentence is a general description of the document review process that would apply equally to most document discovery.  There is generally a review for relevance and privilege and (if privilege is asserted) logging and/or redactions.  Merely describing that process does not explain why the email production at issue—which would be limited by custodians, a date range, and search terms—would be burdensome, much less disproportionately so.

This record does not permit a finding that the limited email production sought would be too burdensome.  The State Legislators submitted no evidence as to the number of emails responsive to Plaintiffs' proposed parameters, and thus no evidence as to the number of emails that would actually need to be reviewed.  The State Legislators had the burden of proof on that issue, and simply failed to carry it.[11]  Far from suggesting burden, the record establishes that the

---

[11] *Verso Paper*, 2012 WL 2376046, at *6 ("It is not clear how much time or effort it will take BankPlus—a non-party, the Court recognizes—to comply with the subpoena; it has not submitted a cost or time estimate to the Court.  But that deficiency weighs against BankPlus, since it had the burden to prove an undue burden."); *Dotson* v. *Edmonson*, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017) (holding that "third party objecting to a subpoena on the basis that the subpoena is unduly burdensome bears the burden of showing why discovery

Legislature's Microsoft email systems support "bulk collection" and are "routinely" used for litigation discovery. Dkt. No. 226-5 ¶¶ 5-6. As a result, the three Senators' emails likely could be collected in a matter of minutes. *Id.* ¶ 4-6.[12]

As to the Senators' personal emails, the Order acknowledges that the record does not address the issue of burden. *See* Order at 5 ("[T]he competing affidavits do not address the time necessary for each legislator to search their own personal email accounts or other personal servers and compile responsive documents."). Because the record does not substantiate the objection, and because the State Legislators had the burden of proof, the objection should have been rejected and the production of personal emails ordered.

Nor would creating a privilege log impose an unacceptable burden, as this Court found in *Jackson Mun. Airport Auth.*, 2018 WL 3117020, at *1-2. Indeed, as noted below, the legislative privilege is likely wholly inapplicable in this case because Plaintiffs' federal constitutional claims place the Senators' motives squarely at-issue. *Infra*, pp. 15-17. The legislative privilege is also inapplicable to communications with third parties. *Id.* Any burden of asserting an inapplicable privilege is self-inflicted and cannot justify the Order's denial of discovery.

### C. The Order Failed to Consider Plaintiffs' Need for the Evidence.

The Order's findings of overbreadth and undue and disproportionate burden are also erroneous because the Order entirely fails to address other important factors against which any

---

should be denied," which is a "heavy burden"); *Bounds* v. *Capital Area Family Violence Intervention Center, Inc.*, 314 F.R.D. 214, 220 (M.D. La. 2016) (declining to narrow subpoena where recipient failed to say whether a "preliminary search . . . ha[d] been conducted" and to disclose the "number of potentially responsive emails").

[12] The State Legislators argued that each search term would need to be run separately for each custodian, such that 2,849 searches (37 search terms multiplied by 77 custodians) would be required, which they said would require 262 hours of work by IT staff. Dkt. 223 at 15. The Order does not adopt that argument, for good reason. As explained in an affidavit submitted by Plaintiffs, the Legislature's software allows many search terms and many custodians to be combined into a single query. Dkt. No. 226-5 ¶ 5. And the State Legislators' calculation again rests on the same false premise that Plaintiffs are seeking 77 custodians.

burden on the State Legislators must be weighed, including the "relevance of the information requested" and "the need of the party for the subpoenaed materials." *Wiwa*, 392 F.3d at 818.

The Senators' emails are relevant, and central, to Plaintiffs' claim that the Telemedicine Ban was enacted for the unconstitutional "purpose" of placing a substantial obstacle in the way of women seeking abortion care. *See* Supp. Am. Compl., Dkt. No. 119 ¶ 13. The Supreme Court has repeatedly recognized that legal theory.[13] In adjudicating "purpose" claims regarding abortion restrictions, courts often consider evidence of this type.[14]

For example, Plaintiffs' prior challenge to the constitutionality of Mississippi's "admitting privileges" law included a claim that it was enacted with the "unconstitutional purpose to cause fewer abortions." *Jackson Women's Health Organization* v. *Currier,* Compl., No. 3:12-cv-00436-DPJ-FKB (S.D. Miss.), ECF 1, at ¶ 1. As part of discovery in that case, Plaintiffs sought and received documents from a legislator, including emails. Dkt. No. 207-1 ¶¶ 8–10. The Court's order enjoining the law emphasized that Plaintiffs "offered evidence—including quotes from significant legislative and executive officers—that the Act's purpose is to eliminate abortions in Mississippi. They likewise submitted evidence that no safety or health concerns motivated its passage. This evidence has not yet been rebutted." Order Granting TRO, 3:12-cv-00436-DPJ-FKB, ECF 17, at 3.

