**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **JACKSON WOMEN'S HEALTH ORGANIZATION, on behalf of itself and its patients; SACHEEN CARR-ELLIS, on behalf of herself and her patients** | **PLAINTIFFS** |
| **VS.** | **CIVIL ACTION NO. 3:18-cv-171-CWR-FKB** |
| **THOMAS E. DOBBS, M.D., M.H.P., in his official capacity as State Health Officer of the Mississippi Department of Health, et al.** | **DEFENDANTS** |

---

### THE LEGISLATORS' RESPONSE TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE BALL'S ORDER DENYING MOTION TO COMPEL

---

Senators Chris McDaniel, Angela Burks Hill, and Joey Fillingane (the "Senators"), Andrew Ketchings in his capacity as the House Clerk on behalf of the Mississippi House Public Health and Human Services Committee, and Buck Clarke in his capacity as the Senate Secretary and Amanda Frusha in her capacity as the Senate Clerk on behalf of the Mississippi Senate Public Health and Welfare Committee (the "Committees" and, collectively, the "Legislators") file their Response to Plaintiffs' Objection [Dkt. 252] to Magistrate Judge Ball's Order denying Plaintiffs' Motion to Compel State Legislators to Comply with Subpoenas *Duces Tecum* ("Subpoenas") and for a Limited Extension of the Discovery Deadline [Dkt. 250].

1

## INTRODUCTION

It is fundamentally improper, and contrary to the law and facts, for Plaintiffs to argue that Magistrate Judge Ball committed legal error in not "compel[ling] a production of emails from 3 custodians" when Plaintiffs presented that proposed limitation to their six Subpoenas for the first time in this Objection. To be clear, Plaintiffs actually moved Judge Ball "for an Order compelling the non-party State Legislators [three Senators and two Committees] *to comply with the subpoenas duces tecum* issued and served upon them by Plaintiffs in this matter." [Dkt. 207] at 1–2 (emphasis added). Those six Subpoenas sought far more than three individuals' emails concerning one law. The six Subpoenas sought, among other things:  (1) "all Documents presented to or considered" by the Legislators "related to abortion or women's reproductive health;" and (2) "all Documents" related to "drafting, revision, or passage of" and (3) "all Documents reflecting Communications" between the Legislators and anyone else "concerning" 2013 S.B. 2795 ("the Telemedicine Law"), 2019 S.B. 2116 (the "Heartbeat Bill"), and "any other proposed legislation involving abortion" from the 2013 and 2019 legislative sessions. In short, these improper Subpoenas sought all documents and communications in any way related to abortion legislation generally. And the *six* Subpoenas did not seek documents from three people. As Judge Ball correctly found, based on their Definitions, "[t]he [S]ubpoenas … demand production of documents from 77 total legislators" and each of the legislators' "employees, agents, or representatives." [Dkt. 250] at 3-5.

Plaintiffs have repeatedly conceded that the Subpoenas are substantially overbroad and provided the Legislators, Judge Ball, and now this Court with a moving target as to what documents they seek and from whom. Far from committing "legal error," Judge Ball bent over backwards to analyze in detail each of Plaintiffs' proposed limitations, each time finding that Plaintiffs' requests remained "facially overbroad." As explained by Judge Ball, "[i]n their motion Plaintiffs propose[d] that the Court revise their [S]ubpoenas and limit them" to the Telemedicine

Law, but "this limitation only reduces the number of committee-member legislators during the 'Relevant Period' from 75 to 55, the number of total legislators to 57." [Dkt. 250] at 5–6. As Judge Ball recognized, "[a]pparently realizing that the subpoenas are facially overbroad even with the limitation proposed in their motion, Plaintiffs filed a reply brief in which they attempt to change the subpoenas again to something different and more limited." *Id.* at 6 n.5. The Court should not consider the arguments raised for the first time in Plaintiffs' reply brief, but, even if it could, Judge Ball did not commit clear error in finding that "Plaintiffs' proposals in their reply are [still] vague, confusing, and still overbroad." *Id.*

Now, Plaintiffs concede that the six Subpoenas and the proposed limitations in their motion and then in their reply brief were facially overbroad, and they advance yet another new discovery request in this Objection. They ask this Court to rule that Judge Ball committed "legal error" by not compelling a production that was never before the Court. Especially considering the "highly deferential" clearly erroneous standard, Judge Ball cannot be said to have committed a clear error in denying relief that was never requested by Plaintiffs. And Judge Ball did not commit any clear mistake in his comprehensive finding that the six Subpoenas, and each of Plaintiffs' proposed limitations, were substantially facially overbroad.

Moreover, even if Judge Ball committed clear error in finding the Subpoenas and limitations were substantially overbroad (which he did not), this Court can affirm the Order for additional reasons upon which Judge Ball did not rely, each of which was sufficient by itself to deny the motion. Plaintiffs appear to have conceded their motion to compel was untimely under Local Rule 7(b)(2)(B) because they filed it nine days before the discovery deadline, and Plaintiffs have not met their burden of showing "good cause" to extend the deadline for the limited purpose of allowing the Legislators to respond to the Subpoenas. Finally, any potentially relevant documents Plaintiffs seek—those pertaining to the subjective motivations of the individual

Legislators—would all be protected from disclosure by the legislative privilege. For any and all of these reasons, Judge Ball's well-reasoned Order should be affirmed.

## FACTS

This discovery dispute concerns three Notices of Deposition and six Subpoenas *Duces Tecum* issued to three sitting Mississippi Senators and three representatives of the House Public Health and Human Services Committee and Senate Public Health and Welfare Committee. [Dkt. 222-1, 222-2, 222-3, 222-4, 222-5]. The Subpoenas require production of broad categories of documents, electronically stored information, and communications in the possession of no less than 77 individual legislators and their staffs pertaining to proposed and enacted legislation "related to abortion or women's reproductive rights" for multiple years spanning back to 2013. *Id.* at 11. The Subpoenas generally seek production of, among other things:  (1) "all Documents provided to or considered" by the Senators and the Committees (as broadly defined in the subpoenas) "related to abortion or women's reproductive health;" (2) "all Documents reflecting the drafting and revision process" for abortion legislation enacted in 2013 and 2019 "and any other proposed legislation involving abortion from" those years; and (3) "all Documents reflecting Communications between" the Senators and Committees and six broad categories of persons "concerning" the abortion legislation enacted in 2013 and 2019 "and any other proposed legislation involving abortion from" those years. *Id.* From the Committees, the Subpoenas also request (4) "all Documents reflecting comments or assessments by the [Committees] related to [their] review of legislation concerning abortion." [Dkt. 222-4, 222-5] at 11.

As discussed thoroughly in Judge Ball's Order, the sweeping scope of the Subpoenas becomes clearer upon closer review. Among other things, although the Subpoenas purport to limit the relevant "Communications" to six categories of individuals, a review of those categories shows that Plaintiffs are seeking all communications between the Senators and Committees and *any*

public or private individuals and entities. *See id.* at 9 and 11 (listing among others all governmental entities, individuals "running for or holding public office," and "Non-Governmental Third Parties" which is defined to include "any third party that is not a governmental entity or agency").[1] As Judge Ball correctly found, the "Definitions" and "Instructions" in the Subpoenas "are a significant part of why these subpoenas are so facially overbroad." [Dkt. 250] at 5. For the Senators, the term "You" is defined as the Senators and any of their "employees, agents, or representatives." [Dkt. 222-1] at 8. The term "Committee" includes "not only the Committee itself but the individual legislators who were members of the [Committee] … and Mississippi state employees, clerks, agents or representatives staffed to or tasked with working with the [Committee]." [Dkt. 222-4] at 8.[2] There were 23 legislators on the Senate Committee for the 2013 and 2019 sessions not including Senators McDaniel and Hill, [Dkt. 222-9], and 52 legislators on the House Committee for those years, [Dkt. 222-10]. Therefore, the Committee Subpoenas seek nearly all documents and communications related to women's reproductive health from 75 individual legislators and their staffs. This includes, among other things, electronic communications on the 75 legislators' and staff's government-issued email addresses and personal email addresses. *See* [Dkt. 207-7] at 4.

After receiving notice of the Subpoenas, the Committees and Senators promptly retained

---

[1] The Subpoenas were not sufficiently limited in time either, and some of Plaintiffs' requests are not limited in time at all. *Id.* (Request 1 sought all documents "provided to or considered" by Legislators "related to abortion or women's reproductive health" generally; and Request 2 sought "comments or assessments" to any "legislation concerning abortion" generally).