---

[13] *Casey*, 505 U.S. at 878; *Whole Woman's Health* v. *Hellerstedt*, 136 S. Ct. 2292, 2309 (2016); *June Medical Services, L.L.C.* v. *Russo*, 140 S. Ct. 2103, 2120 (2020); *id.* at 2135 (Roberts, J., concurring).

[14] *See, e.g.*, *June Med. Servs. LLC* v. *Kliebert*, 158 F. Supp. 3d 473, 502 (M.D. La. 2016) (considering emails between third party and legislative sponsor); *Planned Parenthood of Wisconsin, Inc.* v. *Van Hollen,* 94 F. Supp. 3d 949, 955 (W.D. Wis. 2015) (considering evidence that law was enacted despite "no member of the Wisconsin legislature or legislative aide consult[ing] with or s[eeking] the advice of the Medical Examining Board as to any medical need or benefit"); *Planned Parenthood of Greater Iowa Inc.* v. *Atchison*, 126 F.3d 1042, 1049 (8th Cir. 1997) (considering evidence of "the state authorities' response to these lobbying efforts," which "suggest that subjecting the plaintiff to [restriction] had the intended effect of impeding or preventing access to abortions").

Similar discovery from state legislators is often ordered in voting rights litigation[15] and Equal Protection litigation.[16] Evidence of legislative purpose is no less important in the abortion context. *See Okpalobi* v. *Foster*, 190 F.3d 337, 354 (5th Cir. 1999) (noting that "abortion law is not the only realm of jurisprudence in which courts are required to question whether a measure has been adopted for an impermissible purpose" and citing voting rights cases), *superseded on other grounds*, 244 F.3d 405 (5th Cir. 2001) (en banc).

## II. The State Legislators' Alternative Arguments Do Not Support the Order.

The Order did not adopt the State Legislators' alternative arguments concerning relevance (discussed above, pp. 13-15), the legislative privilege, and the scheduling order. *See* Order at 3 ("[I]t is unnecessary to address the Senators' and the Committees' other objections or contentions."). These alternative arguments are meritless, and do not support the Order.

---

[15] *See, e.g.*, *Benisek* v. *Lamone*, 241 F. Supp. 3d 566, 576-77 (D. Md. 2017) (ordering production of conversations between legislators because they were most probative evidence of whether an impermissible purpose may have "infected the legislative process"); *Nashville Student Organizing Committee* v. *Hargett,* 123 F. Supp. 3d 967, 971 (M.D. Tenn. 2015) (ordering depositions of state legislators to probe purpose of Tennessee Voter ID law); *City of Greensboro* v. *Guilford Cty. Bd. of Elections*, 2016 WL 11660626, at *5 (M.D.N.C. Dec. 20, 2016) (ordering production of legislative documents reflecting illicit racial considerations in redistricting process); *Bethune-Hill* v. *Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 337, 342-43 (E.D. Va. 2015) (ordering state legislators to produce documents in Equal Protection case because allegation that "discriminatory purpose has been a motivating factor" weighs in favor of disclosure); *Veasey* v. *Perry*, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014) (disclosure of internal legislative documents necessary because it is unlikely that an official would "announce on the record" an impermissible purposes); *Perez* v. *Perry*, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) ("where important federal interests are at stake," law favors disclosure of legislative documents).

[16] *See, e.g.*, *N. Pacifica, LLC* v. *City of Pacifica*, 274 F. Supp. 2d 1118, 1124 (N.D. Cal. 2003) (ordering depositions of councilmembers in plaintiff developer's rational basis Equal Protection claim); *Harrison* v. *Shanahan*, No. 118CV641LMBIDD, 2019 WL 2216474, at *7 (E.D. Va. May 22, 2019) ("documents sought by plaintiffs could undercut both stated and conceivable justifications for the military policies at issue in this lawsuit and are thus clearly relevant to plaintiffs' claims"); *End Ventures, LLC* v. *Inc. Vill. of Sag Harbor*, No. CV 09-3967 LDW AKT, 2011 WL 6337708, at *4-5 (E.D.N.Y. Dec. 19, 2011) (ordering discovery from legislators over legislative privilege objection because the reasoning behind the legislative action was "itself . . . the subject of the litigation").