[2] Additional "Definitions" result in Plaintiffs' seeking any communication or document that has any conceivable relevance from dozens of state officials and employees. Among other things, Plaintiffs defined "Communications" to include all "oral, written, or electronic transmittal of information," *id.* at 7; and Plaintiffs have made clear that they intend for the Senators to search their "senate.ms.gov email accounts" and "other email accounts" for these communications, [Dkt. 207-7] at 4. Plaintiffs seek documents and communications "concerning" abortion legislation, and "concerning" is defined broadly to mean "referring or relating to, and includes, but is not limited to, analyzing, commenting on, comprising, connected with, constituting, substantiating, proving, disproving, containing, contradicting, describing, embodying, establishing, evidencing, memorializing, mentioning, pertaining to, recording, regarding, reflecting, responding to, setting forth, showing, or supporting, directly or indirectly." [Dkt. 222-1] at 7.

counsel and served detailed objections on January 27 and 29, 2021. [Dkt. 222-11, 222-12]. Plaintiffs responded to the Legislators' objections on February 10, 2021. [Dkt. 207-7]. Plaintiffs' assertion in their motion to compel that they "considerably narrowed the Subpoenas" in their objection response is false. [Dkt. 208] at 2. Plaintiffs' merely *proposed* to abandon their requests for documents regarding the Heartbeat Bill *if* the Legislators agreed to otherwise comply with the burdensome Subpoenas and *if* the Senators "would agree to make themselves available for remote depositions." [Dkt. 207-7] at 1–2. At no time did Plaintiffs amend or reissue the Subpoenas. Even if they had "narrowed" the Subpoenas, it was only marginally so, as Judge Ball found in his Order. [Dkt. 250] at 5–6.

On March 8, 2021—nine days before the discovery deadline—Plaintiffs filed a motion requesting "an Order compelling the non-party State Legislators to comply with the subpoenas *duces tecum* issued and served upon them by Plaintiffs in this matter." [Dkt. 207] at 1–2. "In their motion, Plaintiffs propose[d] that the Court revise their subpoenas and limit them to the requests for documents related to [the Telemedicine Law]." [Dkt. 250] at 5. Plaintiffs did not otherwise attempt to alter the Subpoenas, and did "not remove the 'Definitions' and 'Instructions'" from the original Subpoenas. *See id.*

The Legislators filed a response on March 22, 2021, with a lengthy and detailed memorandum and 15 exhibits in support. [Dkt. 222, 223]. Among other exhibits, the Legislators submitted four declarations that demonstrated the substantial burden imposed by the Subpoenas on the Legislators and the Mississippi Legislature. [Dkt. 222-9, 222-10, 222-14, 222-15]. Those declarations showed that the Subpoenas seek, among other things, emails (from personal and government-issued accounts) and hard-copy documents from 77 individual legislators and an untold number of legislative employees, clerks, agents, and representatives. *Id.* Even if Plaintiffs had limited the Subpoenas to the Telemedicine Law, the Subpoenas would seek documents from

57 individual legislators and their staff. *Id.*; *see also* [Dkt. 250] at 6.

"Apparently realizing that the subpoenas [were] facially overbroad even with the limitation proposed in their motion, Plaintiffs filed a reply brief in which they attempt[ed] to change the subpoenas again to something different and more limited." [Dkt. 250] at 6 n.5. But, as Judge Ball explained in his Order, Plaintiffs' reply-brief limitations were insignificant. The only proposed narrowing of the Subpoenas in Plaintiffs' reply brief was that Plaintiffs proposed to "seek only hard copy documents and non-email ESI in the possession, custody, or control of the Committees." [Dkt. 226] at 10. Plaintiffs did not alter their "Definitions," and Plaintiffs continued to seek three broad categories of documents from the Senators and four broad categories of documents from the Committees that essentially called for countless individual legislators and their staffs to search for nearly every document that could have any conceivable relevance to the Telemedicine Law. [Dkt. 226-6] at 3 n.2 (proposed order). Plaintiffs' proposed reply-brief limitation did nothing to account for the burdens imposed in reviewing those documents and producing the same. *See* [Dkt. 250] at 5 (explaining additional burden of review and redaction). Plaintiffs likewise did not request that Judge Ball enforce the Subpoenas to the extent they were not facially overbroad and did not inform Judge Ball which portions of the Subpoenas they believed were most necessary for their case such that Judge Ball could modify the Subpoenas *sua sponte*.

On February 18, 2022, Magistrate Judge Ball entered a detailed and lengthy Order finding that the Subpoenas, as well as Plaintiffs' proposed limitations of the Subpoenas in their motion and reply brief, were facially overbroad. [Dkt. 250]. Because Judge Ball specifically found that the Subpoenas and proposed limitations were substantially, facially overbroad, Judge Ball did not consider the additional bases for denying Plaintiffs' motion raised by the Legislators:  the untimeliness of the Subpoenas and motion to compel, and the applicability of the legislative privilege to all documents sought. *Id.* at 3. Judge Ball likewise found that Plaintiffs' request for a

limited extension of the discovery deadline was moot in light of his ruling that the Legislators would not be compelled to respond to the Subpoenas. *Id.* at 6.

Plaintiffs filed their Objection to Judge Ball's Order on March 4, 2022, asserting erroneously that Judge Ball committed error because their "motion sought to compel [only] a production of emails from 3 custodians (Senators Burks Hill, McDaniel, and Fillingane)." [Dkt. 252] at 2. In addition to being a concession that Judge Ball's overbroad finding was not clearly erroneous, Plaintiffs' accusation on appeal that Judge Ball committed clear error by not ordering relief that was never requested from him is improper and unsupported by law or fact.

## ARGUMENT

I.   **Judge Ball's Order is reviewed for clear error, and after extending the requisite "substantial deference" to Judge Ball, his Order may be overturned only if the Court has a definite and firm conviction that Judge Ball made a mistake.**

"No ruling of a magistrate judge … will be reversed, vacated, or modified on appeal unless the district judge determines that the magistrate judge's findings of fact are clearly erroneous, or that the magistrate judge's ruling is clearly erroneous or contrary to law." L.U. Civ. R. 72(a)(1)(B). "This standard is highly deferential." *Cruz v. Miss. Dep't of Human Servs.*, 9 F. Supp. 3d 668, 688 (S.D. Miss. 2014). "The district court reviewing a 'non-dispositive order issued by a Magistrate Judge' shall give it 'substantial deference' and cannot disturb a factual finding 'unless … the reviewing court is left with a definite and firm conviction that a mistake has been committed.'" *Ill. Cent. R. Co. v. Harried*, 2010 WL 480984, at *1 (S.D. Miss. Feb. 4, 2010) (quotation omitted). A magistrate judge's "finding is clearly erroneous only if it is implausible in the light of the record considered as a whole." *Moore v. Ford Motor Co.*, 755 F.3d 802, 808 n.11 (5th Cir. 2014) (quoting *St. Aubin v. Quarterman*, 470 F.3d 1096, 1101 (5th Cir. 2006)). If the Magistrate's order is "plausible and supportable by the record" it is not clearly erroneous. *Id.* at 808.

Moreover, "[a] magistrate judge is afforded broad discretion with respect to discovery

matters." *Landrum v. Conseco Life Ins. Co.*, 2013 WL 12124055, at *2 (S.D. Miss. June 14, 2013). "[F]or the plaintiff[s] to prevail, [they] must show, not that the magistrate judge could have exercised his discretion and ruled in [their] favor, but rather that [they are] entitled to a ruling in [their] favor as a matter of law." *Id.* "Given the broad discretion afforded the Magistrate Judge in matters of discovery and the applicable standard of review, th[is] Court cannot conclude that" Judge Ball's Order was clearly erroneous. *Wachob Leasing Co., Inc. v. Gulfport Aviation Partners, LLC*, 2016 WL 10537556, at *9 (S.D. Miss. Oct. 18, 2016).

## II.    Judge Ball committed no clear or legal error in denying Plaintiffs' motion to compel.

### a.    The new arguments Plaintiffs are making in their Objection were not raised to Judge Ball and, therefore, may not be considered by this Court.