### A. The Legislative Privilege Does Not Bar This Discovery.

The State Legislators interposed the blanket objection that all of their documents are protected from discovery by the legislative privilege. Dkt. No. 223 at 25-29. That objection was baseless for several reasons.

*First*, under Local Rule 26(e), the State Legislators "must submit a privilege log" before asserting a claim of privilege. The information required by that Rule is necessary to adjudicate the State Legislators' claim of privilege. In an attempt to evade the Rule, the State Legislators argued that the legislative privilege is absolute. Dkt. No. 223 at 26, 28. The Rule has no such exception, and in any event, the argument is foreclosed by *Jefferson Community Health Care Centers, Inc.* v. *Jefferson Parish Government*, 849 F.3d 615, 624 (5th Cir. 2017), and by this Court's own decision in *Jackson Mun. Airport Auth.,* 2018 WL 3117020, at *1-2. The legislative privilege is only a "qualified" privilege, which must yield to important federal interests, such as the interest in vindicating a federal constitutional right. *Id.* (citing *Jefferson Cmty. Health Care Centers*, 849 F.3d at 624).

While the issue is not ripe for decision without a log, the applicable five-factor test is likely to strongly favor disclosure here because, among other reasons, the relevance of purpose is settled; no public legislative history is available; Plaintiffs' claim is serious; the Senators had a central role in passing the Telemedicine Ban; and the Senators face no chilling personal liability. *See* Dkt. No. 208 at 17-18; Dkt. No. 226 at 13-14.

*Second*, communications between the Senators and third parties (such as lobbyists) categorically will not be protected by legislative privilege.[17]

---

[17] *Jackson Mun. Airport Auth.*, 2017 WL 6520967, at *7; *see also Perez* v. *Perry*, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (communications "with any outsider" "waive[]" the privilege); *Bethune-Hill*, 114 F. Supp. 3d at 343 ("no one could seriously claim privilege" over communications between legislators and third parties).

16

*Third*, the existing protective order in the case (Dkt. No. 104) provides sufficient protection at the discovery stage, even if the Court is not inclined to "fully pierce the legislative privilege" with public disclosure. *Veasey*, 2014 WL 1340077 at *3-4.

### B. A Limited Extension of the Discovery Deadline Is Warranted.

The subpoenas were served in January 2021 (Dkt. No. 226-4), and the motion to compel was filed on March 8, 2021 (Dkt. No. 207), prior to the then discovery deadline of March 17, 2021. *See* Nov. 13, 2020 Text-only Order. The State Legislators and the State Defendants objected that, under Local Rule 7(b)(2)(C), this motion was required to be brought in time for it to be decided and "effectuated" prior to the deadline. Dkt. No. 223 at 29-31; Dkt. No. 224 at 4.[18] Plaintiffs requested a limited extension of that deadline for the purpose of allowing the State Legislators to produce this discovery. The Court has the discretion to grant that relief, and it is appropriate under the circumstances here.[19]

The timing objection has been misplaced all along, and in any event, it has been mooted by subsequent events.

The need to subpoena the State Legislators did not become clear until late 2020, and Plaintiffs continued to move with reasonable speed thereafter. Party discovery, and the case as a whole, were of course delayed by the COVID-19 pandemic. Plaintiffs first learned in September 2020, from party discovery, that the Mississippi State Department of Health "had no role in the

---

[18] Neither the State Legislators nor the State Defendants have ever articulated precisely *when* the motion should have been made to comply with that principle. Given that the motion took 347 days to decide, and given the State Legislators' threats to seek an interlocutory appeal of any decision against them, it is far from clear that there was ever any time when this motion would have been timely under their view.