Plaintiffs' Objection to Judge Ball's order rests on the fundamentally flawed argument that hypothetical subpoenas that only sought "production of emails from 3 custodians" would not have been facially overbroad. That is not what the Subpoenas sought, Plaintiffs offer no evidence they suggested this limitation in the meet-and-confer process, and it is undisputed they did not suggest such a limitation in their motion or reply brief. Plaintiffs' *six* Subpoenas, even as limited in their motion and reply brief, sought substantially more than that. This is a new argument raised for the first time on appeal. Plaintiffs' new argument is nothing more than a concession that the Subpoenas and the other prior requests were, in fact, facially overbroad, as Judge Ball correctly ruled. This Court may not consider Plaintiffs' new argument for the first time on appeal. For this reason alone, Plaintiffs' Objection should be overruled.

When reviewing a party's "attempt[] to rectify" an untenable position raised for the first time in their "objections to the Magistrate Judge's Order," this Court applies the well-settled rule that "issues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge." *Sims v. Denmark*, 2014 WL 3573663, at *2 (S.D. Miss. July 12, 2014)

(quoting *Finley v. Johnson*, 243 F.3d 215, 219 n.3 (5th Cir. 2001)). When reviewing a "non-dispositive order subject to Rule 72(a) clear error review," the district court may *not* "consider evidence presented for the first time in a party's objection to the magistrate judge's" ruling. *Moore*, 755 F.3d at 808. This Court regularly rules that it cannot consider on clearly-erroneous review issues, evidence, and arguments that were not originally presented to the Magistrate Judge. *See, e.g., Readus v. Taylor*, 2020 WL 1271581, at *4 (S.D. Miss. Mar. 17, 2020).[3] In short, the "Magistrate Judge could not have erred in his ruling based on [new] arguments [when Plaintiffs] never submitted [those] arguments to the Magistrate." *Sims*, 2014 WL 2573663, at *2.

Here, Plaintiffs assert two new arguments, neither of which were presented to Judge Ball. First, Plaintiffs argue that Judge Ball committed "legal error" by not compelling production of "emails" from "3 custodians." [Dkt. 252] at 9. Plaintiffs never proposed to limit their Subpoenas to email correspondence of three individuals. Plaintiffs moved to compel the *six* Subpoenas, which sought three and four broad categories of documents and communications from more than 77 custodians and an untold number of staff. In their motion, Plaintiffs proposed limiting their Subpoenas to the 2013 Telemedicine Law, but as Judge Ball correctly found, "Plaintiffs' proposal simply does not cure the facially overbroad and unduly burdensome nature of these subpoenas." [Dkt. 250] at 6. Next, in their reply brief, Plaintiffs "attempt[ed] to change the subpoenas again to something different and more limited." *Id.* But, the concessions in the reply brief abandoned only Plaintiffs' requests for email correspondence from the Committees, nothing else. *Id.* at 6 n.5 (citing [Dkt. 226] at 10). Plaintiffs are now arguing on appeal that producing only email correspondence

_____

[3] *See also Field v. Corrections Corp. of Am. Inc.*, 364 F. App'x 927, 929 n.1 (5th Cir. 2010) (same); *Stern v. McMillin*, 2010 WL 3827943, at *3 (S.D. Miss. Sept. 24, 2010) (same); *Johnson v. Morris*, 2021 WL 3173604, at *4 (S.D. Miss. July 27, 2021) (same); *Traylor v. United States*, 2021 WL 5919023, at *1 (S.D. Miss. Dec. 15, 2021) (same); *Mhoon v. Centurion of Miss., LLC*, 2020 WL 903004, at *2 (S.D. Miss. Feb. 25, 2020) (same)); *Holden v. Reiser*, 2022 WL 731525, at *1 (S.D. Miss. Mar. 10, 2022).

of three individuals would not be unduly burdensome. However, as this Court has repeatedly ruled, "[t]he Magistrate Judge could not have erred in his ruling based on P[laintiffs'] arguments because P[laintiffs] never submitted [those] arguments to the Magistrate." *Sims*, 2014 WL 3573663, at *2.

Second, Plaintiffs argue for the first time on appeal that Judge Ball erred by not rewriting and limiting the Subpoenas himself after finding the Subpoenas were facially overbroad. [Dkt. 252] at 10. Again, Plaintiffs never requested that relief from Judge Ball. Plaintiffs argued in their opening brief only that the Subpoenas were not unduly burdensome. [Dkt. 208] at 14–16. They argued in their reply brief that the Subpoenas imposed "no substantial burden" on the Legislators. [Dkt. 226] at 9–11. At no time did Plaintiffs argue, or submit any authority for the proposition, that Judge Ball should himself create new, more limited Subpoenas for the Plaintiffs. Again, because this issue was "raised for the first time in [Plaintiffs'] objection," it is "not properly before the district judge." *Finley*, 243 F.3d at 219 n.3. In this review for clear error, this Court should not consider either whether the Plaintiffs' new proposed "email production" would create an undue burden or whether Judge Ball should have drafted new Subpoenas *sua sponte*.

### b. Judge Ball committed no legal error in refusing to draft new subpoenas for the Plaintiffs out of whole cloth.

Even if this Court considers whether Judge Ball committed error in refusing to draft new Subpoenas for the Plaintiffs, Plaintiffs' argument is legally incorrect. Citing only *Wiwa*, Plaintiffs argue that Judge Ball committed legal error by refusing to re-write the Subpoenas. [Dkt. 252] at 10 (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818–19 (5th Cir. 2004)). Plaintiffs' argument is directly foreclosed by Fifth Circuit precedent:  "Though modification of an overbroad subpoena might be preferable to quashing, *courts are not required to use that lesser remedy first*." *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) (emphasis added). "The choice to quash or modify is discretionary." *Id.* at n.4.

The Fifth Circuit in *Wiwa* did not hold that a Court "*should* 'modify the subpoena to cure any overbreadth,'" [Dkt. 252] at 3, 10, and it did not hold that the district court abused its discretion in failing to modify a subpoena. *Wiwa*, 392 F.3d at 818–19. Instead, the Fifth Circuit in *Wiwa* held that "the district court abused its discretion when it quashed the subpoena and denied the motion to compel outright *without giving any reasons whatsoever*." *Id.* at 819 (emphasis added). Consistent with *Wiwa*, Judge Ball assigned reasons for his ruling in detail. [Dkt. 250]. Plaintiffs cite to no case that requires a district court to modify, rather than reject outright, a facially overbroad subpoena, and, as stated, the Fifth Circuit holds otherwise. *Tiberi*, 40 F.3d at 112. The Fifth Circuit has repeatedly held that it is "not an abuse of discretion" to quash, rather than modify, an overbroad subpoena. *See, e.g., United States v. Loe*, 248 F.3d 449, 446 (5th Cir. 2001).

Although Courts state that modification of an overbroad subpoena may be appropriate in certain circumstances, those same courts reason that in some cases modification is improper. *See, e.g., Pratt v. PharmNet, Inc.*, 2005 WL 8163159, at *3 (N.D. Miss. Oct. 19, 2005) (citing *Wiwa*, 392 F.3d at 818). "[A]n overgenerous approach [to modification] would negate the protection of subpoenaed entities under the rules of civil procedure; *the circumstances must present the court with the ability via proper underlying facts to so amend the subpoena*." *Id.* (emphasis added).[4] In other words, in order for the Court to modify rather than quash a subpoena the requesting party must provide the Court with a properly limited explanation of what documents the requesting party believes are most important. Although Plaintiffs are now apparently claiming that the essential

---

[4] *See also Peterson v. Sam's East, Inc.*, 2008 WL 11334108, at *1 (W.D. Tex. Jan. 15, 2008) (quashing subpoena in full where motion did not "identify[] any narrowing criteria"); *Donald v. Outlaw*, 2019 WL 3562158, at *4–5 (N.D. Ind. Aug. 6, 2019) (where plaintiff "did not specifically mention any possible modifications" to the subpoena "prior to immediately before filing his Reply," the Court ruled that "[w]ith these facts, the Court will not simply parse the subpoena and enforce the production of some smaller subset of information than that which the entire subpoena seeks"); *J. White, L.C. v. Wiseman*, 2020 WL 3507408, at *2 (D. Utah June 29, 2020) (declining to exercise discretion to modify overly broad subpoena "due to the sheer overreach of [the subpoena's] requests").

documents they are seeking are the emails from the three Senators, they never made that argument to Judge Ball such that Judge Ball could effectively modify the *six* Subpoenas. As discussed above, the six Subpoenas, even as narrowed in the motion and reply, sought three and four broad categories of documents that run the gamut of abortion legislation. Email communications are just one subpart of one of those broad categories, and Plaintiffs never requested that Judge Ball limit the Subpoenas to only communications or to only the Senators' communications. Thus, even if the Court considers this issue (which it is not required to do), Judge Ball clearly did not abuse his discretion in not creating a new subpoena out of whole cloth that created new limitations that Plaintiffs never requested.