[19] *See* Fed. R. Civ. P. 16(b)(4) (Court has discretion to extend a discovery deadline for "good cause"); *Wiwa*, 392 F.3d at 822 ("It is not uncommon for a district court to admit evidence—even after the discovery deadline— obtained through properly- and timely-served discovery requests."); *736 Bldg. Owner, LLC* v. *Regions Bank*, 2015 WL 13424459, at *1 (S.D. Miss. Dec. 21, 2015) (compelling Rule 30(b)(6) deposition to occur after discovery deadline because it "relates to important issues in this action"); *Curtis* v. *Select Med. Corp.*, 2015 WL 4546258, at *3 (S.D. Miss. July 28, 2015) (compelling interrogatory responses after the discovery deadline).

enactment" of the Telemedicine Ban and thus no information regarding the findings.[20] And Defendants' document productions continued into November 2020. Plaintiffs' decision to pursue party discovery before third-party discovery from politicians was reasonable.[21] The motion was made nine months before the then-scheduled trial date, which was enough time for Plaintiffs to receive the documents before trial.

The State Legislators, as non-parties, had and have no cognizable interest in the case schedule. The State Defendants, for their part, have received, on consent, no fewer than three extensions of the schedule.[22] They failed to demonstrate any prejudice from the limited relief sought, and certainly no prejudice that would justify denying this important discovery.

In any event, the objection is now moot. The case has been stayed since June 2021 as a result of Defendants' appeal to the Supreme Court. As the Court has recognized, the Supreme Court's decision could impact ongoing proceedings in this case. Dkt. No. 244 at 2. In short, the trial date that was the basis of the objection has come and gone, no new schedule has yet been set, and there remains plenty of time for Plaintiffs to receive this important discovery.

## Conclusion

The Order should be modified to compel the State Legislators to produce emails for which the three Senators are custodians. Their review should include both official and personal emails and the search terms and date range set forth in Dkt. No. 207-7 at 9-10.

---

[20] Dobbs Declaration, ¶ 13; *see also* Cleveland Dep. 199:12–200:5 (explaining that he had no knowledge of how the Telemedicine Ban was developed and that, to his knowledge, BML was not involved).

[21] For example, in *Jackson Municipal Airport Authority*, the motion to extend the discovery deadline was filed just three days before that deadline, and the motion to compel third-party discovery from the politicians was filed after the original deadline. *See Jackson Mun. Airport Auth*. v. *Bryant*, 2017 U.S. Dist. LEXIS 106609, *8 (S.D. Miss. July 11, 2017); *Jackson Mun. Airport Auth*. v. *Bryant,* No. 3:16-cv-246-CWR-FKB (S.D. Miss. Jan. 15. 2019) (text-only order further extending the discovery deadline).

[22] The discovery deadline was extended on three occasions: from May 29, 2020 to July 24, 2020 (*see* text-only order (March 19, 2020)); from July 24, 2020 to December 17, 2020 (*see* text-only order (May 18, 2020)); and from December 17, 2020 to March 17, 2021 (*see* text-only order (November 13, 2020)).

Respectfully submitted this 4th day of March, 2022.

|  |  |
|---|---|
| Hillary Schneller*<br>Julie Rikelman*<br>Center for Reproductive Rights<br>199 Water Street, 22nd Floor<br>New York, NY 10038<br>(917) 637-3777 (Phone)<br>(917) 637-3666 (Fax)<br>jrikelman@reprorights.org<br>hschneller@reprorights.org<br>*Pro Hac Vice<br><br>Robert B. McDuff, MS Bar # 2532<br>767 North Congress Street<br>Jackson, MS 39202<br>(601) 969-0802 (Phone)<br>(601) 969-0804 (Fax)<br>rbm@mcdufflaw.com | /s/ Shane D. Avidan<br>Claudia Hammerman*<br>Alexia D. Korberg*<br>Aaron S. Delaney*<br>Caitlin Grusauskas*<br>Shane D. Avidan*<br>Paul, Weiss, Rifkind, Wharton &<br>  Garrison, LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>(212) 373-3000 (Phone)<br>(212) 492-0364 (Fax)<br>chammerman@paulweiss.com<br>akorberg@paulweiss.com<br>adelaney@paulweiss.com<br>cgrusauskas@paulweiss.com<br>savidan@paulweiss.com<br>*Pro Hac Vice |

*Counsel for Plaintiffs*

## Certificate of Service

I HEREBY CERTIFY that on this 4th day of March, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                          */s/ Shane D. Avidan*
                                                          Shane D. Avidan