### c. Judge Ball did not commit error by allegedly failing to consider proposed limitations in Plaintiffs' opening and reply brief.

Plaintiffs' argument that Judge Ball erred in "refus[ing] to 'consider Plaintiffs' proposed changes submitted in their reply brief'" and opening brief is legally and factually incorrect. [Dkt. 252] at 11. The Court did not commit error in first considering the breadth of the Subpoena themselves, and, regardless, the Court went on to analyze in detail the "proposed changes" to the Subpoena in Plaintiffs' opening brief and reply brief, specifically finding that each of those proposed changes was facially overbroad.

Judge Ball did not commit any error, legal or otherwise, in first considering the burden imposed on the Legislators in responding to the Subpoenas that Plaintiffs served. Indeed, Plaintiffs filed a motion to compel "the non-party State Legislators to comply with the subpoenas *duces tecum* issued and served upon them by Plaintiffs in this matter." [Dkt. 207] at 2–3.[5] In their Objection, Plaintiffs cite no authority that supports their theory that the Court should not consider

---

[5] *Id.* at 3 ("Plaintiffs request that this … Court enter an Order compelling the State Legislators to produce the documents requested by the Subpoenas").

the language of the Subpoenas, and that language was clearly relevant and dispositive here.[6]

More importantly, however, Judge Ball *did* "consider Plaintiffs' proposed changes submitted in their" opening brief. Judge Ball went above and beyond to analyze each of Plaintiffs' proposed limitations, each time finding that the Subpoenas as narrowed were still facially overbroad. Among other things, Judge Ball expressly reasoned that "Plaintiffs' proposed limitation d[id] not remove the 'Definitions' and 'Instructions' which," as Judge Ball articulated in detail, were "a significant part of why these subpoenas are so facially overbroad." [Dkt. 250] at 5.[7] Judge Ball found that Plaintiffs' proposed narrowing of the Subpoenas in their opening brief only reduced the number of Legislators subject to the Subpoenas "from 75 to 55, and therefore, the number of total legislators to 57," and this does not include each of the 57 individual legislators' staff, who would also be required to search and compile responsive documents. *Id.* at 6 (citing Dkt. 222-9, 222–10). In light of Judge Ball's express finding that "Plaintiffs' proposal simply does not cure the facially overbroad and unduly burdensome nature of the subpoenas," Plaintiffs' argument on appeal that Judge Ball committed legal error by not considering the proposed limitation in their motion makes little sense.

Likewise, Judge Ball committed no error in stating that he would "not consider Plaintiffs' proposed changes [to the Subpoenas] submitted in their reply brief," and, as discussed below, Judge Ball considered Plaintiffs' late-submitted additional limitations in any case. [Dkt. 250]

---

[6] Plaintiffs cite only the general scope of discovery in Rule 26(b)(1) for the proposition that the relevant issue is "whether the burden or expense of the *proposed* discovery outweighs its likely benefit." [Dkt. 252] at 10. But this dispute is controlled by Rule 45, which states that the Court "*must* quash … *a subpoena* that … subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3). And the "proposed discovery" was the Subpoenas Plaintiffs moved to compel responses to.

[7] Along that line, Judge Ball's extensive analysis regarding the facially overbroad nature of the Subpoenas applies equally to Plaintiffs' concessions in their motion and reply brief. *See* [Dkt. 250] at 3–6. First, as Judge Ball reasoned, "a significant part of why the[] [S]ubpoenas are so facially overbroad" is the "Definitions" and "Instructions," neither of which Plaintiffs attempted to limit in either their motion or their reply brief. *Id.* at 5–6. Second, Judge Ball's analysis regarding locating all staff, compiling all documents, and reviewing those documents applies despite the limitations. *Id.* at 4–5.

at 6 n.5. Plaintiffs offer no authority for the proposition that Judge Ball erred in relying on the well-settled rule that "[i]t is the practice of … the district courts to refuse to consider arguments raised for the first time in reply briefs." *Id.* (quoting *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008)). Instead, Plaintiffs attempt to argue that their reply-brief concessions, and apparently their concession in their Objection, are all part of the "meet-and-confer process." [Dkt. 252] at 11. Plaintiffs' reference to the meet-and-confer requirement is a red-herring. The meet-and-confer requirement is imposed on the parties "*[b]efore* service of a discovery motion." L.U. Civ. R. 37(a). The Legislators served their detailed objections to Plaintiffs on January 27 and 29, 2021, [Dkt. 222-11, 222-12]; the parties did meet and confer; and Judge Ball held a telephonic conference on February 26, 2021 where he informed Plaintiffs that their requests were substantially overbroad and that his preference was not to draft more limited subpoenas for the parties, *see* [Minute Entry Feb. 26, 2021]. Only *after* Plaintiffs filed their motion did they backtrack in their reply and Objection and concede that their previous demands for documents were substantially overbroad.[8]

Finally, even though Judge Ball was entitled under the well-settled rule to reject any new arguments raised in Plaintiffs' reply brief, Judge Ball provided a lengthy analysis of Plaintiffs' "attempt to change the subpoenas again to something different and more limited" in their reply brief. [Dkt. 250] at 6 n.5. Judge Ball analyzed in detail Plaintiffs' limited narrowing of their Subpoenas in their reply brief and correctly found that the "Plaintiffs' proposals in their reply

---

[8] Plaintiffs' repeated concessions that their Subpoenas were overbroad after they filed their motion show that, contrary to their assertions, it was not "impossible" for them to draft more targeted subpoenas in the first instance or during the meet-and-confer process. [Dkt. 252] at 3. Counsel for the Legislators explained to Plaintiffs' counsel from the beginning how these Subpoenas were overbroad and Plaintiffs refused to correct them. Plaintiffs are now, for the first time on appeal, asserting that a request for emails from three individuals would not be unduly burdensome. It certainly would have been "possible" and Plaintiffs could have "easily" drafted subpoenas "tailored to the needs articulated in" their Objection sometime before now. *Pratt*, 2005 WL 8163159, at *3.

[were] vague, confusing, and still overbroad." *Id.* Again, Judge Ball's express finding in this regard conclusively establishes that he cannot be held in error for allegedly failing to consider Plaintiffs' proposed limitations.

      **d. Judge Ball's finding that the Subpoenas, and each of Plaintiffs' proposed limitations, were facially overbroad and therefore unduly burdensome was not clearly erroneous.**

Whether looking at the Subpoenas or Plaintiffs' concessions in their opening and reply briefs, Judge Ball's findings that the requested discovery was facially overbroad was not clearly erroneous. Under the "highly deferential" clearly-erroneous standard, this Court should overturn Judge Ball's discovery order only if the Court has a "definite and firm conviction that a mistake has been committed." *Ill. Cent. R. Co.*, 2010 WL 480984, at *1. Judge Ball's Order is clearly "plausible and supportable by the record," *Moore*, 755 F.3d at 808, especially considering "the broad discretion afforded the Magistrate Judge in matters of discovery," *Wachob Leasing*, 2016 WL 10537556, at *9.

Judge Ball's lengthy and well-reasoned Order is supported by the plain-language of the Subpoenas as well as the substantial evidence submitted by the Legislators. In their Objection, Plaintiffs do not challenge or otherwise dispute the heart of Judge Ball's analysis: "Aside from other ways the subpoenas are overbroad, they are clearly overbroad when considering the 'Definitions' and 'Instructions' contained in them." [Dkt. 250] at 3. Among other things, Judge Ball was correct and Plaintiffs do not dispute that the Subpoenas' Definitions resulted in the Subpoenas' seeking production of documents from 77 individual legislators and an unknown number of "employees, agents, [] representatives," and "clerks." *Id.* at 4.

A review of Judge Ball's Order shows beyond doubt that he made numerous "factual finding[s] regarding the relevant amount of burden," all of which were not clearly erroneous. [Dkt. 252] at 11. Judge Ball analyzed in detail that sworn declarations showed that "running the

necessary search terms for electronically stored information ('ESI') for each of the 77 legislators on their government-issued email accounts would take approximately 237 hours and that searching and compiling all ESI from the government servers for each of the legislators would require approximately another 18 to 35 hours." [Dkt. 250] at 4 (citing [Dkt. 222-14]). Plaintiffs' attempts to challenge the sworn statements of the Chief Information Officer for the Mississippi Legislative Budget Office fall flat.[9] Judge Ball credited the dispute between the Mississippi's Chief Information Officer and Plaintiffs' counsel's IT employee, but reasoned that

> the most time consuming exercise is not the ESI searches themselves, but rather the entire process of reviewing all documents produced by the searches to determine which documents are actually responsive to the subpoena requests, and as for those documents, then determining which documents are protected from disclosure by a privilege or other protection (and preparing a privilege log addressing each such document) and determining whether portions of some documents should be redacted (and if so, making each such redaction on each such document), all of which must be done before production.

*Id.* at 5. Moreover, Judge Ball correctly reasoned that the "competing affidavits" likewise do not address additional hours of searches "necessary for each legislator to search their own personal email accounts or other personal servers and compile responsive documents, or the time necessary to search for and compile all responsive hard-copy documents for each of the legislators." *Id.* As stated in Joe Sullivan's declaration, "[t]he IT Department does not have access to each of the individual Legislators' personal email accounts" or "hard copy documents" so Sullivan's time estimates do not include those searches. [Dkt. 222-14] at ¶13. Nor could the IT Department or the

---

[9] The self-serving declaration of Plaintiffs' counsel's IT Employee, Yakov Zylbershlag, is insufficient to overcome the sworn statement from Joe Sullivan, the Chief Information Officer for the Mississippi Legislative Budget Office, that "[t]here is no simple way to compile the emails from the individual Legislators' government-issued email accounts." [Dkt. 224-14] at ¶8. Joe Sullivan stated under oath that his "IT staff will be required to run each of the 37 search terms on each of the separate email accounts." *Id.* Plaintiffs' counsel's IT Employee disagrees, but he is not familiar with the Legislators' government-email system, which has additional security protocols designed to restrict access to sensitive information. *See id.* at ¶8 ("Only the IT Department can perform th[e] function" of searching government-issued email accounts." "The IT Department cannot grant any counsel or any other person access to the [government-issued] email accounts of the Legislators and staff so that they could perform this function").

Legislators' counsel determine what documents each of the dozens of persons subject to the Subpoena "considered or relief upon while drafting legislation related to abortion or women's health." *See, e.g.,* [Dkt. 222-1] at 11. Judge Ball correctly found that the additional searches of personal email accounts and hard-copy documents would impose an additional and substantial burden on each person identified in Plaintiffs' Definitions of "You" and "Committee." [Dkt. 250] at 4. Judge Ball correctly accounted for the fact that Plaintiffs' Definitions of "You" and "Committee" include the "'employees, agents, [and] representatives,' as well as the legislators" themselves. *Id.* Determining who and how many such "employees" exist would be a substantial burden in itself. Judge Ball correctly observed that requiring each of these unknown number of individuals to search their own personal email addresses and hard copy files for 9-year-old documents and emails would impose a substantial and undue burden. *Id.*

Judge Ball also did not include in his lengthy analysis even more details that make Plaintiffs' proposed discovery substantially overbroad. The generally seek from all Legislators: (1) "all Documents ... considered or relied upon" by the Legislators and their aides, (2) "all Documents reflecting the drafting and revision process," and (3) "all Documents reflecting any Communications between" the Legislators and any conceivable person, and from the Committees (4) "all Documents reflecting comments or assessments" to abortion legislation. *See, e.g.,* [Dkt. 222-1] at 11; [Dkt. 222-4] at 11. These requests run the gamut, and, frankly, it is difficult to imagine what other documents Plaintiffs could have requested that would be pertinent in any way to abortion legislation. Even if the Subpoenas were directed solely to the three Senators (which they were not) and solely to the Telemedicine Law (which they were not), the requests would still be overbroad.

As discussed above, Judge Ball went on to analyze in detail the proposed limitations of the Subpoenas in Plaintiffs' motion and reply brief, and his findings that the proposed limitations

remained substantially overbroad were supported by the record, and, therefore, not clearly erroneous. Judge Ball correctly found that because "Plaintiffs' proposed limitation d[id] not remove the 'Definitions' and 'Instructions'" Plaintiffs' proposals were not meaningful at all. [Dkt. 250] at 5. The only limitation in the motion was the abandoning of requests not related to the Telemedicine Law, and, as Judge Ball found, the import of that "limitation only reduces the number of committee-member legislators during the 'Relevant Period' from 75 to 55, and therefore, the total number of total legislators to 57." *Id.* at 5–6. Plaintiffs' proposed limitation in their motion, therefore, had no effect on Judge Ball's findings that (a) the "most time consuming exercise" would be the "process of reviewing all documents produced by the searches," (b) the Subpoenas' calling for personal emails and hard-copy documents would impose a significant burden on a substantial number of people, (c) the Subpoenas require production from all "'employees, agents, [and] representatives,' both former and present, [that] must be contacted in order to search for and compile all responsive documents," and (d) the Subpoenas seek documents from "approximately 9 years ago," a factor that increases the burden. *Id.* at 4–5. Plaintiffs offer no legitimate dispute to Judge Ball's analysis.

Judge Ball's analysis of Plaintiffs' reply (which Judge Ball need not have even considered) was likewise supported by the record. Judge Ball correctly reasoned that Plaintiffs' second "attempt to change the subpoenas again to something different and more limited … did not cure all of the problems with these subpoenas," and Plaintiffs do not even appear to dispute that. *Id.* at 6 & n.5. Judge Ball expressly found and supported with a detailed analysis why "Plaintiffs' proposals in their reply are vague, confusing, and still overbroad." *Id.* Judge Ball correctly found that the Plaintiffs' newest concession did not change the most critical reason why the Subpoenas were overbroad:  the "Definitions" in the Subpoenas. *Id.*; *see* [Dkt. 226-6] at 3 n.2 (proposed order submitted with reply incorporating overbroad definitions). Because the Definitions never changed,

Plaintiffs continued to seek from dozens of state employees nearly every document and communication that could conceivably relate to the Telemedicine Law. [Dkt. 250] at 5 n.6.

The only substantive limitation in Plaintiffs' reply was that Plaintiffs abandoned entirely their attempts to obtain email communications from members of the Committees. The requests to the Senators (as broadly defined to include all staff) were not affected. Plaintiffs continued to seek from the "Committees" (1) documents provided to the Committees, (2) documents "reflecting comments or assessments by the [Committees]," (3) documents "reflecting the drafting and revision process," and (4) "all documents reflecting any (non-email) Communications between the [Committees]" and every other conceivable person or group that would communicate about the Telemedicine Law. [Dkt. 226] at 10. Judge Ball correctly reasoned that Plaintiffs' "'seek[ing] only hard copy documents and non-email ESI in the possession, custody, or control of the Committees' is still vague and confusing." [Dkt. 250] at 5 n.6. As Judge Ball found:

> Do they mean an actual hard-copy file maintained by the Committee? If so, the Senators and Committees have already submitted an affidavit attesting that "[t]here is no central depository for hard copies of documents that may be pertinent to legislation under consideration by the . . . Senate committees." [222-9] at 2. And if that is what they meant, why do Plaintiffs also state that "in searching for responsive documents, the Committees need not contact any former legislator who is no longer in office or any former staff member who is no longer employed by the Legislature"? [226-6] at 5. This obviously implies that Plaintiffs expect each present legislator who is still in office and every staff member who is still employed by the Legislature to be contacted for responsive documents. If Plaintiffs are now seeking *only* hard-copy documents and ESI maintained by the Committee, why would every present legislator and staff member be contacted for documents? These are just some of the problems with the changes proposed in their reply, and Plaintiffs' second proposed changes do not cure all of the problems with these subpoenas.

*Id.* The additional "problems" referenced in Judge Ball's Order include that Plaintiffs' proposed order specifically states that the definition of "Committee" is derived from the Subpoenas. [Dkt. 226-6] at 3 n.2. Plaintiffs' sole concession that the Committees need not produce email correspondence does not change the fact that 57 individual legislators and all their staff must be

contacted and then relied upon to search their individual files from nine years ago. Judge Ball's finding that such efforts would impose an undue burden on the Legislators and the Mississippi Legislature was not clearly erroneous.

> **e.  Judge Ball need not have considered the relevance of the evidence sought to deny Plaintiffs' motion, but, had he done so, the marginal, if any, relevance of the documents sought by the Subpoenas would have been an additional basis to deny the motion.**

Judge Ball was under no obligation to weigh "the relevance of the information requested" and "the need of the party for the subpoenaed materials" as Plaintiffs suggest. For this proposition, Plaintiffs cite only *Wiwa*'s recitation of the factors often considered to weigh undue burden. [Dkt. 252] at 14 (citing *Wiwa*, 392 F.3d at 818). Immediately after listing those factors, however, the Court in *Wiwa* stated:  "A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818 (emphasis added).

Based on a plain reading of *Wiwa*, the Court is not required to undertake an analysis of all the *Wiwa* factors if it finds that the "document requests are facially overbroad." *In re O'Hare*, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012). Courts within this Circuit routinely agree and do not perform the unnecessary step of analyzing all *Wiwa* factors after determining a subpoena is facially overbroad.[10] A subpoena's being "facially overbroad" is sufficient "[s]tanding alone … [to] permit the court to quash the subpoena in its entirety." *Pratt*, 2005 WL 8163159, at *3.

However, had the Court specifically included the additional *Wiwa* factors in his analysis, those factors would have supplied additional bases to deny Plaintiffs' motion. Judge Ball specifically analyzed in detail factors 3, 4, 5, 6, and 7 in finding that the Subpoenas were "facially

---

[10] *See, e.g., id.*; *Turnbow v. Life Partners, Inc.*, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013) ("A facially overbroad subpoena is unduly burdensome" and no relevance analysis was required); *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003); *Mortera v. State Farm Fire & Cas. Co.*, 2021 WL 2660613, at *2 (S.D. Miss. Apr. 21, 2021) (finding subpoena was "facially overbroad" and not undertaking relevance analysis).

overbroad." [Dkt. 250] at 3–6.[11]

In addition, the remaining two factors also weigh heavily in favor of non-disclosure. Plaintiffs concede that the only relevance of the Subpoenaed documents is to uncover the subjective motivations of the individual Legislators to further their claim that several abortion laws were enacted with an improper "purpose of placing a substantial obstacle in the way of women seeking abortion care." [Dkt. 252] at 14. If the subjective motivations of the Legislators are relevant, they are only marginally so. Although the Court in *Casey* stated that an abortion law may have an "improper purpose," it is clear that is a relatively marginal claim, and it is unclear what discovery should be compelled to prove an alleged improper purpose. *See, e.g., Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Supreme Court opinions after *Casey* "suggest that such a challenge will rarely be successful." *Karlin v. Foust*, 188 F.3d 446, 493 (7th Cir. 1999).[12]

Plaintiffs argue in their Objection that the subpoenaed documents are very relevant and important because "documents produced" in this litigation show that Mississippi's abortion laws were "ghostwritten by anti-abortion activists." [Dkt. 252] at 5. However, the Supreme Court has held that "the fact that an anti-abortion group drafted" the law "says nothing significant about the legislature's purpose in passing it." *Mazurek*, 520 U.S. at 972. Moreover, even if the *Legislature as a whole's* purpose may be relevant, cases hold that an *individual* Legislator's subjective intent and purpose is not. *See, e.g., Citizens Union of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124,

---

[11] The factors are:

(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; … (6) the burden imposed[;] [(7) and whether] the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.

*Wiwa*, 392 F.3d at 818.

[12] *Id.* (stating plaintiffs could show improper purpose only "if the legislature expressly stated that [the law's] purpose was to limit a woman's right to cho[o]se whether to have an abortion or this fact was clear on the face of [the law]").

146–47 (S.D.N.Y. 2017). And, Plaintiffs' ghostwritten argument is also a concession that they already have documents to support their allegations, further proof of lack of need.

Plaintiffs cited to Judge Ball and this Court no case where the Circuit Court of Appeals found an improper purpose or held that individual third-party lawmakers were required to produce documents related to an allegedly improper purpose of an abortion law. [Dkt. 208] at 12–13. Instead, Plaintiffs cited to Judge Ball and this Court only racial discrimination cases and abortion cases that did not compel production and specifically held that legislators' "coordinat[ion with] advocacy groups … regarding efforts to restrict abortion" did not result in a finding of improper purpose.[13] "Purpose" in an abortion case is far different than "intent" in a discrimination case, where Courts have held that a legislators' subjective motivation may be a "core issue."[14] Plaintiffs' citation of *Jackson Women's Health Organization v. Currier* in their Objection also does not compel a finding of relevance at all, much less a relevance finding that would overcome the substantial burden imposed by the Subpoenas. [Dkt. 252] at 14 (citing 2012 WL 2510953, at *2 (S.D. Miss. July 1, 2012)). Because Plaintiffs are already in possession of "quotes from significant legislative and executive officers" similar to those relied upon in *Currier*, the Court's Order in *Currier* actually supports affirming Judge Ball's Order on the basis that Plaintiffs have no need

---

[13] Of the abortion cases, Plaintiffs cite *June Medical*, *Van Hollen*, and *Atchison*. [Dkt. 208] at 12. None of those cases held that non-party state legislators were required to produce documents related to their subjective motivations for passing the abortion law. *June Med. Servs, LLC v. Klierbert*, 158 F. Supp. 3d 473, 502 (M.D. La. 2016) (holding there was no improper purpose although the legislator "coordinat[ed] [with] advocacy groups … regarding efforts to restrict abortion"); *Planned Parenthood of Wisc., Inc. v. Van Hollen*, 94 F. Supp. 3d 949, 955 (W.D. Wisc. 2015) (not compelling production); *Planned Parenthood of Greater Iowa Inc. v. Atchison*, 126 F.3d 1042, 1049 (8th Cir. 1997) (not compelling production and not involving the legislature).

[14] *See, e.g.*, *Citizens Union of N.Y.*, 269 F. Supp. 3d at 145. In *Citizens Union*, for example, the Court stated that in discrimination cases "[j]udicial inquiry into legislative intent is … 'specifically contemplated as part of the resolution of the core issues that such [discrimination] cases present.'" *Id.* (quoting *Bethune-Hill v. Va. St. Bd. of Elections*, 114 F. Supp. 3d 323, 337 (E.D. Va. 2015)). The Court reasoned that neither an individual lawmaker's subjective motivation nor the "factual material [that] was 'considered' by the … individual legislators" was discoverable in a non-discrimination case. *Id.* at 146–47.

for the requested discovery.

Finally, Plaintiffs did not show to Judge Ball that they "need" the discovery. That "[t]he plaintiffs' 'need' to obtain these additional emails [and documents] is questionable at best" considering the information that is already publically available and that Plaintiffs have already received in discovery. *Whole Woman's Health v. Smith*, 896 F.3d 362, 375 (5th Cir. 2018). That the three Senators to whom the Subpoenas were issued oppose abortion is publically available information, as Plaintiffs concede.[15] Unlike discrimination cases where discovery may be necessary because legislators "seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority," state legislators often unapologetically include their opposition to abortion as a key prong of their political agenda. *Veasey v. Perry*, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014). Indeed, Plaintiffs have retained an expert to document public statements of Mississippi lawmakers opposing abortion, [Dkt. 226-7], and Plaintiffs concede that they have already obtained other non-public information regarding the Senators and Committees' subjective motivations.[16]

As shown above, Judge Ball was not obligated to consider relevance and Plaintiffs' need because the Subpoenas were facially overbroad. Each of these factors also weigh in favor of non-disclosure and any relevance is not sufficient to overcome the significant burden imposed by the subpoenas. If the Court finds that Judge Ball should have specifically included the relevance and

---

[15] [Dkt. 208] at 7 ("Each Senator has publically expressed the intention to restrict abortion rights in Mississippi and across America"); *see* [Dkt. 223] at 22 n.20 (listing publically-available statements made by Legislators); [Dkt. 226-7] (expert report cataloguing statements).

[16] [Dkt. 208] at 6 (citing activist email); *id.* at 7 ("Senator Fillingane worked with the Governor's office and anti-abortion groups to promote [the Telemedicine Bill].") (citing [Dkt. 207-12]); *id.* (alleging findings are not supported by evidence); *id.* at 8 (citing Dobbs declaration and Cleveland deposition which allegedly show that the department of health had no role in enactment of the Telemedicine Bill); [Dkt. 226-1] (affidavit of Gov. Reeves admitting to public anti-abortion statements); [Dkt. 226-2] (affidavit of Gov. Bryant admitting to public anti-abortion statements).

need factors in his Order, the Legislators respectfully request that the Court remand to Judge Ball with instructions to specifically include such filings in his Order.

III.     **If the Court considers the new arguments raised in the Objection and/or disagrees with Judge Ball's well-reasoned and detailed analysis, it may affirm for additional bases raised by the Legislators.**

This Court need not address the Legislators' alternative grounds for denying the motion because Judge Ball did not clearly err in finding that the Subpoenas and Plaintiffs' proposed limitations were facially overbroad. However, this Court may affirm Judge Ball's Order on two independent bases that Judge Ball did not need to consider:  untimeliness and legislative privilege.

a.     **Plaintiffs concede their Motion was untimely, and Plaintiffs did not meet their burden to show "good cause" to extend the discovery deadline for the purpose of allowing the Legislators to produce documents past the deadline.**

This Court may deny Plaintiffs' Motion on the sole basis that Plaintiffs filed it so late as to violate Rule 7(b)(2)(C) of the Local Uniform Civil Rules, which states that "[a] party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court and time to effectuate the court's order before the discovery deadline." L.U. Civ. R. 7(b)(2)(C). Plaintiffs filed their Motion on March 8, 2021, just nine days before the discovery deadline. [Dkt. 207]; [Nov. 13, 2020, Text-Only Order]. This Court has routinely denied motions to compel subpoena responses that were not filed in a sufficient time to effectuate the ruling of the Court before the discovery deadline.[17]

> [I]f the conduct of a respondent to discovery necessitates a motion to compel, the requester of the discovery must protect himself by timely proceeding with the motion to compel. If he fails to do so, he acts at his own peril. He must not expect the Court to extend discovery and/or the trial date because of the failures of the other party to respond, even if that failure is in bad faith.

---

[17] *See, e.g.*, *Illinois Cent. R. Co.*, 2010 WL 480984, at *2; *McReynolds*, 2017 WL 10110267, at *1; *Guideone Elite Ins. Co. v. Mt. Carmel Ministries*, 2014 WL 12642001, at *1 (S.D. Miss. Nov. 3, 2014); *PERS v. Ford Motor Co.*, 2011 WL 13157355, at *2 (N.D. Miss. Aug. 11, 2011).

*McReynolds v. Matthews*, 2017 WL 10110267, at *2 (S.D. Miss. Aug. 1, 2017) (quoting *Wells v. Sears Roebuck & Co.*, 203 F.R.D. 240, 241 (S.D. Miss. 2001)).

Plaintiffs concede the Court could deny their motion on the sole basis of Local Rule 7(b)(2)(C) by failing to legitimately dispute the same in their Objection. [Dkt. 252] at 17. They offer only the conclusory assertion that "[t]he timing objection has been misplaced all along." *Id.* It is unclear why they contend that. The Rule and case law interpreting it speak for themselves. What Plaintiffs should have done, and never did, was withdraw their overly-broad Subpoenas and issue new, properly limited subpoenas or move to extend the discovery deadline to serve new proper subpoenas. Instead, Plaintiffs filed their motion on the eve of the deadline and sought a limited extension of the deadline to allow the Legislators to respond to *these* Subpoenas, Subpoenas which Plaintiffs conceded through their motion, reply, and Objection were substantially overbroad. Because it was impossible for the Court to rule on their motion and effectuate that ruling before the deadline, the Court may deny their motion on that basis alone.

Plaintiffs also failed to show good cause to extend the discovery deadline for the purpose of allowing the Legislators to produce documents past the deadline. As discussed thoroughly in the Legislators' response to the motion to compel, subpoenas are discovery, and, therefore, the March 17, 2021 discovery deadline applied. *See, e.g., Williams v. Weems Cmty. Mental Health Ctr.*, 2006 WL 905955, at *2 (S.D. Miss. Apr. 7, 2006). Plaintiffs must comply with Rule 16(b) which states that the deadline "may be modified only for good cause and with the judge's consent." *McReynolds*, 2017 WL 10110267, at *1. "The rule 'requires a party to show that the deadline[] cannot reasonably be met despite the diligence of the party needing the extension.'" *Id.* (quotation omitted). Plaintiff must prove that good cause is met under four factors: "(1) the explanation for the failure to comply; (2) the importance of the discovery; (3) potential prejudice; and (4) availability of a continuance to cure the prejudice." *Bishop Ins. Agency, LLC v. Bishop Ins.*

*Servs. PLLC*, 2019 WL 7593362, at *2 (S.D. Miss. Dec. 17, 2019).

Plaintiffs failed to show that any of the above factors support the extension they sought. For the first factor, Plaintiffs offer only unsupported, conclusory statements that "[t]he need to subpoena the State Legislators did not become clear until late 2020, and Plaintiffs continued to move with reasonable speed thereafter." [Dkt. 252] at 17. Plaintiffs served their Subpoenas months after they *allegedly* learned of the need for such documents in September 2020, [Dkt. 208] at 21; a year after they sought similar discovery from other lawmakers, *id.* at 8; years after discovery commenced; and years after they alleged "sought, *and received*" similar discovery from a legislator in another abortion case, *id.* at 6 & [Dkt. 207-1] at ¶¶7–8. Moreover, "[i]f Plaintiffs … [were] actually unaware of [*Casey's* improper-purpose statement] prior to [September 2020], Plaintiffs have no one to blame but themselves. They had control over their ability to conduct discovery on this issue, and they squandered their opportunity to do so." *King v. Freedom Life Ins. Co. of Am.*, 2011 WL 3876979, at *3 (S.D. Miss. Aug. 31, 2011).

As demonstrated above, the second factor—the importance of the discovery—likewise weighs against "good cause." "[T]here is an important difference between the motive and purposes of *individual* legislators and institutional legislative purpose," and this is not a racial discrimination case where a "core issue" is legislative intent. *Citizens Union N.Y.*, 269 F. Supp. 3d at 145, 147.[18] Plaintiffs' conclusory statement that the State Defendants "failed to show prejudice" also falls flat. [Dkt. 252] at 18. As explained in the State Defendants' response to the motion to compel, the dispositive-motion deadline was April 29, 2021, and if the documents Plaintiffs sought from the

---

[18] As discussed above, this abortion case is unlike racial discrimination cases where legislators "seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority," *Veasey*, 2014 WL 1340077, at *3, the Senators views on abortion are well-known, their statements are publically available, [Dkt. 223] at 22 n.20, and Plaintiffs have retained an expert for the sole purpose of cataloguing all such statements, [Dkt. 208] at 6–8; [Dkt. 226-7]. Plaintiffs also have affidavits from other lawmakers confirming similar statements. [Dkt. 226-1, 226-2].

Legislators "were of any significance, of course they would affect the contents of the motions that the parties must file by April 29." [Dkt. 224] at 11. Now Defendants have filed a motion for summary judgment on, among other things, Plaintiffs' improper-purpose claim. [Dkt. 236] at 30.

Moreover, that part of this case is on appeal to the United States Supreme Court does not justify extending the deadline for the limited purpose of allowing the Legislators to respond to the Subpoenas. First, this pertains to only one factor of the multi-factor, good-cause analysis. Second, Plaintiffs did not seek to extend the entire discovery deadline. They only sought a limited extension to allow the Legislators to respond after the deadline had passed. As stated in Defendants' response to Plaintiffs' motion to compel, if the Legislators produce any documents, "follow-up discovery would be warranted," especially since Defendants have already filed a motion for summary judgment on the improper-purpose claim. [Dkt. 224] at 11; [Dkt. 236] at 10. If the Court allows the Legislators to respond past the deadline, the Court may be obligated to open discovery for Defendants and/or permit Defendants to file a new motion for summary judgment. Finally, as discussed below, the Legislators will maintain legislative privilege as an independent basis for not responding to the Subpoenas, and an interlocutory appeal of an adverse decision of the privilege issue will certainly significant impact scheduling of this case regardless of the stay pending the Supreme Court's decision. *See Stallworth v. Bryant*, 936 F. 3d 224, 230 (5th Cir. 2019). In short, it was Plaintiffs' burden to show "good cause," and Plaintiffs failed to prove that their waiting until nine days before the deadline was warranted, that this discovery is important to the case, and that the case will not be prejudiced by an extension.

> **b. All documents sought by the Subpoenas are protected from disclosure by the legislative privilege.**

As a final independent basis for affirming Judge Ball's Order, any potentially relevant documents Plaintiffs seek—those pertaining to the subjective motivations of the individual

legislators—would all be protected from disclosure by the legislative privilege.

Unlike the attorney-client privilege and other privileges which are designed to protect the *confidentiality* of communications, legislative privilege is much broader and protects state legislators and their staffs from the burden of compelled civil process. *Bethune-Hill*, 114 F. Supp. 3d at 338–39. "The privilege protects the legislative process itself, and therefore covers … legislators' actions in the proposal, formulation, and passage of legislation." *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015). The privilege protects against subpoenas that "detract[] from the performance of official duties," and "[t]he privilege applies with full force against requests for information about the motives for legislative votes and legislative enactments." *Id*. at 1310.

Contrary to Plaintiffs' assertions, the Fifth Circuit has never held that the legislative privilege is qualified, that the privilege does not apply to communications with third-parties, or that the Court should employ a five-factor analysis to analyze the privilege. *See Jefferson Cmty. Health Ctrs., Inc. v. Jefferson Par. Gov.*, 849 F.3d 615, 624 (5th Cir. 2017).[19] Admittedly, this Court held in a racial discrimination case that the privilege was qualified and did not protect communications with third parties, but the Fifth Circuit reversed and provided no guidance as to whether this Court's analysis was correct. *See Jackson Mun. Airport Auth. v. Bryant*, 2017 WL 6520967 (S.D. Miss. Dec. 19, 2017); 2018 WL 3117020 (S.D. Miss. June 25, 2018); *rev'd sub nom. Stallworth*, 936 F.3d 224.[20] In the absence of contrary authority, this Court should follow the analysis of the most persuasive and applicable Circuit Court opinion on point. *In re Hubbard*, 803 F.3d at 1311. In *Hubbard*, the Eleventh Circuit reasoned that where the sole reason for the subpoena was to prove the subjective motivations of the legislators, "[n]one of the relevant

---

[19] The *Jefferson* decision arose from an appeal of a preliminary injunction that presented neither a discovery issue nor an evidentiary issue. *Id.*
[20] The *Airport* case and the legislative-privilege issue are on appeal to the Fifth Circuit, and the Court held oral argument in December 2021. *Jackson Municipal Airport v. Harkins*, No. 21-60312 (5th Cir.).

information sought … could have been outside of the legislative privilege." *In re Hubbard*, 803 F.3d at 1311. As such, the lawmakers there were not required to undertake the burden of compiling a privilege log. *Id. Hubbard* forecloses Plaintiffs' argument that the legislative-privilege issue is "not ripe for decision without a log." [Dkt. 252] at 16. Moreover, the primary reason for the legislative privilege is to protect legislators from "complying with … requests [that] detract[] from the performance of official duties," *In re Hubbard*, 803 F.3d at 1310, and, as Judge Ball correctly found, one of the most burdensome aspects of these Subpoenas would be "determining which documents are protected from disclosure by a privilege or other protection (and preparing a privilege log addressing each such document)," [Dkt. 250] at 5.

Even if the five-part test under the qualified privilege analysis applied, each of the factors renders this case distinguishable from the *Airport* case and weighs in favor of nondisclosure here.[21] The five factors are:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Rodriguez v. Putaki*, 280 F. Supp. 2d 89, 92 (S.D.N.Y. 2003). As discussed above, discriminatory intent of individual legislators in a discrimination case may be highly relevant and a "core issue," *Citizens Union of N.Y.*, 269 F. Supp. 3d at 145; but the motives of individual legislators are at best marginally relevant to an alleged "improper purpose," *Mazurek*, 520 U.S. at 972; and Plaintiffs claim to already have considerable evidence to support their claims, *compare Yeasey*, 2014 WL

---

[21] The language of the Subpoenas and the circumstances were also different in the *Airport* case. Unlike in that case where the subpoenas were served near the advent of the litigation, Plaintiffs here served broad Subpoenas that sought information from 77 Legislators and their staffs on the eve of the discovery deadline. Unlike the *Airport* case where the allegedly discriminatory law was stayed pending litigation, resolution of the issues in these Subpoenas is likely to result in a substantial delay in enjoining the allegedly unconstitutional abortion laws that remain enforceable. *See Stallworth*, 936 F. 3d at 230 (permitting automatic appeal of legislative privilege issue under collateral order doctrine).

1340077, at *3 *with* [Dkt. 208] at 6–8, [Dkt. 226-1, 226-2, 226-7], and [Dkt. 252] at 5 (all cataloguing statements already available to Plaintiffs).

Plaintiffs have cited no case showing that "improper purpose" is a "serious [enough] issue" under the third factor to warrant discovery into the subjective motives of individual legislators. Instead, they cite cases holding that "the seriousness" of this litigation is "*lessened* as compared to cases involving, for example, racial discrimination." [Dkt. 208] at 17 & n.31 (citing *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1124 (N.D. Cal. 2003)). While Plaintiffs (and others) may find the motivations of individual legislators in abortion litigation to be very important to them, any person challenging a state law is likely to believe the law they are challenging is "important." If the Court were to part with the legislative privilege for every law challenged in litigation, the work of state legislatures would grind to a halt, a consequence the legislative privilege is designed to avoid.

As to the fourth factor, Plaintiffs are again misguided as to whom is actually passing the laws at issue. "[T]here is an important difference between the motive and purposes of *individual* legislators and institutional legislative purpose." *Citizens Union of N.Y.*, 269 F. Supp. 3d at 147 (emphasis added). The *individual* Legislators did not pass the challenged abortion legislation; the collective body of the Legislature did.

The chilling effect of compelling broad production aimed at the Legislators' subjective motivations is an additional reason to deny Plaintiffs' motion: "Open dialogue between lawmakers and their staff would be chilled if their subjective, preliminary opinions and considerations are potentially subject to public disclosure and critique." *Id.* at 170. Compelled disclosure in this case and others like it will cause future legislators and their staff to "refrain from engaging in the frank and candid deliberation about, and analysis of," proposed legislation. *League of Women Voters v. Johnson*, 2018 WL 2335805, at *5 (E.D. Mich. May 23, 2018).

Finally, because the interest sought to be protected by the legislative privilege is primarily not confidentiality but is instead elimination of the burden imposed on the legislative process by civil discovery, a protective order is *not* sufficient to act as a substitute for the legislative privilege. *Bethune-Hill*, 114 F. Supp. at 338–39. Producing privileged documents under a protective order would be just as burdensome as producing documents without one, as Judge Ball found. [Dkt. 250] at 5. Because the privilege applies to all documents requested by the Subpoenas and should not be overcome by countervailing considerations, the Court should deny the motion to compel on this independent ground.

Again, the Court need not even consider the timeliness and legislative-privilege issues if it finds that Judge Ball's well-reasoned finding of overbreadth is worthy of the substantial deference afforded in these circumstances, which it is. But those bases are additional reasons to affirm. *See, e.g.*, *United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009) (the Court "may *affirm* for any reason supported by the record"). The Legislators submit it would not be appropriate for the Court to rule against the Legislators on those alternative bases without providing Judge Ball an opportunity, on remand, to address them in the first instance.

## <u>CONCLUSION</u>

Judge Ball committed no clear error in his comprehensive finding of overbreadth. Plaintiffs apparently recognize this and attempt to present the Court with issues that were never presented to Judge Ball. Those attempts are improper, and this Court should affirm Judge Ball's well-reasoned Order on overbreadth grounds, which renders all other issues moot. However, this Court may (and should) affirm on two additional bases. The Legislators respectfully request that the Court affirm Judge Ball's Order on the basis of undue burden or, alternatively, on the bases of timeliness and legislative privilege.

Dated: March 18, 2022.

Respectfully submitted,

**ANDREW KETCHINGS in his capacity as the Clerk of the Mississippi House of Representatives; BUCK CLARKE, in his official capacity as Secretary of the Mississippi Senate; AMANDA FRUSHA, in her official capacity as Clerk of the Mississippi Senate, SENATOR CHRIS MCDANIEL, SENATOR ANGELA BURKS HILL, and SENATOR JOEY FILLINGANE**

By:  */s/ William Trey Jones, III*
     WILLIAM TREY JONES, III (MSB # 99185)

OF COUNSEL:

William Trey Jones, III (MSB # 99185)
tjones@brunini.com
Jacob A. Bradley (MSB # 105541)
jbradley@brunini.com
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street (39201)
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902

*Attorneys for Andrew Ketchings in his capacity as the Clerk of the Mississippi House of Representatives; Buck Clarke, in his official capacity as Secretary of the Mississippi Senate; Amanda Frusha, in her official capacity as Clerk of the Mississippi Senate, Senator Chris McDaniel, Senator Angela Burks Hill, and Senator Joey Fillingane*

## CERTIFICATE OF SERVICE

I, William Trey Jones, III, hereby certify that on March 18, 2022, I caused the foregoing pleading to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record and registered participants.

*/s/ William Trey Jones, III*
Attorney for the Legislators